# EXHIBIT A

**The Law Office of Alec Pressly**
**Alec Pressly (SBN 348054)**
**3110 Main St, Bldg. C, #331**
**Santa Monica, CA 90401**
**(603) 809-6601**
**alec@presslylegal.com**

Attorney for Plaintiff
Emmett Enriques

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/12/2024 11:01 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## LOS ANGELES CENTRAL DIVISION

24STCV23588

|  |  |
|---|---|
| EMMETT ENRIQUES, individually and on behalf of other situated,<br><br>Plaintiff,<br><br>vs.<br><br>ONLY WHAT YOU NEED, INC., a Delaware Corporation; THE SIMPLE GOOD FOODS COMPANY, a Delaware Corporation; AND DOES 1 THROUGH 70, INCLUSIVE,<br><br>Defendants | **CLASS ACTION COMPLAINT FOR:**<br>    (1) **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (CIV. CODE § 1750, ET SEQ.);**<br>    (2) **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW (BUS. & PROF CODE § 17500, ET SEQ.);**<br>    (3) **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUS. & PROF. CODE. § 17200, ET SEQ.)**<br>    (4) **BREACH OF EXPRESS AND IMPLIED WARRANTIES;**<br>    (5) **NEGLIGENT MISREPRESENTATION; AND**<br>    (6) **UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT - 1

Plaintiff, Emmett Enriques, brings this Class Action Complaint ("Complaint") against Defendants, Only What You Need, Inc., and The Simply Good Foods Company (collectively the "Defendants" or "OWYN") individually and on behalf of all other similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by his attorneys:

## INTRODUCTION

1.    Plaintiff brings this consumer class action lawsuit on behalf of similarly situated consumers ("Class Members") who purchased for personal, family, or household use, the following ready-to-drink protein shakes marketed and sold by Defendants: (1) Elite PRO Chocolate, 355mL; (2) Elite PRO Vanilla, 355mL; (3) Elite PRO Plant Powered Drink, Vanilla, 330mL; (4) Elite PRO Plant Powered Drink, No Nut Butter Cup, 330mL; and (5) Elite PRO Plant Powered Drink, Sea Salted Caramel, 330mL (collectively, the "Shakes" or "Products").

2.    These Shakes' labels and packaging contain numerous material misrepresentations about the amount of macronutrients OWYN represents are in the Products, including but not limited to the following:

a.  The Shakes have significantly higher total carbohydrate content than OWYN claims on the Shakes' nutrition facts labels and packaging;

b.  The phrase "0 Net Carbs" is prominently displayed across all the Shakes' labels and packaging, yet OWYN fails to define this term anywhere on the labels or packaging;

c.  If "Net Carbs" is intended to represent total carbohydrates minus dietary fiber, then the actual Net Carb content in the Shakes is far greater than what OWYN claims on the Shakes' labels and packaging;

d.  Several Shakes contain considerably more sugar than OWYN claims on the Shakes' nutrition facts labels and packaging; and

e.  Throughout the Class Period, many of the Shakes have contained substantially less protein than OWYN claims on the nutrition facts labels and packaging.

3.      Plaintiff seeks injunctive and monetary relief on behalf of the proposed Class, including: (i) requiring accurate disclosure of macronutrients in OWYN's marketing, advertising, and packaging; (ii) requiring testing to verify such disclosures; and (iii) restoring monies to Plaintiff and the members of the proposed Class(es) as defined below.

## PARTIES

4.      Plaintiff is and at all relevant times was a resident of Los Angeles County, California.

5.      Plaintiff purchased the Shakes at retail locations in California including in Los Angeles County.

6.      Plaintiff relied on the nutrient-related representations on the packaging and labels of the Shakes when making his purchase.  At the time of his purchases, Plaintiff was unaware that OWYN misrepresented the Shakes' macronutrient levels and would not have purchased them if the true macronutrient levels were disclosed, or would have paid less than he did.

7.      As a result of OWYN's deceptive conduct as alleged herein, Plaintiff was injured when he paid the purchase price and/or a price premium for the Shakes that did not deliver what Defendant promised.

8.      Plaintiff paid the above sum in reliance that the representations on the Shakes were accurate and that there were no material omissions or inaccuracies.  Plaintiff would not have purchased the Shakes or would have paid considerably less for them had he known their true macronutrient profile.

9.      Defendant Only What You Need, Inc., is a corporation organized under the laws of Delaware with its corporate headquarters located at 33 Irving Place, New York, New York 10003.  It sells its Shakes across the State of California and the rest of the country in many retail locations, including but not limited to Kroger, Target, Whole Foods, Walmart, Publix, and CVS.

10.      Defendant The Simply Good Foods Company ("SGFC") is a corporation organized under the laws of Delaware with its corporate headquarters located at 1225 17th Street, Suite 1000, Denver, Colorado 80202.  It has a large facility at 777 South Aviation Boulevard, Suite 100, El Segundo, California.  On June 13, 2024, SGFC announced it acquired

CLASS ACTION COMPLAINT - 3

Only What You Need, Inc., for approximately $280 million and that moving forward, OWYN is to be a brand of SGFC.

11.     The true names and capacities, whether individual, corporate, associate, representative, or otherwise, of the Defendants identified herein as Does 1 through 70, inclusive, are unknown to Plaintiff, who therefore sues these defendants by said fictitious names. Plaintiff(s) will amend this complaint to allege the true names and capacities of Does 1 through 70 when they have been ascertained.  Does 1 through 70 are in some manner legally responsible for the wrongs and injuries alleged herein.

12.     Each defendant acted as the agent or employee of the others and each acted within the scope of that agency or employment.

## JURISDICTION

13.     This Court has jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10, as the Defendants have purposefully availed themselves of the privileges of conducting activities within the State of California, thereby invoking the benefits and protections of its laws.  The Court also has jurisdiction under California Business and Professions Code § 17203, as the conduct alleged herein has caused harm to California consumers, including Plaintiff.  Plaintiff, on behalf of himself and all others similarly situated, seeks damages exceeding the jurisdictional minimum of this Court.

## VENUE

14.     Venue is proper in this Court pursuant to Code of Civil Procedure §§ 395(a) and 395.5 because the transactions and occurrences giving rise to Plaintiff's claims occurred in Los Angeles County, California, where Plaintiff resides and purchased the Products. (Exhibit D, ¶ 3)

## FACTUAL ALLEGATIONS

15.     OWYN was launched in 2017 as one of the few nutrition-focused companies that offered consumers ready-to-drink protein shakes that contain only "plant-based" protein.

CLASS ACTION COMPLAINT - 4

16.     By 2023, OWYN claimed to generate over $85 million[1] in revenue and recently claimed it is on track to generate over $120 million in revenue in 2024.[2]  OWYN offers at least six different lines of ready-to-drink protein shakes and protein powders.  Each line has numerous different flavors.

17.     This complaint focuses on one of the six OWYN product lines.  OWYN markets and sells a line of ready-to-drink protein shakes it calls "Elite PRO" Shakes.  As compared to the other OWYN products, OWYN claims and represents on the Elite PRO product line label, packaging, and through advertising that the Elite PRO Shakes (1) contain more protein per serving than other ready-to-drink shakes, (2) contain minimal amounts of carbohydrates, and (3) that the few carbohydrates that are present are 100% dietary fiber.

18.     In effect, OWYN claims that the Elite PRO Shakes have large amounts of protein without any effect on blood sugar levels.

19.     OWYN then piggybacks off these claims to make a series of additional express nutritional content claims and representations such as the Shakes have "0 Net Carbs", that the Shakes are "Keto Friendly," and that the Shakes have "Zero Sugar."  These representations are prominently displayed on the product packaging, in marketing materials, and on OWYN's website.

20.     These representations are false.  Testing and analysis revealed that the Products: (1) contained more net carbohydrates than advertised, contradicting the "0 Net Carbs" claim; (2) included hidden sugars or ingredients that metabolize as sugars, rendering the "Zero Sugar" claim false; and (3) was not suitable for a ketogenic diet due to its actual carbohydrate content, making the "Keto Friendly" label misleading.

21.     OWYN was put on notice of its misrepresentations on or about July 7, 2022. It continued thereafter to knowingly mislabel the Shakes without adequate quality control.

---

[1] https://www.tasteradio.com/episodes/2023/how-owyn-went-from-dtc-upstart-to-an-85m-omnichannel-giant-killer/
[2] https://www.thesimplygoodfoodscompany.com/news-releases/news-release-details/simply-good-foods-company-acquire-only-what-you-need-owyn

22.     On May 23, 2024, Plaintiff's counsel sent Only What You Need Inc. a written demand for relief pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. C. §§ 1750, *et seq.*, concerning the false, deceptive, and misleading labeling and advertising for its ready-to-drink protein shakes.  A true and correct copy of that letter is attached hereto as **Exhibit B**.

23.     On July 3, 2024, Plaintiff's counsel sent SGFC another written demand for relief pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. C. §§ 1750, *et seq.*, concerning the false, deceptive, and misleading labeling and advertising for its ready-to-drink protein shakes.  A true and correct copy of that letter is attached hereto as **Exhibit C**.  In the time between May 23, 2024, and July 3, 2024, SGFC completed its acquisition of Only What You Need, Inc., requiring that Plaintiff's counsel send a second demand letter.  SGFC elected not to respond.

24.     OWYN failed to exercise reasonable care in verifying the accuracy of the nutritional content and health claims before marketing and selling the Products once on notice.

25.     As a result of Defendants' false and misleading representations, Plaintiff and the Class did not receive the benefits they bargained for and suffered economic loss.

26.     Set forth below is a brief description of each of the five Shakes addressed herein:

**Elite PRO Chocolate, 355mL Plastic Container**

27.     OWYN manufactures and sells a flavor of protein shakes called Elite PRO Chocolate in a 355mL plastic container. ("355mL Chocolate").   The following images are of the 355mL Chocolate Product[3]:

---

[3] These photographs were taken in 2024.  Prior iterations of the Product had a total carbohydrate value of 7 grams per serving and a protein value of 35 grams per serving.






28.     Attached hereto as **Exhibit A.1** is a true and correct certified laboratory report pertaining to the 355mL Chocolate Product dated August 12, 2022.

29.     Attached hereto as **Exhibit A.2** is a true and correct certified laboratory report pertaining to the 355mL Chocolate Product dated December 13, 2022.

30.     Attached hereto as **Exhibit A.3** is a true and correct certified laboratory report pertaining to the 355mL Chocolate Product dated October 4, 2023.

31.    Attached hereto as **Exhibit A.4** is a true and correct certified laboratory report pertaining to the 355mL Chocolate Product dated May 15, 2024.

**Elite PRO Vanilla, 355mL Plastic Container**

32.    OWYN manufactures and sells a flavor of protein shakes called Elite PRO Vanilla in a 355mL plastic container. ("355mL Vanilla").   The following images are of the 355mL Vanilla Product[4]:

 

_____

[4] These photographs were taken in 2024.  Prior iterations of the Product had a total carbohydrate value of 7 grams per serving and a protein value of 35 grams per serving.



33.     Attached hereto as **Exhibit A.5** is a true and correct certified laboratory report pertaining to the 355mL Vanilla Product dated August 12, 2022.

34.     Attached hereto as **Exhibit A.6** is a true and correct certified laboratory report pertaining to the 355mL Vanilla Product dated December 13, 2022.

35.     Attached hereto as **Exhibit A.7** is a true and correct certified laboratory report pertaining to the 355mL Vanilla Product dated October 4, 2023.

36.     Attached hereto as **Exhibit A.8** is a true and correct certified laboratory report pertaining to the 355mL Vanilla Product dated May 15, 2024.

**Elite PRO Plant Powered Drink, Vanilla, 330mL**

37.     OWYN manufactures and sells a flavor of protein shakes called Elite PRO Plant Powered Drink, Vanilla in a 330mL tetra pak container. ("330mL Vanilla").   The Product is sold in four packs.  The following images are of the 330mL Vanilla Product, both individually and the entire four-pack[5]

---

[5] These photographs were taken in 2024.  Prior iterations of the Product had a total carbohydrate value of 6 grams per serving.







38.     Attached hereto as **Exhibit A.9** is a true and correct certified laboratory report pertaining to the 330mL Vanilla Product dated December 13, 2022.

39.     Attached hereto as **Exhibit A.10** is a true and correct certified laboratory report pertaining to the 330mL Vanilla Product dated May 15, 2024.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Elite PRO Plant Powered Drink, No Nut Butter Cup, 330mL**

40.     OWYN manufactures and sells a flavor of protein shakes called Elite PRO Plant Powered Drink, No Nut Butter Cup in a 330mL tetra pak container. ("330mL No Nut Butter Cup").   The following images are of the 330mL No Nut Butter Cup Product:

 

  

41.     Attached hereto as **Exhibit A.11** is a true and correct certified laboratory report pertaining to the 330mL No Nut Butter Cup Product dated May 14, 2024.

**Elite PRO Plant Powered Drink, Sea Salted Caramel, 330mL**

42.    OWYN manufactures and sells a flavor of protein shakes called Elite PRO Plant Powered Drink, Sea Salted Caramel in a 330mL tetra pak container. ("330mL Sea Salted Caramel").   The following images are of the 355mL Sea Salted Caramel Product:

 

  

43.     Attached hereto as **Exhibit A.2** is a true and correct certified laboratory report pertaining to the 330mL No Nut Butter Cup Product dated May 14, 2024.

**The Products are misbranded because the total carbohydrate levels in each of the Products are significantly higher than OWYN Claims on the Nutrition Facts Labels**

44.     In April 2024, an independent laboratory tested the Products for, among other things, the total carbohydrate levels in each of the Products.

45.     For the majority of the Products, the laboratory performed the tests on a composite that included 12 different samples for each Product type, where each of the 12 samples was collected from different retail locations and where each of the 12 samples for each Product had the same lot number and/or the same expiration date.

46.     All tests and methods used by the laboratory are specifically approved by AOAC International and were performed according to AOAC International methods and best practices.

47.     Set forth below are the results, which include the specific citation to the appropriate laboratory report all of which are attached hereto and all of which have been incorporated by reference to this complaint:

| Beverage | Carbohydrates (Label) | Carbohydrates (g) (May 2024 Results) | Percent Difference |
|---|---|---|---|
| **330mL Vanilla** | 6 (¶ 37) | 10.6 (Ex. A.10) | 76.7% more |
| **330mL No Nut Butter Cup** | 3 (¶ 40) | 9.0 (Ex. A.11) | 200% more |
| **330mL Sea Salted Caramel** | 3 (¶ 42) | 6.9 (Ex. A.12) | 130% more |
| **355mL Chocolate** | 3 (¶ 27) | 11.0 (Ex. A.4) | 266.7% more |
| **355mL Vanilla** | 3 (¶ 32) | 7.8 (Ex. A.8) | 160% more |

48.     As the chart shows, OWYN fails to disclose the correct amount of total carbohydrates in the Products.

49.     On information and belief, OWYN's underreporting of the amount of Total Carbohydrates is an ongoing and systemic problem.  The same independent laboratory

performed the same set of laboratory tests in March 2022, almost two full years before the above-described tests on three of the five Products.

50.     Again, the laboratory performed the tests on a composite sample that included different samples for each of three of the Products, where each of the samples were collected from different retail locations and where each of the samples for each of the three Products had the same lot number and/or the same expiration date.

51.     Again, the test used by the laboratory is approved by AOAC International for this purpose and was performed according to AOAC International methods and best practices.

52.     Set forth below are the results, which include the specific citation to the appropriate laboratory report all of which are attached hereto and all of which have been incorporated by reference to this complaint:

| Beverage | Carbohydrates (Label) | Carbohydrates (g) (March 2022 Results) | Percent Difference |
|---|---|---|---|
| **330mL Vanilla** | 6 (Fn 5) | 8.4 (Ex. A.9) | 40% more carbohydrates |
| **355mL Chocolate** | 7 (Fn 3) | 10.6 (Ex. A.1) | 51% more carbohydrates |
| **355mL Vanilla** | 7 (Fn 4) | 9.3 (Ex. A.5) | 39% more carbohydrates |

53.     Consumers choose low-carbohydrate products for various reasons, including managing conditions like diabetes, adhering to ketogenic ("keto") diets, and supporting weight loss or fitness goals. Accurate labeling is crucial, especially when products are marketed as "keto-friendly," where even small discrepancies in carbohydrate content can disrupt ketosis and derail dietary plans. The differences found in OWYN's products are far from minor; for instance, a product labeled as having 3 grams of carbohydrates actually contains 11 grams—a staggering 266.7% increase. Such significant inaccuracies mislead consumers, undermine their trust, and may have serious health implications for those relying on these labels to manage their diets effectively.

54.     The Products are misbranded under 21 C.F.R. § 101.9(g)(4)(i) & (6) because each has significantly more carbohydrates than OWYN claims in the Products' nutrition facts labels.

**The Products are misbranded because OWYN's "0 Net Carb" claim is inaccurate.**

55.     On various prominent locations on the Products' labels, OWYN claims that the Products contain "0 Net Carbs". *See infra* ¶¶ 27, 32, 37, 40, 42.

56.     A "Net Carb" claim on the Products' labels is an express nutrition content claim governed by 21. U.S.C §343(r) and 21 C.F.R. § 1.01.13(i)(3). Thus, they are subject to the same labeling accuracy requirements as all macronutrients including total carbohydrates "because 'net carbs' is a configuration of nutrients 'of the type' required to be mentioned on a label by [21 U.S.C.] § 343(q) and its regulations." *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *7 (S.D. Cal. Jan. 3, 2018).

57.     Any "Net Carb" claim (1) must be quantitatively true and (2) the method of calculation disclosed on the packaging.

58.     OWYN fails both prongs.

59.     First, OWYN does not disclose on the Products' packaging the method OWYN uses to calculate "Net Carbs".

60.     Unlike OWYN, competitors in the dietary supplement industry clearly disclose on their product labels the precise method used to calculate 'net carbs.' These disclosures are made following industry norms and the regulatory requirements set forth by the FDA. The following examples showcase typical net carb disclosures made on the label of a product when the product contains a "Net Carb" claim:

    a.   Atkins Protein-Rich Shake, Dark Chocolate Royale



    b.   Purely Inspired Organic Protein, Plant-Based Protein Powder, Creamy French Vanilla:

CLASS ACTION COMPLAINT - 15

‡ Net carbs are calculated by subtracting total dietary fiber from total carbohydrates.

c.  Quest Cheese Crackers:

*10g Total Carbs – 5g Fiber = 5g Net Carbs

d.  KIND ZERO Carmel Almond & Seal Salt Bars:



+HOW TO CALCULATE NET CARBS

14g – 7g – 5g = 2g

| Total Carbs | Dietary Fiber | Allulose | Net Carbs |

e.  Mikona Cacao Choco Protein Powder:

Net Carbs = Total Carbs - Dietary Fiber

61.     Second, in April 2024, an independent laboratory tested the Products for, among other things, the total carbohydrate and the dietary fiber levels in each of the Products.

62.     For the majority of the Products, the laboratory performed the tests on a composite sample that included 12 different samples for three Product types, where each of the 12 samples was collected from different retail locations and where each of the 12 samples for each of the three Products had the same lot number and/or the same expiration date.

63.     All tests and methods used by the laboratory are specifically approved by AOAC International and were performed according to AOAC International methods and best practices.

64.     Set forth below are the results, which include the specific citation to the appropriate laboratory report all of which are attached hereto and all of which have been

incorporated by reference to this complaint.  The net carbs are calculated by subtracting dietary fiber from total carbohydrates[6]:

| | Total Carbohydrates | | Dietary Fiber | | Net Carbs | |
|---|---|---|---|---|---|---|
| Beverage | Label (g) | Actual (g) | Label (g) | Actual (g) | Label (g) | Actual (g) |
| 330mL Vanilla | 6 (¶ 37) | 10.6 (Ex. A.10) | 6 (¶ 37) | 3.8 (Ex. A.10) | 0 (¶ 37) | 6.8 |
| 330mL No Nut Butter Cup | 3 (¶ 40) | 9.0 (Ex. A.11) | 3 (¶ 40) | 5.2 (Ex. A.11) | 0 (¶ 40) | 3.8 |
| 330mL Sea Salted Caramel | 3 (¶ 42) | 6.9 (Ex. A.12) | 3 (¶ 42) | 4.2 (Ex. A.12) | 0 (¶ 42) | 2.7 |
| 355mL Chocolate | 3 (¶ 27) | 7.8 (Ex. A.4) | 3 (¶ 27) | 2.2 (Ex. A.4) | 0 (¶ 27) | 5.6 |
| 355mL Vanilla | 3 (¶ 32) | 11 (Ex. A.8) | 3 (¶ 32) | 3.4 (Ex. A.8) | 0 (¶ 32) | 7.6 |

65.     As the chart shows, OWYN fails to disclose the correct amount of net carbs in the Products.

66.     On information and belief, OWYN's inaccurate claims of the amount of Net Carbs is an ongoing and systemic problem.  The same independent laboratory performed the same set of laboratory tests on three of the Products in April 2022, two full years before the above-described tests.

67.     Again, the laboratory performed the tests on a composite sample that included different samples for each of three of the Products, where each of the samples was collected from different retail locations and where each of the samples for each of the three Products had the same lot number and/or the same expiration date.

68.     Again, all tests and methods used by the laboratory are specifically approved by AOAC International and were performed according to AOAC International methods and best practices.

---

[6] This analysis assumes that the Defendants define "Net Carbs" to be total carbohydrates minus dietary fiber.  We have no way of knowing though as the Defendants have not defined the term "Net Carbs" anywhere, including on the Products' labels.

69.     Set forth below are the results, which include the specific citation to the appropriate laboratory report all of which are attached hereto and all of which have been incorporated by reference to this complaint.  The net carbs are calculated by subtracting dietary fiber from total carbohydrates:

| Beverage | Total Carbohydrates | | Dietary Fiber | | Net Carbs | |
|---|---|---|---|---|---|---|
| | Label (g) | Actual (g) | Label (g) | Actual (g) | Label (g) | Actual (g) |
| 330mL Vanilla | 6 (Fn 5) | 8.4 (Ex. A.9) | 6 (Fn 5) | 5.7 (Ex. A.9) | 6 (¶ 37) | 2.7 |
| 355mL Chocolate | 7 (Fn 3) | 10.6 (Ex. A.1) | 7 (Fn 3) | 6.5 (Ex. A.1) | 7 (¶ 27) | 4.1 |
| 355mL Vanilla | 7 (Fn 4) | 9.3 (Ex. A.5) | 7 (Fn 4) | 6.9 (Ex. A.5) | 7 (¶ 32) | 2.4 |

70.     Consumers rely on net carb labels in adhering to specific dietary regimens such as ketogenic and low-carb diets.  This information can be critical for individuals who suffer from diabetes.  Any discrepancies can lead to unintended, sometimes serious, dietary consequences.  OWYN's failure to provide accurate net carb information not only misleads consumers but also undermines the trust that consumers place in the brand and its products.

71.     The Products are misbranded under 21. U.S.C §343(r) and 21 C.F.R. § 1.01.13(i)(3) because OWYN has significantly more "Net Carbs" than OWYN claims on the Products' packaging.  As demonstrated by the independent laboratory tests, the actual "Net Carb" content of OWYN's products is far higher than the "0 Net Carbs" claim made on the packaging.  Moreover, OWYN simply fails to define how it calculates Net Carbs on the packaging as required.  This misbranding not only violates federal labeling requirements but also deceives consumers, leading them to believe that they are consuming a product with fewer carbohydrates than is actually the case.  Consequently, OWYN's inaccurate labeling practices represent a serious violation of consumer protection laws and industry standards.

**Three of the Products are misbranded because each has more sugar than OWYN claims in the nutrition facts labels.**

72.     In April 2024, an independent laboratory tested the Products for, among other things, the sugar levels in each of the Products.

73.    The laboratory performed the tests on a composite sample that included 12 different samples for each Product type, where each of the 12 samples were collected from different retail locations and where each of the 12 samples for each Product had the same lot number and/or the same expiration date.

74.    All tests and methods used by the laboratory are specifically approved by AOAC International and were performed according to AOAC International methods and best practices.

75.    Set forth below are the results, which include the specific citation to the appropriate laboratory report all of which are attached hereto and all of which have been incorporated by reference to this complaint:

| Beverage | Sugar (Label) | Sugar (g) |
|---|---|---|
| **330mL Vanilla** | 0 (¶ 37) | 2.1 (Ex. A.10) |
| **330mL No Nut Butter Cup** | 0 (¶ 40) | 2.4 (Ex. A.11) |
| **330mL Sea Salted Caramel** | 0 (¶ 42) | 6.9 (Ex. A.12) |

76.    As the chart shows, OWYN fails to disclose the correct amount of sugar in three of the Products.  These three Products are misbranded under 21 § CFR 101.60 (c) because OWYN has significantly more sugar than OWYN claims in the Products Nutrition Facts Label. These misrepresentations are not only misleading but also harmful to consumers who rely on accurate labeling to make informed dietary choices, particularly those managing sugar intake for health reasons such as diabetes or weight control.  OWYN's inaccurate sugar content labeling constitutes a clear violation of federal labeling regulations and underscores the deceptive nature of its marketing practices.

**Three of the Products were misbranded for a significant fraction of the class period for having less protein than represented**

77.    Over the past two years, an independent laboratory has measured the protein levels of three of the Products.

78.    In all but one instance, the laboratory performed the tests on a composite sample that included different samples for each Product type, where each of the samples was collected

from different retail locations, and where each of the samples for each Product had the same lot
number and/or the same expiration date.

79.    All tests and methods used by the laboratory are specifically approved by AOAC
International and were performed according to AOAC International methods and best practices.

80.    Set forth below are the results from the first set of tests conducted in March 2022,
which include the specific citation to the appropriate laboratory report, all of which are attached
hereto and incorporated by reference to this complaint:

| Beverage | Protein (g) (Label) | Actual Protein (g) |
|---|---|---|
| **330mL Vanilla** | 32 (¶ 37) | 28.0 (Ex. A.9) |
| **355mL Chocolate** | 35 (Fn 3) | 29.2 (Ex. A.1) |
| **355mL Vanilla** | 35 (Fn 4) | 29.7 (Ex. A.5) |

81.    As the chart shows, OWYN failed to disclose the correct amount of protein in
three of the Products during the March 2022 testing.

82.    Below are the results from the second set of tests conducted in December 2022,
which also include the specific citation to the appropriate laboratory report, all of which are
attached hereto and incorporated by reference to this complaint:

| Beverage | Protein (g) (Label) | Actual Protein (g) |
|---|---|---|
| **355mL Chocolate** | 35 (Fn 3) | 25.8 (Ex. A.2) |
| **355mL Vanilla** | 35 (Fn 4) | 24.5 (Ex. A.6) |

83.    The December 2022 test results further confirm that OWYN continued to
misrepresent the protein content in these Products, with one Product containing as much as 23%
less protein than stated on the label.

84.    Below are the results from the third set of tests conducted in October 2023, with
the specific citation to the appropriate laboratory report attached hereto and incorporated by
reference to this complaint:

| Beverage | Protein (g) (Label) | Actual Protein (g) |
|---|---|---|
| **355mL Chocolate** | 32 (¶ 27) | 27.2 (Ex. A.3) |
| **355mL Vanilla** | 32 (¶ 32) | 27.6 (Ex. A.7) |

CLASS ACTION COMPLAINT - 20

85. The October 2023 test results continue to demonstrate that OWYN's labeling practices were consistently inaccurate, with the Products containing less protein than represented on the nutrition facts labels. This pattern of misrepresentation indicates a systemic issue within OWYN's labeling and quality control processes.

86. Finally, the results from the most recent set of tests conducted in May 2024 are set forth below, with the specific citation to the appropriate laboratory report attached hereto and incorporated by reference to this complaint:

| Beverage | Protein (Label) | Protein |
|---|---|---|
| 330mL Vanilla | 32 (¶ 37) | 28.1 (Ex. A.10) |
| 330mL No Nut Butter Cup | 32 (¶ 40) | 31.5 (Ex. A.11) |
| 330mL Sea Salted Caramel | 32 (¶ 42) | 31.7 (Ex. A.12) |
| 355mL Chocolate | 32 (¶ 27) | 31.8 (Ex. A.4) |
| 355mL Vanilla | 32 (¶ 32) | 32.5 (Ex. A.8) |

87. The May 2024 test results indicate that several Products still contained less protein than claimed, though the discrepancies were smaller than in previous tests.

88. This misbranding under 21 C.F.R. § 101.9(g)(4)(i) reflects OWYN's ongoing failure to ensure the accuracy of its nutrition facts labels, leading to consumer deception and regulatory violations. By overstating the protein content during the class period, OWYN misled consumers about the true nutritional value of its products, which constitutes a serious breach of consumer trust and regulatory compliance. The pattern of misrepresentation demonstrates a systemic issue within OWYN's labeling practices that must be addressed to ensure consumers receive the full benefits they expect based on the product's nutritional claims.

## CLASS ACTION ALLEGATOINS

89. Plaintiff brings this action on his own behalf and on behalf of all persons similarly situated. Such a representative action is necessary to prevent and remedy the deceptive, unlawful, and unfair practices alleged herein.

90.    This action is brought and may be properly maintained as a class action pursuant to the provisions of Code of Civil Procedure § 382.  Plaintiff brings this action on half of himself and all members of the class, defined as follows:

     a.  **California Class:** All persons who purchased the Products within the State of California for personal use and not for resale during the fullest period allowed by law.

     b.  **Nationwide Class:** All persons who purchased the Product within the United States for personal use and not for resale during the fullest period allowed by law.

     c.  **Class Members:** Members of the California Class and Nationwide Class are referred to herein as "Class Members" or members of the "Class."

91.    The following are excluded from the Class: (1) any Judge presiding over this action and members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

92.    Plaintiff reserves the right to amend the Class definitions or add a Class or Classes if discovery and/or further investigation reveal that the Class definitions should be narrowed, expanded, or otherwise modified.

93.    The Class is so numerous that joinder of all members is impracticable, in accordance with California Code of Civil Procedure § 382.  While the exact number of Class Members is unknown to Plaintiff at this time, given the nature of the claims and the volume of sales of the Products in California and nationwide, Plaintiff believes there are tens of thousands of Class Members.  The Class is so numerous that the disposition of their claims in a class action will benefit the parties and the Court.

94.    There is a well-defined community of interest among the members of the proposed class.  Plaintiff, like all other Class Members, purchased the Products in reliance on the

macronutrient labeling and the various representations that the Products contained zero net carbs, zero sugar, and was keto friendly. The factual bases of Defendants' misconduct are common to all Class Members and represent a common practice of wrongful conduct resulting in damages to all Class Members.

95. There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. The common questions of fact include, but are not limited to:

      a. Whether Defendants consistently and uniformly misrepresented the nutritional content, including protein, carbohydrates, net carbohydrates, and sugar levels, on the labels and packaging of their Products, affecting all Class Members in a similar manner;

      b. Whether the discrepancies between the labeled nutritional content and the actual nutritional content, as revealed by independent laboratory testing, were systemic and pervasive across all Products sold to Class Members, demonstrating a widespread pattern of deceptive practices;

      c. Whether Defendants were aware or should have been aware of the discrepancies in the nutritional content and deliberately chose to mislead consumers through false labeling and marketing, indicating a uniform intent to deceive Class Members;

      d. Whether the misrepresentations regarding nutritional content were material to the purchasing decisions of the Class Members, with a reasonable consumer likely to have been influenced by the inaccurate information when deciding to purchase the Products; and

      e. Whether all Class Members suffered economic harm due to the misrepresentation of nutritional content, either by paying a premium for Products that did not meet the advertised claims or by purchasing Products they would not have otherwise bought had they known the truth.

96. The common questions of law include, but are not limited to:

a.  Whether Defendants omitted and/or failed to disclose material facts concerning the Products;

b.  Whether Defendants misrepresented any of the qualities or characteristics of the Products;

c.  Whether Defendants' conduct was unlawful, unfair, fraudulent, and/or deceptive;

d.  Whether Defendants breached express and/or implied warranties to Plaintiff and Class Members;

e.  Whether Defendants breached a duty to each Class Member;

f.  Whether Defendants' conduct violates the California Consumer Legal Remedies Act, Civil Code §§ 1750, *et seq.*;

g.  Whether Defendants' conduct violates the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

h.  Whether Defendants' conduct violates the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

i.  Whether Defendants' conduct alleged herein should be enjoined;

j.  Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged herein such that it would be inequitable for Defendants to retain the benefits conferred upon it by Plaintiff and the proposed Class; and

k.  Whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

97.    Plaintiff's claims are typical of the claims of other Class Members.  Plaintiff and all Class Members have sustained economic damage arising out of the common course of conduct as alleged herein.

98.    Plaintiff will fairly and adequately represent and protect the interests of the Class. They have retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources necessary to do so.  Neither Plaintiff nor his counsel has any interest adverse to those of the Class.

CLASS ACTION COMPLAINT - 24

99.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable. Further, as the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class Members to redress the wrongs done to them.  The cost to the court system of such individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of identical factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

100.    Plaintiff and the Class are entitled to recover reasonable attorneys' fees and costs pursuant to applicable law, including but not limited to, California Code of Civil Procedure § 1021.5, which provides for the recovery of attorneys' fees in cases that result in the enforcement of an important right affecting the public interest. The prosecution of this action, through its outcome, will confer a significant benefit on a large class of persons by addressing Defendants' unlawful practices and will serve as a deterrent to similar conduct in the future. Additionally, pursuant to California Civil Code § 1780(e), Business and Professions Code §§ 17200 and 17500, and other applicable statutes, Plaintiff and the Class seek an award of reasonable attorneys' fees and costs as part of the relief requested in this action.

## CAUSES OF ACTION

### COUNT I
**Violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

101.    Plaintiff incorporates by references and realleges each and every allegation contained in paragraphs 1 through 100 above as though fully set forth herein.

102.    The Products qualify as "goods" as defined by Civil Code § 1761(a).

103.    Plaintiff and California Class Members' purchases of the Products are "transactions" as defined by Civil Code § 1761(e).

CLASS ACTION COMPLAINT - 25

104.    Plaintiff and California Class Members are "consumers" as defined by Civil Code § 1761(d) who purchased the Defendants' Products for personal, family, or household use.

105.    Plaintiff and Class Members risk irreparable injury as a result of the use or employment by Defendants of unfair, unlawful, or deceptive methods, acts, and practices prohibited by Civil Code § 1770, undertaken by Defendants in transactions intended to result and/or which did result in the sale of goods to consumers.

106.    During the class period, Defendants have violated Civil Code § 1770 though the acts alleged herein, thereby entitling Plaintiff and each Class Member to relief under Civil Code § 1780, by, *inter alia*:

    a.    "Representing that goods… have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have."  Civil Code § 1770(a)(5);

    b.    "Representing that goods… are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Civil Code § 1770(a)(7);

    c.    "Advertising goods or services with intent not to sell them as advertised."  Civil Code § 1770(a)(9); and

    d.    "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  Civil Code § 1770(a)(16).

107.    As detailed in the body of this Complaint, Defendants has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding the Products' benefits or characteristics that they did not in fact have, and represented the Product to be of a quality that was not true.  Indeed, Defendants concealed this information from Plaintiff and California Class Members.

108.    The Products do not have the nutritional content claimed on the Products' advertising, labeling, or other representations, and are therefore of inferior quality and trustworthiness compared to other products in the industry.  As detailed above, Defendants further violated the CLRA when they falsely represented that the Products meet a certain standard or quality.

109.    As detailed above, Defendants violated the CLRA when they advertised their Products and omitted information that would have alerted consumers to the Products' true nutrition contents.

110.    Defendants' deceptive practices were specifically designed to induce Plaintiff and California Class Members to purchase or otherwise acquire the Product.

111.    Defendants engaged in uniform marketing efforts to reach California Class Members, their agents, and/or third parties upon whom they relied, to persuade them to purchase and use the Product manufactured by Defendants.  Defendants' packaging, advertising, marketing, website, and retailer product identification and specifications contain numerous false and misleading statements regarding the quality of the Product.

112.    Defendants omitted and concealed information and material facts from Plaintiff and California Class Members.

113.    In their purchase of the Products, Plaintiff and California Class Members relied on Defendants' representations and omissions of material fact that the Product contained fewer grams of protein and fiber and more grams of carbohydrates and sugar than advertised.

114.    These business practices are misleading and/or likely to mislead consumers and should be enjoined.

115.    Defendants have failed to provide or offer an appropriate correction, repair, replacement, or other remedy, as set forth in Civil Code § 1782(b), for the above-mentioned violations of law.

116.    Defendants' violations of Civil Code § 1770 present a continuing threat to Class Members and members of the public in that Defendants are continuing to engage in these practices, are continuing to refuse to refund amounts paid by consumers, and will not cease until an injunction is issued by the Court.  Unless Defendants are enjoined from continuing to engage in these practices, Plaintiff and the Class Members, who lack an adequate remedy at law to deter Defendants' wrongful conduct, will be irreparably harmed.

117.    Plaintiff has suffered damage as a result of Defendants' violations of Civil Code § 1770, in that he paid for a Product he would not have purchased knowing its true macronutrient

profile, or he paid more for the Product than it was actually worth because he attributed a price premium to the macronutrient profile.

118. By letters dated May 20, 2024, and July 3, 2024, and mailed as directed in Civil Code § 1782, Plaintiff, by his counsel, has notified Defendants of their violations of the Consumer Legal Remedies Act and has demanded that Defendants provide a remedy that rectifies its conduct. A true and correct copy of the May 20 letter is attached hereto as **Exhibit B**. A true and correct copy of the July 3 letter is attached hereto as **Exhibit C**. More than thirty days have elapsed since Plaintiff mailed the letter. Defendants have not remedied the wrongs described in the letter and in this Complaint.

119. Defendants' conduct is sufficiently blameworthy to merit the imposition of punitive damages pursuant to Civil Code § 1780(a)(4), to punish, deter and make an example of defendants.

120. Plaintiffs and the Class are entitled to an award of attorneys' fees and costs against Defendants pursuant to the provisions of Civil Code § 1780(d).

## <u>COUNT II</u>
**Violation of the California False Advertising Law ("UCL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

121. Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 100 above as though fully set forth herein.

122. California Business and Professions Code Section 17500, et seq. ("FAL") prohibits advertising in California that is untrue or misleading and which is known, or should have been known, to be untrue or misleading.

123. Defendants' advertisements, labeling, and marketing materials contained statements and representations that the Products possessed certain nutritional qualities, including but not limited to the total amounts of protein, carbohydrates, net carbohydrates, and sugar. These representations were untrue and misleading because the Products did not contain the advertised amounts of these macronutrients.

124.     Defendants' advertising and labeling were likely to deceive a reasonable consumer and did deceive Plaintiff and California Class Members into believing that the Products had nutritional qualities that they did not possess.

125.     At the time of making these advertisements, Defendants knew or should have known that the representations regarding the nutritional content of the Products were false, misleading, and deceptive.

126.     Defendants intended for consumers, including Plaintiff and the California Class Members, to rely on the false and misleading representations in purchasing the Products, and Plaintiff and the California Class Members did, in fact, rely on these representations.

127.     As a result of Defendants' untrue and misleading advertisements, Plaintiff and California Class Members have suffered economic injury by purchasing Products that did not conform to the representations made by Defendants, resulting in monetary losses.

128.     Pursuant to California Business and Professions Code Section 17535, Plaintiff, on behalf of himself and the California Class, seeks an order of this Court enjoining Defendants from continuing to engage in the false advertising practices described in this Complaint.

129.     Plaintiff, on behalf of himself and the California Class, further seeks an order requiring Defendants to make full restitution of all amounts acquired by means of Defendants' false and misleading advertising practices, including disgorgement of all profits derived from the sale of the Products that did not meet the nutritional claims advertised.

130.     As a direct and proximate result of Defendants' violations of the FAL, Plaintiff and the California Class Members are entitled to equitable relief, including but not limited to restitution, and any other relief that the Court deems just and proper.

### <u>COUNT III</u>
**Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

131.     Plaintiff incorporates by references and realleges each and every allegation contained in paragraphs 1 through 100 above as though fully set forth herein.

132.     California Business and Professions Code Section 17200 *et seq*. ("Section 17200"), also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

133.     Defendants violated the "unfair," "unlawful," and "fraudulent" prongs of the UCL by, *inter alia*, misrepresenting the total amounts of protein, carbohydrates, net carbohydrates, and sugar, with respect to the labeling and advertising of its Products.  At the time of its misrepresentations, Defendants were either aware the Products contained less protein, less fiber, more total carbohydrates, and more sugar, which no reasonable consumer would expect given the Products' labeling, or was aware that it lacked the information and/or knowledge required to make such a representation truthfully.  Defendants concealed, omitted, and failed to disclose this information to Plaintiff and California Class Members.

134.     Defendants' conduct above violated the "unfair" prong of the UCL because its utility (promoting sales) is significantly outweighed by the gravity of the harm that it imposes on consumers (damage in the form of a price premium for an inferior, mislabeled product). Defendants have alternatives to this conduct that would be less harmful to consumers (i.e., correctly labeling the Products or formulating a better Product), but they do not employ them because their present conduct is more profitable and beneficial to themselves than the alternatives.

135.     In addition, the conduct above violates the "unfair" prong because the practice is oppressive, unscrupulous, and/or substantially injurious to consumers.

136.     Defendants' conduct violated the "unlawful" prong of the UCL because it violated Civil Code §§ 1770, *et seq*, insofar as it violated numerous federal regulations regarding food labels.

137.     As a direct and proximate result of Defendants' unfair, unlawful, and deceptive business practices, Plaintiff and the Class Members have suffered injury in fact.

138.     As a direct and proximate result of Defendants' unfair, unlawful, and deceptive business practices, Defendants have been unjustly enriched and should be ordered to make

restitution to Plaintiffs and the Class Members pursuant to Business and Professions Code §§ 17203 and 17204.

139.    Defendants' unfair, unlawful, and fraudulent business practices described herein present a continuing threat to Plaintiffs, the Class, and members of the public in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendants' conduct is causing, and will continue to cause, irreparable injury to Plaintiff and the Class unless enjoined or restrained.

<u>**COUNT IV**</u>
**Breach of Express and Implied Warranties**
**(On Behalf of Plaintiff and the National Class)**

140.    Plaintiff incorporates by references and realleges each and every allegation contained in paragraphs 1 through 100 above as though fully set forth herein.

141.    Defendants expressly warranted to Plaintiff and the Class that the Products contained the macronutrient amounts OWYN claimed in the nutrition facts label and were "O Net Carbs," "Keto Friendly," and "Zero Sugar," among other nutritional benefits.

142.    Defendants further impliedly warranted that the Product provided no impact on blood sugar content.

143.    Defendants further impliedly warranted that the Products were of merchantable quality and fit for their ordinary purposes, including being suitable for consumers adhering to low-carbohydrate or ketogenic diets.

144.    Plaintiff and the Class purchased the Products based on these express and implied warranties, reasonably relying on Defendants' representations.

145.    Defendant breached these warranties by providing a Product that did not conform to the advertised qualities.  Specifically: (1) the Products contained more net carbohydrates than disclosed; (2) the Products were not "Keto Friendly" as they contained ingredients in concentrations incompatible with a ketogenic diet; and (3) the Products' "Zero Sugar" claims were false as they contained sugar.

146.    As a direct and proximate result of Defendants' breaches, Plaintiff and the Class have suffered damages, including the purchase price of the Product and the loss of the benefit of their bargain.

## COUNT V
### Negligent Misrepresentation
### (On Behalf of Plaintiff and the National Class)

147.     Plaintiff incorporates by references and realleges each and every allegation contained in paragraphs 1 through 100 above as though fully set forth herein.

148.     Defendant supplied false and misleading information regarding the Products' nutritional content and suitability for specific diets, including the macronutrient information in the Nutrition Facts Panel as well as the following representations: "0 Net Carbs," "Keto Friendly," and "Zero Sugar."

149.     Defendants made these misrepresentations without exercising reasonable care in verifying the accuracy of these claims.

150.     Plaintiff and the Class reasonably relied on these misrepresentations in purchasing the Product, believing it was suitable for their dietary needs.

151.     As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and the Class suffered economic loss and other damages.

## COUNT VI
### Unjust Enrichment
### (On Behalf of Plaintiff and the National Class)

152.     Plaintiff incorporates by references and realleges each and every allegation contained in paragraphs 1 through 100 above as though fully set forth herein.

153.     Defendants have been unjustly enriched at the expense of Plaintiff and the Class by selling Products that did not conform to its advertised qualities, including macronutrient levels as well as the following representations: "0 Net Carbs," "Keto Friendly," and "Zero Sugar."

154.     Plaintiff and the Class conferred a benefit upon Defendants by purchasing the Product based on these misrepresentations.

155.     It would be unjust for Defendants to retain the profits from these transactions, as the Product did not meet the expectations set by its labeling and marketing.

156.     Plaintiff and the Class seek restitution of all amounts by which Defendants have been unjustly enriched, including disgorgement of all profits obtained from the sale of the Products.

1

2

### **PRAYER FOR RELIEF**

3

4

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment, including of entry of an order as follows:

5

6

7

a) Declaring that this action is properly maintained as a class action, certifying the proposed Classes, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

8

b) Directing that Defendants bear the costs of any notice sent to the Classes;

9

c) Ordering Defendants to pay restitution to Plaintiff and the Classes;

10

d) A jury trial and damages according to proof;

11

e) Awarding actual damages to Plaintiff and the Classes;

12

f) Awarding Plaintiff and members of the Classes statutory damages, as provided by the applicable state consumer protection statutes invoked above;

13

14

g) Awarding attorneys' fees and litigation costs to Plaintiff and members of the Classes;

15

h) Civil penalties, prejudgment interest, and punitive damages as permitted by law; and

i) Ordering such other and further relief as the Court deems just and proper.

16

17

### **JURY TRIAL DEMAND**

18

19

Plaintiff hereby demands a jury trial of the claims asserted in this Class Action Complaint.

20

21

22

Dated 9/12/2024

23

24

25

Alec Pressly

26

27

28

CLASS ACTION COMPLAINT - 33

# EXHIBIT A



**KRUEGER FOOD LABORATORIES, INC.**

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

| Submitted by: | | Report Date: 8/12/2022 |
|---|---|---|
| George Pressly | | Receipt Date: 3/21/2022 |
| Pressly Law | | |
| ▆▆▆▆▆▆▆ | | **REVISED REPORT** |

| PO #: | Reference: | |
|---|---|---|

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Protein Drink | OWYN Elite PRO Plant Powered Protein Drink, Chocolate 355mL Plastic, Best By 04 APR 2023, Composite 7 | C3192 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 87.05 |
| ASH | g/100g | 0.56 |
| TOTAL FAT | g/100g | 1.70 |
| PROTEIN (Kjeldahl) | g/100g | 7.84 |
| TOTAL CARBOHYDRATE | g/100g | 2.85 |
| FIBER | g/100g | 1.73 |
| CALORIES[1] | cal/100g | 58 |
| | | |
| TOTAL SUGARS | g/100g | 0.0 |
| FRUCTOSE | g/100g | <0.1 |
| GLUCOSE | g/100g | <0.1 |
| SUCROSE | g/100g | <0.1 |
| MALTOSE | g/100g | <0.1 |
| LACTOSE | g/100g | <0.1 |
| | | |
| SERVING SIZE[2] | g | 373 |
| MOISTURE | g/serving | 324.7 |
| ASH | g/serving | 2.1 |
| TOTAL FAT | g/serving | 6.3 |
| PROTEIN (Kjeldahl) | g/serving | 29.2 |
| TOTAL CARBOHYDRATE | g/serving | 10.6 |
| CALORIES | cal/serving | 217 |
| TOTAL SUGARS | g/serving | 0.0 |
| FIBER | g/serving | 6.5 |

[1]protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2]serving size in grams based on estimated density

Authorized By: _George_

(seal: KRUEGER FOOD LABORATORIES • AUTHORIZED BY • SHERIDA GEORGE)

All results are reported on an "as received" basis unless otherwise stated in the report.  The results in this report relate only to the items tested.  The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation.  Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits.  Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.



**KRUEGER FOOD LABORATORIES, INC.**

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**
George Pressly
Pressly Law

**Report Date:** 12/13/2022
**Receipt Date:** 11/17/2022

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Protein Drink | OWYN Pro Elite Chocolate Plant Protein, 355mL Plastic, Best By 08 DEC 2023, Composite 12 | C4686 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 90.03 |
| ASH | g/100g | 0.55 |
| TOTAL FAT | g/100g | 1.38 |
| PROTEIN (Kjeldahl) | g/100g | 6.97 |
| TOTAL CARBOHYDRATE | g/100g | 1.07 |
| FIBER | g/100g | 1.20 |
| CALORIES[1] | cal/100g | 45 |
| | | |
| TOTAL SUGARS | g/100g | 0.1 |
| FRUCTOSE | g/100g | 0.1 |
| GLUCOSE | g/100g | <0.1 |
| SUCROSE | g/100g | <0.1 |
| MALTOSE | g/100g | <0.1 |
| LACTOSE | g/100g | <0.1 |
| | | |
| SERVING SIZE[2] | g | 370 |
| MOISTURE | g/serving | 333.1 |
| ASH | g/serving | 2.0 |
| TOTAL FAT | g/serving | 5.1 |
| PROTEIN (Kjeldahl) | g/serving | 25.8 |
| TOTAL CARBOHYDRATE | g/serving | 4.0 |
| CALORIES | cal/serving | 165 |
| TOTAL SUGARS | g/serving | 0.4 |
| FIBER | g/serving | 4.4 |

[1]protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2]serving size estimated from volume and solids

**Authorized By:** *George*

SHERIDA GEORGE

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.



# KRUEGER FOOD LABORATORIES, INC.

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**

George Pressly
Pressly Law
41 Stark Street
Nashua, NH 03064

**Report Date:** 10/4/2023
**Receipt Date:** 9/5/2023

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Protein Drink | OWYN Elite Pro Plant Protein Shake Chocolate, 355mL Plastic, Best By 04 DEC 2024 | C6053 |

| Analysis | Unit | Result |
|---|---|---|
| **MOISTURE** | **g/100g** | 89.53 |
| **PROTEIN (Kjeldahl)** | **g/100g** | 7.36 |
| | | |
| **SERVING SIZE**[1] | **g** | 370 |
| **MOISTURE** | **g/serving** | 331.26 |
| **PROTEIN (Kjeldahl)** | **g/serving** | 27.23 |

[1] serving size estimated from volume and solids

**Authorized By:** 

SHERIDA GEORGE

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

# KFL KRUEGER FOOD LABORATORIES, INC. ®

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**
George Pressly
Pressly Law

**Report Date:** 5/15/2024
**Receipt Date:** 4/19/2024

**PO #:**                                                    **Reference:**

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Protein Drink | E-1, OWYN Elite Pro Chocolate, 355mL Plastic, Best By 08 JUL 2025 | C7007 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 86.21 |
| ASH | g/100g | 0.61 |
| TOTAL FAT | g/100g | 1.79 |
| PROTEIN (Kjeldahl) | g/100g | 8.47 |
| TOTAL CARBOHYDRATE | g/100g | 2.92 |
| DIETARY FIBER | g/100g | 0.9 |
| CALORIES[1] | cal/100g | 62 |
| | | |
| TOTAL SUGARS | g/100g | 0.1 |
| FRUCTOSE | g/100g | <0.05 |
| GLUCOSE | g/100g | 0.1 |
| SUCROSE | g/100g | <0.05 |
| MALTOSE | g/100g | <0.05 |
| LACTOSE | g/100g | <0.05 |
| | | |
| SERVING SIZE[2] | g | 375 |
| MOISTURE | g/serving | 323.3 |
| ASH | g/serving | 2.3 |
| TOTAL FAT | g/serving | 6.7 |
| PROTEIN (Kjeldahl) | g/serving | 31.8 |
| TOTAL CARBOHYDRATE | g/serving | 11.0 |
| CALORIES | cal/serving | 231 |
| | | |
| DIETARY FIBER | g/serving | 3.4 |
| TOTAL SUGARS | g/serving | 0.4 |

[1]protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2]serving size estimated from volume and solids

**Authorized By:**

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.



**KRUEGER FOOD LABORATORIES, INC.**

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

| Submitted by: | | |
|---|---|---|
| George Pressly | **Report Date:** | 8/12/2022 |
| Pressly Law | **Receipt Date:** | 3/21/2022 |
| ▓▓▓▓▓▓▓ | **REVISED REPORT** | |

**PO #:**    **Reference:**

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Protein Drink | OWYN Elite PRO Plant Powered Protein Drink, Vanilla, 355mL Plastic, Best By 04 APR 2023, Composite 12 | C3191 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 87.24 |
| ASH | g/100g | 0.49 |
| TOTAL FAT | g/100g | 1.80 |
| PROTEIN (Kjeldahl) | g/100g | 7.97 |
| TOTAL CARBOHYDRATE | g/100g | 2.50 |
| FIBER | g/100g | 1.84 |
| CALORIES[1] | cal/100g | 58 |
| | | |
| TOTAL SUGARS | g/100g | 0.0 |
| FRUCTOSE | g/100g | <0.1 |
| GLUCOSE | g/100g | <0.1 |
| SUCROSE | g/100g | <0.1 |
| MALTOSE | g/100g | <0.1 |
| LACTOSE | g/100g | <0.1 |
| | | |
| SERVING SIZE[2] | g | 373 |
| MOISTURE | g/serving | 325.4 |
| ASH | g/serving | 1.8 |
| TOTAL FAT | g/serving | 6.7 |
| PROTEIN (Kjeldahl) | g/serving | 29.7 |
| TOTAL CARBOHYDRATE | g/serving | 9.3 |
| CALORIES | cal/serving | 217 |
| TOTAL SUGARS | g/serving | 0.0 |
| FIBER | g/serving | 6.9 |

[1] protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2] serving size in grams based on estimated density

**Authorized By:** _(signature)_    _(seal: KRUEGER FOOD LABORATORIES AUTHORIZED REVIEWER / SHERIDA GEORGE)_

All results are reported on an "as received" basis unless otherwise stated in the report.  The results in this report relate only to the items tested.  The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation.  Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits.  Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.



# KRUEGER FOOD LABORATORIES, INC.

*Analytical Services*
*for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**
George Pressly
Pressly Law
████████████

**Report Date:** 12/13/2022
**Receipt Date:** 11/17/2022

**PO #:**     **Reference:**

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Protein Drink | OWYN Pro Elite Vanilla Plant Protein, 355mL Plastic, Best By 30 DEC 2023, Composite 10 | C4687 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 90.12 |
| ASH | g/100g | 0.44 |
| TOTAL FAT | g/100g | 1.43 |
| PROTEIN (Kjeldahl) | g/100g | 6.65 |
| TOTAL CARBOHYDRATE | g/100g | 1.36 |
| FIBER | g/100g | 0.90 |
| CALORIES[1] | cal/100g | 45 |
| TOTAL SUGARS | g/100g | 0.0 |
| FRUCTOSE | g/100g | <0.1 |
| GLUCOSE | g/100g | <0.1 |
| SUCROSE | g/100g | <0.1 |
| MALTOSE | g/100g | <0.1 |
| LACTOSE | g/100g | <0.1 |
| SERVING SIZE[2] | g | 369 |
| MOISTURE | g/serving | 332.5 |
| ASH | g/serving | 1.6 |
| TOTAL FAT | g/serving | 5.3 |
| PROTEIN (Kjeldahl) | g/serving | 24.5 |
| TOTAL CARBOHYDRATE | g/serving | 5.0 |
| CALORIES | cal/serving | 166 |
| TOTAL SUGARS | g/serving | 0.0 |
| FIBER | g/serving | 3.3 |

[1]protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2]serving size estimated from volume and solids

**Authorized By:** *[signature]* *[seal: KRUEGER FOOD LABORATORIES • SHERIDA GEORGE • AUTHORIZED REVIEWER]*

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.



**KRUEGER**
**FOOD**
**LABORATORIES, INC.**

*Analytical Services
for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**

George Pressly
Pressly Law
41 Stark Street
Nashua, NH  03064

**Report Date:** 10/4/2023
**Receipt Date:** 9/5/2023

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Protein Drink | OWYN Elite Pro Plant Protein Shake Vanilla, 355mL Plastic, Best By 04 DEC 2024 | C6054 |

| Analysis | Unit | Result |
|---|---|---|
| **MOISTURE** | **g/100g** | 89.72 |
| **PROTEIN (Kjeldahl)** | **g/100g** | 7.45 |
| | | |
| **SERVING SIZE[1]** | **g** | 370 |
| **MOISTURE** | **g/serving** | 331.96 |
| **PROTEIN (Kjeldahl)** | **g/serving** | 27.57 |

[1]serving size estimated from volume and solids

**Authorized By:** *[signature]*

SHERIDA
GEORGE

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.



## KRUEGER FOOD LABORATORIES, INC.

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

# Certificate of Analysis

**Submitted by:**
George Pressly
Pressly Law

**Report Date:** 5/15/2024
**Receipt Date:** 4/19/2024

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Protein Drink | F-1, OWYN Elite Pro Vanilla, 355mL Plastic, Best By 03 JUN 2025 | C7008 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 87.10 |
| ASH | g/100g | 0.48 |
| TOTAL FAT | g/100g | 1.63 |
| PROTEIN (Kjeldahl) | g/100g | 8.70 |
| TOTAL CARBOHYDRATE | g/100g | 2.09 |
| DIETARY FIBER | g/100g | 0.6 |
| CALORIES[1] | cal/100g | 58 |
| | | |
| TOTAL SUGARS | g/100g | 0.0 |
| FRUCTOSE | g/100g | <0.05 |
| GLUCOSE | g/100g | <0.05 |
| SUCROSE | g/100g | <0.05 |
| MALTOSE | g/100g | <0.05 |
| LACTOSE | g/100g | <0.05 |
| | | |
| SERVING SIZE[2] | g | 373 |
| MOISTURE | g/serving | 324.9 |
| ASH | g/serving | 1.8 |
| TOTAL FAT | g/serving | 6.1 |
| PROTEIN (Kjeldahl) | g/serving | 32.5 |
| TOTAL CARBOHYDRATE | g/serving | 7.8 |
| CALORIES | cal/serving | 216 |
| | | |
| DIETARY FIBER | g/serving | 2.2 |
| TOTAL SUGARS | g/serving | 0.0 |

[1]protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2]serving size estimated from volume and solids

**Authorized By:** _____

SHERIDA GEORGE

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to its use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.



# KRUEGER FOOD LABORATORIES, INC.

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**

George Pressly
Pressly Law

**Report Date:** 8/12/2022
**Receipt Date:** 3/21/2022

**REVISED REPORT**

**PO #:** | **Reference:**

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Protein Drink | OWYN Elite PRO Plant Powered Protein Drink, Vanilla, 330mL Tetra Pak, 08FEB2023, Composite 12 | C3189 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 87.46 |
| ASH | g/100g | 0.46 |
| TOTAL FAT | g/100g | 1.54 |
| PROTEIN (Kjeldahl) | g/100g | 8.10 |
| TOTAL CARBOHYDRATE | g/100g | 2.44 |
| FIBER | g/100g | 1.64 |
| CALORIES[1] | cal/100g | 56 |
| | | |
| TOTAL SUGARS | g/100g | 0.0 |
| FRUCTOSE | g/100g | <0.1 |
| GLUCOSE | g/100g | <0.1 |
| SUCROSE | g/100g | <0.1 |
| MALTOSE | g/100g | <0.1 |
| LACTOSE | g/100g | <0.1 |
| | | |
| SERVING SIZE[2] | g | 346 |
| MOISTURE | g/serving | 302.6 |
| ASH | g/serving | 1.6 |
| TOTAL FAT | g/serving | 5.3 |
| PROTEIN (Kjeldahl) | g/serving | 28.0 |
| TOTAL CARBOHYDRATE | g/serving | 8.4 |
| CALORIES | cal/serving | 194 |
| TOTAL SUGARS | g/serving | 0.0 |
| FIBER | g/serving | 5.7 |

[1] protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2] serving size in grams based on estimated density

**Authorized By:** *[signature]*

SHERIDA
GEORGE

All results are reported on an "as received" basis unless otherwise stated in the report.  The results in this report relate only to the items tested.  The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation.  Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits.  Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

# KFL

**KRUEGER**
**FOOD**
**LABORATORIES, INC.**

*Analytical Services*
*for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

| Submitted by: | | Report Date: 5/15/2024 |
|---|---|---|
| George Pressly | | Receipt Date: 4/19/2024 |
| Pressly Law | | |

| PO #: | Reference: | |
|---|---|---|

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Protein Drink | B, OWYN Elite Pro Plant Protein Vanilla, 330mL Tetra Pak, 04JUL2025, Composite 12 | C7014 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 86.73 |
| ASH | g/100g | 0.66 |
| TOTAL FAT | g/100g | 1.48 |
| PROTEIN (Kjeldahl) | g/100g | 8.07 |
| TOTAL CARBOHYDRATE | g/100g | 3.06 |
| DIETARY FIBER | g/100g | 1.1 |
| CALORIES[1] | cal/100g | 58 |
| | | |
| TOTAL SUGARS | g/100g | 0.6 |
| FRUCTOSE | g/100g | 0.4 |
| GLUCOSE | g/100g | 0.2 |
| SUCROSE | g/100g | <0.1 |
| MALTOSE | g/100g | <0.1 |
| LACTOSE | g/100g | <0.1 |
| | | |
| SERVING SIZE[2] | g | 348 |
| MOISTURE | g/serving | 301.8 |
| ASH | g/serving | 2.3 |
| TOTAL FAT | g/serving | 5.2 |
| PROTEIN (Kjeldahl) | g/serving | 28.1 |
| TOTAL CARBOHYDRATE | g/serving | 10.6 |
| CALORIES | cal/serving | 201 |
| | | |
| DIETARY FIBER | g/serving | 3.8 |
| TOTAL SUGARS | g/serving | 2.1 |

[1]protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2]serving size estimated from volume and solids

Authorized By: _____

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.



**KRUEGER FOOD LABORATORIES, INC.**®

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**
George Pressly
Pressly Law

**Report Date:** 5/15/2024
**Receipt Date:** 4/19/2024

**PO #:**                                     **Reference:**

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Protein Drink | C, OWYN Elite Pro Plant Protein No Nut Butter Cup, 330mL Tetra Pak, 31JUL2025, Composite 12 | C7015 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 85.39 |
| ASH | g/100g | 0.80 |
| TOTAL FAT | g/100g | 2.21 |
| PROTEIN (Kjeldahl) | g/100g | 9.02 |
| TOTAL CARBOHYDRATE | g/100g | 2.58 |
| DIETARY FIBER | g/100g | 1.5 |
| CALORIES[1] | cal/100g | 66 |
| | | |
| TOTAL SUGARS | g/100g | 0.7 |
| FRUCTOSE | g/100g | 0.2 |
| GLUCOSE | g/100g | 0.5 |
| SUCROSE | g/100g | <0.1 |
| MALTOSE | g/100g | <0.1 |
| LACTOSE | g/100g | <0.1 |
| | | |
| SERVING SIZE[2] | g | 349 |
| MOISTURE | g/serving | 298.0 |
| ASH | g/serving | 2.8 |
| TOTAL FAT | g/serving | 7.7 |
| PROTEIN (Kjeldahl) | g/serving | 31.5 |
| TOTAL CARBOHYDRATE | g/serving | 9.0 |
| CALORIES | cal/serving | 231 |
| | | |
| DIETARY FIBER | g/serving | 5.2 |
| TOTAL SUGARS | g/serving | 2.4 |

[1]protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2]serving size estimated from volume and solids

**Authorized By:** _(signature)_

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C7015-202405151146 | Page 1 of 1



# KRUEGER FOOD LABORATORIES, INC.

*Analytical Services for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**
George Pressly
Pressly Law

**Report Date:** 5/15/2024
**Receipt Date:** 4/19/2024

**PO #:**      **Reference:**

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Protein Drink | D, OWYN Elite Pro Plant Protein Sea Salted Caramel, 330mL Tetra Pak, 09AUG2025, Composite 12 | C7016 |

| Analysis | Unit | Result |
|---|---|---|
| MOISTURE | g/100g | 86.22 |
| ASH | g/100g | 0.63 |
| TOTAL FAT | g/100g | 2.06 |
| PROTEIN (Kjeldahl) | g/100g | 9.10 |
| TOTAL CARBOHYDRATE | g/100g | 1.99 |
| DIETARY FIBER | g/100g | 1.2 |
| CALORIES[1] | cal/100g | 63 |
| TOTAL SUGARS | g/100g | 0.4 |
| FRUCTOSE | g/100g | <0.1 |
| GLUCOSE | g/100g | 0.4 |
| SUCROSE | g/100g | <0.1 |
| MALTOSE | g/100g | <0.1 |
| LACTOSE | g/100g | <0.1 |
| SERVING SIZE[2] | g | 348 |
| MOISTURE | g/serving | 300.0 |
| ASH | g/serving | 2.2 |
| TOTAL FAT | g/serving | 7.2 |
| PROTEIN (Kjeldahl) | g/serving | 31.7 |
| TOTAL CARBOHYDRATE | g/serving | 6.9 |
| CALORIES | cal/serving | 219 |
| DIETARY FIBER | g/serving | 4.2 |
| TOTAL SUGARS | g/serving | 1.4 |

[1]protein = 4 cal/g; fat = 9 cal/g; carbohydrate = 4 cal/g
[2]serving size estimated from volume and solids

**Authorized By:**

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

# EXHIBIT B

LAW OFFICE OF ALEC PRESSLY

——— • ———

3110 Main Street, Building C #311
Santa Monica, California
603-809-6610
alec@presslylegal.com

May 23, 2024

<u>**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**</u>

Mark Olivieri
Chief Executive Officer
Only What You Need, Inc.
33 Irving Place
New York, NY 10003 07004

<u>**DEMAND FOR RELIEF PURSUANT TO CAL. CIV. C. SEC. 1750, *et seq*.**</u>

Mr. Olivieri:

My office and Pressly Law Group PLLC represent Emmett Enriques ("Plaintiff"), individually and as a representative of a putative class of all persons similarly situated, as defined below. This is a written demand for relief upon Only What You Need, Inc. ("Defendant" or "OWYN") pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. C. [SEC.] 1750, *et seq.*, concerning false, deceptive, and misleading labeling and advertising for its ready-to-drink protein shakes (the "Shake(s)").

The facts that form the basis of this demand letter are the result of a 24-month investigation into OWYN's labeling practices. The investigation included eighteen laboratory tests across a range of Shake flavors and container sizes. Those tests were performed at various intervals over the last 24 months, with the most recent delivered to the laboratory on April 19, 2024. As indicated on the individual reports, most laboratory tests were performed on composite samples where those composite samples all have the same lot numbers and were collected from different retail locations. This 24-month investigation found that for all the Shake flavors and container sizes, the nutrition facts labels remained constant and did not change and that the vast

majority of the representations OWYN made on the Shakes' containers were also constant and did not change.[1]

The underlying facts alleged herein should not surprise OWYN. On July 7, 2022, my co-counsel, George Pressly, sent a separate demand letter to OWYN informing you of these inconsistencies. On August 11, 2022, OWYN's outside counsel emailed the plaintiff's counsel, acknowledging receipt of the demand letter.[2]  On February 13, 2023, the plaintiff's counsel sent an additional set of laboratory results to OWYN's counsel. Other than the initial acknowledgment on August 11, 2023, OWYN has not responded.

This demand letter focuses on five of the ready-to-drink protein Shakes.[3]  Those five Shakes include the following:

    A.  OWYN Elite PRO Chocolate, 355mL Plastic ("355mL Chocolate"; Ex. A), which includes photographs of the product and four separate laboratory tests performed at various intervals over the last 24 months.

    B.  OWYN Elite PRO Vanilla, 355mL Plastic ("355mL Vanilla"; Ex. B), which includes photographs of the product and four separate laboratory tests performed at various intervals over the last 24 months.

    C.  OWYN Elite PRO Plant Powered Drink, Vanilla, 330mL Tetra Pak ("330mL Vanilla; Ex. C"), which includes photographs of the product and two separate laboratory tests performed at various intervals over the last 24 months.

    D.  OWYN Elite PRO Plant Powered Drink, No Nut Butter Cup, 330mL Tetra Pak ("330 mL No Nut Butter Cup"; Ex. D), which includes photographs of the product and a laboratory test performed in April 2024.

    E.  OWYN Elite PRO Plant Powered Drink, Sea Salted Caramel, 330mL Tetra Pak ("330mL Sea Salted Caramel"; Ex. E), which includes photographs of the product and a laboratory test performed in April 2024.

This demand letter specifically serves as formal notice under Cal. Civ. C. Sec. 1782(a) of Plaintiff's allegations that the Shakes' labeling, packaging, and marketing are false and misleading because of, among other things, the following:

---

[1] The plaintiff's counsel found one substantive change during its investigation.  OWYN sells a 355ml single-serving protein drink in a plastic container in both chocolate and vanilla flavors. OWYN decreased the amount of claimed protein from 35 grams per serving to 32 grams per serving in the nutrition facts label.  This change carried through to various representations on the container as well.

[2] *See* Ex. F.

[3] We have tested additional Shake flavors.  The associated laboratory reports have already been delivered to OWYN via previous communications.  Those flavors include OWYN Elite PRO Plant Powered Drink, Chocolate, 330ml Tetra Pak; OWYN Plant-Based Protein Drink, Dark Chocolate, 330ml Tetra Pak; OWYN Plant-Based Protein Drink, Cookies & Creamless, 330ml Tetra Pak; OWYN Plant-Based Protein Drink, Smooth Vanilla, 330ml Tetra Pak; OWYN Pro Elite No Nut Butter Cup Plant Protein, 355ml in plastic container.  We incorporate by reference the documents transmitting those reports to you and reserve the right to incorporate claims based upon the misbranding of these additional Shake flavors.

(1) The Shakes contain materially less protein than OWYN claims in the Shakes' nutrition facts labels and on the Shakes' labels and containers;

(2) The Shakes contain significantly more total carbohydrates than OWYN claims in the Shakes' nutrition facts labels and on the Shakes' labels and containers;

(3) The term "Net Carb" appears prominently many times on the Shakes' labels and containers. OWYN fails to define the term "Net Carb" on any of the Shakes' labels or containers;

(4) To the extent OWYN intends the term "Net Carbs" to mean total carbohydrates minus fiber, then the Shakes contain significantly more Net Carbs than OWYN claims on the Shakes' labels and containers; and/or

(5) Some Shakes contain significantly more sugar than OWYN claims on those Shakes' nutrition facts labels and on their labels and containers.

Please be advised that this demand letter additionally alleges facts that constitute a cause of action under California's Unfair Competition Law (Cal. Bus. & Prof. C. Sec. 17200, *et seq.*) and False Advertising Law (Cal. Bus. & Prof. C. Sec. 17500, *et seq.*), breach of express and implied warranties, and unjust enrichment.

## PLAINTIFF AND THE CLASS

Plaintiff is a Los Angeles, California resident who purchased Shakes in retail stores throughout Los Angeles County within the class period. He makes this demand on behalf of himself and a putative class composed of all persons residing in the United States who purchased any of the Shakes from May 23, 2020, through the present (the "Class").

When making a decision to purchase the Shakes, Mr. Enriques reasonably relied on the macronutrient levels that OWYN represented and claimed in the Shakes' nutrition facts labels and the many representations OWYN made prominently on all the Shakes' containers. He reasonably believed the Shakes had certain levels of macronutrients based on the Shakes' explicit representations. If he had known that the macronutrient levels were inaccurate at the time of purchase, he would not have purchased the Shakes or would have paid less for them. As a result, Mr. Enriques has suffered damages.

## DISCUSSION

### Consumers care about protein and carbohydrate consumption.

Consumers care deeply about the quantity and quality of food that they purchase and consume. In fact, nearly 4 out of 5 adults aged 20 and older report that they regularly use and rely upon the nutrition facts label when deciding to buy a food product.[4] Moreover, in excess of half of American adults believe that a food product may be deemed healthy based solely on the

---

[4] Economic Research Service, using data from the Centers for Disease Control and Prevention, National Center for Health Statistics, NHANES, *Flexible Consumer Behavior Survey (FCBS)*, wave 2017-March 2020

food's nutritional content.[5]  Specific nutrients such as protein, fat, and carbohydrates are particularly important to consumers on particular diets such as the "keto" or "Atkins" diets. Consumers choose food products to conform to their diets and would not purchase products if they knew those food products do not conform to their dietary choices.

**Federal and California Laws prohibit the misbranding of food products.**

The Food, Drug, and Cosmetic Act (FDCA) prohibits the misbranding of food in interstate commerce. 21 U.S.C. § 331(a)-(c).   A food product is "misbranded" if "its labeling is false or misleading…" 21 U.S.C. § 343(a)(1).  Moreover, food products are misleading if it "purports to be or is represented for special dietary uses, unless its label bears such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses."  21 U.S.C. § 343(j).

The Nutrition Labeling and Education Act ("NLEA") amended the FDCA and created additional food labeling requirements.  Section 343(q) of NELA governs "nutrition information" — the information contained in the mandatory "Nutrition Facts Label" on food products — and sets out certain kinds of information that must be conveyed on the label. 21 U.S.C. § 343(q).

Additionally, California Health and Safety Code Sec. 110100(a) provides that:

All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.

This incorporation of federal food labeling standards into California law means that any food labeling violations under the FDCA and NLEA are simultaneously violations of California law.  *See Fernandez v Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D. Cal. Jan 3, 2018) ("If the net carbs claims do not comply with [21 U.S.C.] § 343(j), Fernandez may pursue a state law claim to the extent that the net carbs claims violate federal law.")  As such, these violations constitute deceptive practices under California's Consumer Legal Remedies Act ("CLRA")

The CLRA protects consumers from sellers who engage in deceptive practices, including the mislabeling or false advertising of products. The CLRA provides a list of "unfair methods of competition and unfair or deceptive acts or practices," specifically:

- "Representing that goods or services have sponsorship, approval, characteristics, ingredients, sues, benefits, or quantities that they do not have;" (1770(a)(5))
- "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (1770(a)(7))
- "Advertising goods or services with intent not to sell them as advertised." (1770(a)(9))

---

[5] Consumer beliefs about healthy foods and diets. (2019). PLoS One, 14(10), e0223098. https://doi.org/10.1371/journal.pone.0223098

4

In addition, California's Unfair Competition Law ("UCL"), codified as Bus. & Prof. C. Sec. 17200, *et seq.*, and its False Advertising Law ("FAL"), codified as Bus. & Prof. C. Sec. 17500, *et seq.,* prohibit unfair competitive practices including, *inter alia*, false advertising.

**The Shakes contain materially less protein than OWYN claims on the nutrition facts labels and on the Shakes' labels and containers.**

Section 343(q) of the NLEA and its implementing regulations require that food producers disclose the total amount of protein in a serving.  *See* 21 C.F.R. § 101.9(c)(7). The allowable variance in the actual amount of protein per serving and the declared amount of protein per serving depends on whether the protein is considered a Class I or Class II nutrient.  Class I nutrients are "added nutrients in fortified or fabricated foods". 21 C.F.R. § 101.9(g)(3)(i).  Class II nutrients are "[n]aturally occurring (indigenous) nutrients" without the introduction of a Class I nutrient that would modify the total amount of the nutrient. 21 C.F.R. § 101.9(g)(3)(ii).The protein in the Shakes is a Class I nutrient because the added protein is fabricated.  "When a vitamin, mineral, protein, or dietary fiber meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label." 21 C.F.R. § 101.9(g)(4)(i).

| Protein (Grams) | 355mL Chocolate | 355mL Vanilla | 330mL Vanilla |
|---|---|---|---|
| **MARCH 2022** | | | |
| **Label** | 35 | 35 | 32 |
| **Test Results** | 29.2 | 29.7 | 28 |
| **Amount Overstated** | **5.7** | **5.3** | **4** |
| **Percent Difference** | **17%** | **15%** | **13%** |
| **NOVEMBER 2022** | | | |
| **Label** | 35 | 35 | |
| **Test Results** | 25.8 | 24.5 | |
| **Amount Overstated** | 9.2 | 10.5 | |
| **Percent Difference** | **26%** | **30%** | |
| **OCTOBER 2023** | | | |
| **Label** | 32 | 32 | |
| **Test Results** | 27.2 | 27.6 | |
| **Amount Overstated** | 4.8 | 4.4 | |
| **Percent Difference** | **15%** | **14%** | |
| **MAY 2024** | | | |
| **Label** | 32 | 32 | 32 |
| **Test Results** | 31.8 | 32.5 | 28.1 |
| **Amount Overstated** | .2 | -.5 | 3.9 |
| **Percent Difference** | **1%** | **-2%** | **12%** |

As the above summary of the laboratory results indicates, the listed Shakes for at least a substantial portion of the class period had significantly less protein than disclosed to consumers. For example, the percent difference between the protein content claimed by OWYN and the actual protein content for the 355 mL Chocolate was as high as 26% in November 2022.  This violates 21 C.F.R. § 101.9(g)(4)(i), which requires a composite of a Class I protein to be at least equal to its labeled value.  21 C.F.R. § 101.9(g)(4)(i).  Since at least July 7, 2022, OWYN had knowledge of this protein-level deficiency.[6]  These misrepresentations render the Shakes misbranded under federal law.  These misrepresentations violate California consumer protection and false advertising law.

**The Shakes contain significantly more total carbohydrates than OWYN claims in the Shakes' nutrition facts labels and on the Shakes' labels and containers.**

Section 343(q) of the NLEA and it's implementing regulations require that food producers disclose the total carbohydrates in each serving of a food product.  "Total Carbohydrates" is determined by "subtraction of the sum of the crude protein, total fat, moisture and ash from the total weight of the food."  21 C.F.R. § 101.9(c)(6).  The chart below is a summary of the results included in Exs. A through E regarding the Shakes' total carbohydrate amounts:

| Carbohydrates | 355mL Chocolate | 355mL Vanilla | 330 mL Vanilla | 330mL No Nut Butter Cup | 330mL Sea Salted Caramel |
|---|---|---|---|---|---|
| **MARCH 2022** | | | | | |
| **Label** | 6 | 3 | 6 | | |
| **Test Results** | 10.6 | 9.3 | 8.4 | | |
| **Amount Understated** | **4.6** | **6.3** | **2.4** | | |
| **Percent Difference** | **77%** | **210%** | **40%** | | |
| **NOVEMBER 2022** | | | | | |
| **Label** | 6 | 3 | | | |
| **Test Results** | 4 | 5 | | | |
| **Amount Understated** | **-2** | **2** | | | |
| **Percent Difference** | **-33%** | **67%** | | | |
| **MAY 2024** | | | | | |
| **Label** | 6 | 3 | 6 | 6 | 3 |
| **Test Results** | 11 | 7.8 | 10.6 | 9 | 6.9 |
| **Amount Understated** | **5** | **4.8** | **4.6** | **3** | **3.9** |
| **Percent Difference** | **83%** | **160%** | **77%** | **50%** | **130%** |

---

[6] *See* Ex. F

These Shakes contain significantly more total carbohydrates than disclosed to consumers on both an actual and percentage basis. For example, the 355 mL Vanilla 355 mL (see Ex. b) is labeled as containing 3 grams of total carbohydrates. However, testing reveals that the Shake has contained between 5 and 9.3 grams of total carbohydrates in the past two years. This runs afoul of 21 C.F.R. § 101.9(g)(4)(i), which requires a composite of a Class I carbohydrate to be at least equal to its labeled value. Since at least July 7, 2022, OWYN has had knowledge of these carbohydrate-level misrepresentations. These misrepresentations render the Shakes misbranded under federal law. These misrepresentations violate California consumer protection and false advertising law.

**The term "Net Carb" appears prominently many times on the Shakes' labels and containers. OWYN fails to define "Net Carb" on any of the Shakes' labels or containers.**

Courts that have addressed the validity of "net carb" representations have generally held that such representations are acceptable only if the food producer also defines how it calculates net carbs on the product label. In *Fernandez v. Atkins Nutritionals, Inc.*, 2019 WL 280028 (S.D. Cal. Jan. 3, 2018), Fernandez alleged that certain snack products manufactured by Atkins Nutritionals, Inc., were misleading because the net carbohydrate representation did not provide any explanation of how it was calculated and sugar alcohol was improperly deducted from net carbohydrates. *Id.* At *1. In support of its Motion to Dismiss, Atkins argued that the state law consumer fraud claims were preempted by the FDCA and NLEA. *Id.* at *4. The court held that the claims were not preempted "to the extent that they are premised on Atkins's failure to disclose how it calculates net carbs on its labels." *Id.* at *9. The reasoning relied on numerous FDA warning letters instructing food manufacturers to disclose their net carbohydrate calculations. *Id.* The court further held that because it "must assume Atkins's labels do not disclose its net carbs calculation method, the allegations raise a plausible claim that Atkins's net carbs claims violate § 101.13(i)(3)." *Id; see also Smith v. Atkins Nutritionals, Inc.* 2:18-cv-04004-MDH (W.D. Miso. 2020)[7]; *Colella v. Atkins Nutritionals Inc.*, Case No 1:17-cv-05867 (E.D.N.Y 2020).

Since this decision, it has become standard in the industry that a food producer defines on the label what it means by "Net Carbs" when that food producer makes the claim. Attached hereto as Exhibit G is a compilation of photographs of other products that define the term Net Carbs on the product's label. The labeling of the Shakes uniformly fails to define "net carbs." This omission alone renders the Shakes false and misleading and violates California consumer protection and false advertising laws. *Fernandez*, 2018 WL 280028, at *9.

---

[7] This case settled on a nationwide basis

**To the extent OWYN intends the term "Net Carbs" to mean total carbohydrates minus fiber, then the Shakes contain significantly more Net Carbs than OWYN claims on the Shakes' labels and containers.**

Equally problematic, as the chart below summarizes, OWYN discloses less than the actual amount of net carbs in at least five of the Shakes.[8] Net carbs claims are nutrient content claims governed by 21 U.S.C. § 343(r). They are subject to the same labeling accuracy requirements as carbohydrates "because 'net carbs' is a configuration of nutrients 'of the type' required to be mentioned on a label by [21 U.S.C.] § 343(q) and its regulations." *Fernandez*, 2018 WL 280028, at *7.

| Net Carbs (Grams) | 355mL Chocolate | 355mL Vanilla | 330 mL Vanilla | 330mL No Nut Butter Cup | 330mL Sea Salted Caramel |
|---|---|---|---|---|---|
| **MAY 2024** | | | | | |
| **Label** | 0 | 0 | 0 | 0 | 3 |
| **Carbohydrates Test Results** | 9 | 6.9 | 11 | 7.8 | 6.9 |
| **Fiber Test Results** | 3.4 | 2.2 | 3.8 | 5.2 | 4.2 |
| **Net Carbs** | **5.6** | **4.7** | **7.2** | **2.6** | **2.7** |

As the above summary of the laboratory results indicates, all of the Shakes have significantly more net carbs than OWYN represents. Since at least July 7, 2022, OWYN has had knowledge of these net carb-level misrepresentations. These misrepresentations render the Shakes misbranded under federal law. These misrepresentations violate California consumer protection and false advertising law.

**Some Shakes contain significantly more sugar than the OWYN claims on those Shakes' nutrition facts labels and on their labels and containers.**

21 CFR 101.60 (c) provides that:

a food may not be labeled with such terms" such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," "trivial source of sugar," "negligible source of sugar," or "dietarily insignificant source of sugar."
unless the following conditions are met:

(i)The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and

(ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient

---

[8] This chart only examines the net carb results in May 2024. Exs. A – E demonstrate that the Shakes were consistently mislabeled with regards to net carbs throughout the proposed class period.

statement is followed by an asterisk that refers to the statement below the list of
ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount
of sugar," or "adds a dietarily insignificant amount of sugar;"

OWYN's products prominently display "0g Sugar" and "Zero Sugar."  However, the
representations are misleading because the Shakes do contain sugar.  Below is a chart that
compares the actual sugar in each relevant Shake with the advertised sugar content.

| Beverage | 330mL Vanilla | 330mL No Nut Butter Cup | 330 mL Sea Salted Caramel |
|---|---|---|---|
| **MAY 2024** | | | |
| **Label** | 0 | 0 | 0 |
| **Test Results** | 2.1 | 2.4 | 1.4 |
| **Amount Understated** | **2.1** | **2.4** | **1.4** |

As the above chart shows, three of the Shakes have sugar despite OWYN's "Zero Sugar"
representations. These misrepresentations render the Shakes misbranded under federal law and
violate California consumer protection and false advertising laws.

### UNFAIR OR DECEPTIVE ACTS OR PRACTICES:

Plaintiff alleges that Defendant engaged in unfair or deceptive acts or practices as
follows:

The Defendant sells the products to consumers in California and across the United States
through false, deceptive, and misleading labeling, advertising, marketing, and promotions. The
defendant's packaging, labeling, and advertising for the Shakes falsely claim and mislead
consumers into believing that (1) the Shakes contain more protein than they actually do, (2) the
Shakes contain fewer carbohydrates than they actually do, (3) the Shakes have fewer net carbs
than they actually do, and (4) the Shakes have less sugar than they actually do.

Defendant's acts and practices, as described herein, constitute unfair methods of
competition and unfair or deceptive acts and practices in the conduct of trade or commerce under
Cal. Civ. C. [SEC.] 1750, *et seq.*  In addition, OWYN's mislabeling and misbranding of the
Shakes constitute violations of these additional statutes which similarly prohibit false advertising
and deceptive practices:

- Unfair Competition Law (UCL) under Business and Professions Code Sec. 17200, et seq.;
- False Advertising Law (FAL) under Business and Professions Code Sec. 17500, et seq.

## INJURIES SUFFERED

Plaintiff, as well as the other members of the Class, have been injured as a result of Defendant's use or employment of unfair or deceptive acts or practices as follows: (a) Plaintiff and the other members of the Class have incurred statutory damages and actual damages, including the amounts they paid for their respective purchases of the falsely and deceptively advertised Shakes during the Class Period; (b) Plaintiff and the other Class members have been injured in the amount of the profits made by Defendant on sales of the Shakes to Plaintiff and the other Class members; and (c) Plaintiff and the other  Class members have suffered non-economic injuries from having purchased a falsely advertised product.  The aggregate amount of actual damages suffered by Plaintiff and the Class cannot be determined without reference to Defendant's records and notice to the Class.

## DEMAND FOR RELIEF

Plaintiff, on behalf of herself and all others similarly situated, demands that Defendant:

1.  Compensate Plaintiff and the other Class members for the actual damages incurred by them including, but not limited to, the total amounts spent by Plaintiff and the other Class members on the Shakes.

2.  Destroy all misleading and deceptive materials and products;

3.  Modify all Shake labeling, packaging and advertising to eliminate misrepresentations;

4.  Allow limited and targeted confirmatory discovery; and

5.  Reimburse Plaintiff and the other Class members for their reasonable attorneys' fees and expenses incurred in bringing this claim.

## REQUEST FOR  PRESERVATION OF EVIDENCE

This letter also serves as a demand that, pending resolution of this matter, the Company and its agents preserve and maintain all of their relevant records for the time period commencing on May 23, 2020 and continuing throughout the duration of this dispute.  Such records include, but are not limited to:

1.  All iterations of the advertisements and labels for the Shakes;

2.  All documents and communications constituting or concerning such labeling or advertising;

3.  All documents and communications concerning the ingredients in these Shakes (including those in possession of third-party vendors);

4.  All documents related to the pricing of these Shakes;

5.  All material safety data sheets;

6.  All consumer complaints and comments regarding the Shakes;

7.  All documents and communications between the Company and retailers regarding the Shakes defects, returns, and consumer complaints about the Shakes;

8.  All documents related to any decision to modify the formulations of the Shakes; and

9.  All documents concerning or consisting of analyses, studies, research, or the like, conducted by you or a third party concerning the natural claim on costs, revenues, savings, pricing, and/or profits.

It is your statutory duty to respond within 30 days of your receipt of this letter. If we do not hear from you within that time, we will assume that you refuse to take any of the corrective actions demanded and file a lawsuit.

If you contend that any of the facts in this letter are inaccurate in any respect, please provide us with all of your facts, contentions, and supporting documents as quickly as possible, but in no event later than 30 days from receipt of this letter. We are available if you want to discuss any of the issues raised in this letter.

Sincerely,

Alec Pressly, Esq.

CC: George Pressly, Esq.

# EXHIBIT C

LAW OFFICE OF ALEC PRESSLY

3110 Main Street, Building C #331
Santa Monica, California
603-809-6601
alec@presslylegal.com

July 3, 2024

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Mark Olivieri
Chief Executive Officer
Only What You Need, Inc.
33 Irving Place
New York, NY 10003 07004

Timothy Kraft, Esq.
Chief Legal and Corporate Affairs Officer
The Simply Good Foods Company
1225 17th Street, Suite 1000
Denver, CO 80202

**DEMAND FOR RELIEF PURSUANT TO CAL. CIV. C. SEC. 1750, *et seq*.[1]**

Mr. Olivieri & Mr. Kraft:

My office and Pressly Law Group PLLC represent Emmett Enriques ("Plaintiff"), individually and as a representative of a putative class of all persons similarly situated, as defined below.  This is a written demand for relief upon Only What You Need, Inc. and The Simply Good Foods Company (collectively the "Defendant" or "OWYN") pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. C. [SEC.] 1750, *et seq.*, concerning false,

---

[1] With the exception of adding The Simply Good Foods Company as a defendant, this letter duplicates a demand letter sent to Only What You Need, Inc. on May 23, 2024. Since then, The Simply Good Foods Company has closed on the acquisition of Only What You Need, Inc.  We, therefore, are sending this duplicate demand letter to comply with the notice requirements of California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*).

deceptive, and misleading labeling and advertising for its ready-to-drink protein shakes (the
"Shake(s)").

The facts that form the basis of this demand letter are the result of a 24-month
investigation into OWYN's labeling practices.  The investigation included eighteen laboratory
tests across a range of Shake flavors and container sizes. Those tests were performed at various
intervals over the last 24 months, with the most recent delivered to the laboratory on April 19,
2024.  As indicated on the individual reports, most laboratory tests were performed on composite
samples where those composite samples all have the same lot numbers and were collected from
different retail locations. This 24-month investigation found that for all the Shake flavors and
container sizes, the nutrition facts labels remained constant and did not change and that the vast
majority of the representations OWYN made on the Shakes' containers were also constant and
did not change.[2]

The underlying facts alleged herein should not surprise OWYN. On July 7, 2022, my co-
counsel, George Pressly, sent a separate demand letter to OWYN informing you of these
inconsistencies. On August 11, 2022, OWYN's outside counsel emailed the plaintiff's counsel,
acknowledging receipt of the demand letter.[3]  On February 13, 2023, the plaintiff's counsel sent
an additional set of laboratory results to OWYN's counsel. Other than the initial
acknowledgment on August 11, 2023, OWYN has not responded.

This demand letter focuses on five of the ready-to-drink protein Shakes.[4]  Those five
Shakes include the following:

  A.  OWYN Elite PRO Chocolate, 355mL Plastic ("355mL Chocolate"; Ex. A), which
      includes photographs of the product and four separate laboratory tests performed at
      various intervals over the last 24 months.
  B.   OWYN Elite PRO Vanilla, 355mL Plastic ("355mL Vanilla"; Ex. B), which
      includes photographs of the product and four separate laboratory tests performed at
      various intervals over the last 24 months.

---

[2] The plaintiff's counsel found one substantive change during its investigation.  OWYN sells a
355ml single-serving protein drink in a plastic container in both chocolate and vanilla flavors.
OWYN decreased the amount of claimed protein from 35 grams per serving to 32 grams per
serving in the nutrition facts label.  This change carried through to various representations on the
container as well.
[3] *See* Ex. F.
[4] We have tested additional Shake flavors.  The associated laboratory reports have already been
delivered to OWYN via previous communications.  Those flavors include OWYN Elite PRO
Plant Powered Drink, Chocolate, 330ml Tetra Pak; OWYN Plant-Based Protein Drink, Dark
Chocolate, 330ml Tetra Pak; OWYN Plant-Based Protein Drink, Cookies & Creamless, 330ml
Tetra Pak; OWYN Plant-Based Protein Drink, Smooth Vanilla, 330ml Tetra Pak; OWYN Pro
Elite No Nut Butter Cup Plant Protein, 355ml in plastic container.  We incorporate by reference
the documents transmitting those reports to you and reserve the right to incorporate claims based
upon the misbranding of these additional Shake flavors.

C.  OWYN Elite PRO Plant Powered Drink, Vanilla, 330mL Tetra Pak ("330mL
Vanilla; Ex. C"), which includes photographs of the product and two separate
laboratory tests performed at various intervals over the last 24 months.
D.  OWYN Elite PRO Plant Powered Drink, No Nut Butter Cup, 330mL Tetra Pak ("330
mL No Nut Butter Cup"; Ex. D), which includes photographs of the product and a
laboratory test performed in April 2024.
E.  OWYN Elite PRO Plant Powered Drink, Sea Salted Caramel, 330mL Tetra Pak
("330mL Sea Salted Caramel"; Ex. E), which includes photographs of the product
and a laboratory test performed in April 2024.

This demand letter specifically serves as formal notice under Cal. Civ. C. Sec. 1782(a) of
Plaintiff's allegations that the Shakes' labeling, packaging, and marketing are false and
misleading because of, among other things, the following:

(1)  The Shakes contain materially less protein than OWYN claims in the Shakes' nutrition
facts labels and on the Shakes' labels and containers;
(2)  The Shakes contain significantly more total carbohydrates than OWYN claims in the
Shakes' nutrition facts labels and on the Shakes' labels and containers;
(3)  The term "Net Carb" appears prominently many times on the Shakes' labels and
containers.  OWYN fails to define the term "Net Carb" on any of the Shakes' labels or
containers;
(4)  To the extent OWYN intends the term "Net Carbs" to mean total carbohydrates minus
fiber, then the Shakes contain significantly more Net Carbs than OWYN claims on the
Shakes' labels and containers; and/or
(5)  Some Shakes contain significantly more sugar than OWYN claims on those Shakes'
nutrition facts labels and on their labels and containers.

Please be advised that this demand letter additionally alleges facts that constitute a cause
of action under California's Unfair Competition Law (Cal. Bus. & Prof. C. Sec. 17200, *et seq.*)
and False Advertising Law (Cal. Bus. & Prof. C. Sec. 17500, *et seq.*), breach of express and
implied warranties, and unjust enrichment.

## PLAINTIFF AND THE CLASS

Plaintiff is a Los Angeles, California resident who purchased Shakes in retail stores
throughout Los Angeles County within the class period.  He makes this demand on behalf of
himself and a putative class composed of all persons residing in the United States who purchased
any of the Shakes from May 23, 2020, through the present (the "Class").

When making a decision to purchase the Shakes, Mr. Enriques reasonably relied on the
macronutrient levels that OWYN represented and claimed in the Shakes' nutrition facts labels
and the many representations OWYN made prominently on all the Shakes' containers.  He
reasonably believed the Shakes had certain levels of macronutrients based on the Shakes'
explicit representations.  If he had known that the macronutrient levels were inaccurate at the
time of purchase, he would not have purchased the Shakes or would have paid less for them.  As
a result, Mr. Enriques has suffered damages.

## DISCUSSION

### Consumers care about protein and carbohydrate consumption.

Consumers care deeply about the quantity and quality of food that they purchase and consume.  In fact, nearly 4 out of 5 adults aged 20 and older report that they regularly use and rely upon the nutrition facts label when deciding to buy a food product.[5]  Moreover, in excess of half of American adults believe that a food product may be deemed healthy based solely on the food's nutritional content.[6]  Specific nutrients such as protein, fat, and carbohydrates are particularly important to consumers on particular diets such as the "keto" or "Atkins" diets. Consumers choose food products to conform to their diets and would not purchase products if they knew those food products do not conform to their dietary choices.

### Federal and California Laws prohibit the misbranding of food products.

The Food, Drug, and Cosmetic Act (FDCA) prohibits the misbranding of food in interstate commerce. 21 U.S.C. § 331(a)-(c).   A food product is "misbranded" if "its labeling is false or misleading…" 21 U.S.C. § 343(a)(1).  Moreover, food products are misleading if it "purports to be or is represented for special dietary uses, unless its label bears such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses."  21 U.S.C. § 343(j).

The Nutrition Labeling and Education Act ("NLEA") amended the FDCA and created additional food labeling requirements.  Section 343(q) of NELA governs "nutrition information" — the information contained in the mandatory "Nutrition Facts Label" on food products — and sets out certain kinds of information that must be conveyed on the label. 21 U.S.C. § 343(q).

Additionally, California Health and Safety Code Sec. 110100(a) provides that:

All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.

This incorporation of federal food labeling standards into California law means that any food labeling violations under the FDCA and NLEA are simultaneously violations of California law.  *See Fernandez v Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D. Cal. Jan 3, 2018) ("If the net carbs claims do not comply with [21 U.S.C.] § 343(j), Fernandez may pursue a state law

---

[5] Economic Research Service, using data from the Centers for Disease Control and Prevention, National Center for Health Statistics, NHANES, *Flexible Consumer Behavior Survey (FCBS)*, wave 2017-March 2020

[6] Consumer beliefs about healthy foods and diets. (2019). PLoS One, 14(10), e0223098. https://doi.org/10.1371/journal.pone.0223098

claim to the extent that the net carbs claims violate federal law.")  As such, these violations constitute deceptive practices under California's Consumer Legal Remedies Act ("CLRA")

The CLRA protects consumers from sellers who engage in deceptive practices, including the mislabeling or false advertising of products. The CLRA provides a list of "unfair methods of competition and unfair or deceptive acts or practices," specifically:

- "Representing that goods or services have sponsorship, approval, characteristics, ingredients, sues, benefits, or quantities that they do not have;" (1770(a)(5))
- "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (1770(a)(7))
- "Advertising goods or services with intent not to sell them as advertised." (1770(a)(9))

In addition, California's Unfair Competition Law ("UCL"), codified as Bus. & Prof. C. Sec. 17200, *et seq.*, and its False Advertising Law ("FAL"), codified as Bus. & Prof. C. Sec. 17500, *et seq.,* prohibit unfair competitive practices including, *inter alia*, false advertising.

### The Shakes contain materially less protein than OWYN claims on the nutrition facts labels and on the Shakes' labels and containers.

Section 343(q) of the NLEA and its implementing regulations require that food producers disclose the total amount of protein in a serving.  *See* 21 C.F.R. § 101.9(c)(7). The allowable variance in the actual amount of protein per serving and the declared amount of protein per serving depends on whether the protein is considered a Class I or Class II nutrient.  Class I nutrients are "added nutrients in fortified or fabricated foods". 21 C.F.R. § 101.9(g)(3)(i).  Class II nutrients are "[n]aturally occurring (indigenous) nutrients" without the introduction of a Class I nutrient that would modify the total amount of the nutrient.  21 C.F.R. § 101.9(g)(3)(ii).The protein in the Shakes is a Class I nutrient because the added protein is fabricated.  "When a vitamin, mineral, protein, or dietary fiber meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label."  21 C.F.R. § 101.9(g)(4)(i).

| Protein (Grams) | 355mL Chocolate | 355mL Vanilla | 330mL Vanilla |
|---|---|---|---|
| **MARCH 2022** | | | |
| Label | 35 | 35 | 32 |
| Test Results | 29.2 | 29.7 | 28 |
| Amount Overstated | **5.7** | **5.3** | **4** |
| Percent Difference | **17%** | **15%** | **13%** |
| **NOVEMBER 2022** | | | |
| Label | 35 | 35 | |
| Test Results | 25.8 | 24.5 | |
| Amount Overstated | 9.2 | 10.5 | |
| Percent Difference | **26%** | **30%** | |
| **OCTOBER 2023** | | | |
| Label | 32 | 32 | |
| Test Results | 27.2 | 27.6 | |
| Amount Overstated | 4.8 | 4.4 | |
| Percent Difference | **15%** | **14%** | |
| **MAY 2024** | | | |
| Label | 32 | 32 | 32 |
| Test Results | 31.8 | 32.5 | 28.1 |
| Amount Overstated | .2 | -.5 | 3.9 |
| Percent Difference | **1%** | **-2%** | **12%** |

As the above summary of the laboratory results indicates, the listed Shakes for at least a substantial portion of the class period had significantly less protein than disclosed to consumers. For example, the percent difference between the protein content claimed by OWYN and the actual protein content for the 355 mL Chocolate was as high as 26% in November 2022. This violates 21 C.F.R. § 101.9(g)(4)(i), which requires a composite of a Class I protein to be at least equal to its labeled value. 21 C.F.R. § 101.9(g)(4)(i). Since at least July 7, 2022, OWYN had knowledge of this protein-level deficiency.[7] These misrepresentations render the Shakes misbranded under federal law. These misrepresentations violate California consumer protection and false advertising law.

**The Shakes contain significantly more total carbohydrates than OWYN claims in the Shakes' nutrition facts labels and on the Shakes' labels and containers.**

Section 343(q) of the NLEA and it's implementing regulations require that food producers disclose the total carbohydrates in each serving of a food product. "Total Carbohydrates" is determined by "subtraction of the sum of the crude protein, total fat, moisture and ash from the total weight of the food." 21 C.F.R. § 101.9(c)(6). The chart below is a summary of the results included in Exs. A through E regarding the Shakes' total carbohydrate amounts:

---

[7] *See* Ex. F

| Carbohydrates | 355mL Chocolate | 355mL Vanilla | 330 mL Vanilla | 330mL No Nut Butter Cup | 330mL Sea Salted Caramel |
|---|---|---|---|---|---|
| **MARCH 2022** | | | | | |
| **Label** | 6 | 3 | 6 | | |
| **Test Results** | 10.6 | 9.3 | 8.4 | | |
| **Amount Understated** | **4.6** | **6.3** | **2.4** | | |
| **Percent Difference** | **77%** | **210%** | **40%** | | |
| **NOVEMBER 2022** | | | | | |
| **Label** | 6 | 3 | | | |
| **Test Results** | 4 | 5 | | | |
| **Amount Understated** | **-2** | **2** | | | |
| **Percent Difference** | **-33%** | **67%** | | | |
| **MAY 2024** | | | | | |
| **Label** | 6 | 3 | 6 | 6 | 3 |
| **Test Results** | 11 | 7.8 | 10.6 | 9 | 6.9 |
| **Amount Understated** | **5** | **4.8** | **4.6** | **3** | **3.9** |
| **Percent Difference** | **83%** | **160%** | **77%** | **50%** | **130%** |

These Shakes contain significantly more total carbohydrates than disclosed to consumers on both an actual and percentage basis. For example, the 355 mL Vanilla 355 mL (see Ex. b) is labeled as containing 3 grams of total carbohydrates. However, testing reveals that the Shake has contained between 5 and 9.3 grams of total carbohydrates in the past two years. This runs afoul of 21 C.F.R. § 101.9(g)(4)(i), which requires a composite of a Class I carbohydrate to be at least equal to its labeled value. Since at least July 7, 2022, OWYN has had knowledge of these carbohydrate-level misrepresentations. These misrepresentations render the Shakes misbranded under federal law. These misrepresentations violate California consumer protection and false advertising law.

**The term "Net Carb" appears prominently many times on the Shakes' labels and containers. OWYN fails to define "Net Carb" on any of the Shakes' labels or containers.**

Courts that have addressed the validity of "net carb" representations have generally held that such representations are acceptable only if the food producer also defines how it calculates net carbs on the product label. In *Fernandez v. Atkins Nutritionals, Inc.*, 2019 WL 280028 (S.D. Cal. Jan. 3, 2018), Fernandez alleged that certain snack products manufactured by Atkins Nutritionals, Inc., were misleading because the net carbohydrate representation did not provide any explanation of how it was calculated and sugar alcohol was improperly deducted from net carbohydrates. *Id.* At *1. In support of its Motion to Dismiss, Atkins argued that the state law consumer fraud claims were preempted by the FDCA and NLEA. *Id.* at *4. The court held that

the claims were not preempted "to the extent that they are premised on Atkins's failure to disclose how it calculates net carbs on its labels." *Id.* at *9. The reasoning relied on numerous FDA warning letters instructing food manufacturers to disclose their net carbohydrate calculations. *Id.* The court further held that because it "must assume Atkins's labels do not disclose its net carbs calculation method, the allegations raise a plausible claim that Atkins's net carbs claims violate § 101.13(i)(3)." *Id; see also Smith v. Atkins Nutritionals, Inc.* 2:18-cv-04004-MDH (W.D. Miso. 2020)[8]; *Colella v. Atkins Nutritionals Inc.*, Case No 1:17-cv-05867 (E.D.N.Y 2020).

Since this decision, it has become standard in the industry that a food producer defines on the label what it means by "Net Carbs" when that food producer makes the claim. Attached hereto as Exhibit G is a compilation of photographs of other products that define the term Net Carbs on the product's label. The labeling of the Shakes uniformly fails to define "net carbs." This omission alone renders the Shakes false and misleading and violates California consumer protection and false advertising laws. *Fernandez*, 2018 WL 280028, at *9.

**To the extent OWYN intends the term "Net Carbs" to mean total carbohydrates minus fiber, then the Shakes contain significantly more Net Carbs than OWYN claims on the Shakes' labels and containers.**

Equally problematic, as the chart below summarizes, OWYN discloses less than the actual amount of net carbs in at least five of the Shakes.[9] Net carbs claims are nutrient content claims governed by 21 U.S.C. § 343(r). They are subject to the same labeling accuracy requirements as carbohydrates "because 'net carbs' is a configuration of nutrients 'of the type' required to be mentioned on a label by [21 U.S.C.] § 343(q) and its regulations." *Fernandez*, 2018 WL 280028, at *7.

| Net Carbs (Grams) | 355mL Chocolate | 355mL Vanilla | 330 mL Vanilla | 330mL No Nut Butter Cup | 330mL Sea Salted Caramel |
|---|---|---|---|---|---|
| **MAY 2024** | | | | | |
| **Label** | 0 | 0 | 0 | 0 | 3 |
| **Carbohydrates Test Results** | 11 | 7.8 | 10.6 | 9 | 6.9 |
| **Fiber Test Results** | 3.4 | 2.2 | 3.8 | 5.2 | 4.2 |
| **Net Carbs** | **7.6** | **5.6** | **6.8** | **3.8** | **2.7** |

As the above summary of the laboratory results indicates, all of the Shakes have significantly more net carbs than OWYN represents. Since at least July 7, 2022, OWYN has had knowledge of these net carb-level misrepresentations. These misrepresentations render the

---

[8] This case settled on a nationwide basis
[9] This chart only examines the net carb results in May 2024. Exs. A – E demonstrate that the Shakes were consistently mislabeled with regards to net carbs throughout the proposed class period.

Shakes misbranded under federal law.  These misrepresentations violate California consumer protection and false advertising law.

**Some Shakes contain significantly more sugar than the OWYN claims on those Shakes' nutrition facts labels and on their labels and containers.**

21 CFR 101.60 (c)  provides that:

a food may not be labeled with such terms" such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," "trivial source of sugar," "negligible source of sugar," or "dietarily insignificant source of sugar."
unless the following conditions are met:

(i)The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and

(ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar;"

OWYN's products prominently display "0g Sugar" and "Zero Sugar."  However, the representations are misleading because the Shakes do contain sugar.  Below is a chart that compares the actual sugar in each relevant Shake with the advertised sugar content.

| Beverage | 330mL Vanilla | 330mL No Nut Butter Cup | 330 mL Sea Salted Caramel |
|---|---|---|---|
| **MAY 2024** | | | |
| **Label** | 0 | 0 | 0 |
| **Test Results** | 2.1 | 2.4 | 1.4 |
| **Amount Understated** | **2.1** | **2.4** | **1.4** |

As the above chart shows, three of the Shakes have sugar despite OWYN's "Zero Sugar" representations. These misrepresentations render the Shakes misbranded under federal law and violate California consumer protection and false advertising laws.

**UNFAIR OR DECEPTIVE ACTS OR PRACTICES:**

Plaintiff alleges that Defendant engaged in unfair or deceptive acts or practices as follows:

The Defendant sells the products to consumers in California and across the United States through false, deceptive, and misleading labeling, advertising, marketing, and promotions. The defendant's packaging, labeling, and advertising for the Shakes falsely claim and mislead consumers into believing that (1) the Shakes contain more protein than they actually do, (2) the Shakes contain fewer carbohydrates than they actually do, (3) the Shakes have fewer net carbs than they actually do, and (4) the Shakes have less sugar than they actually do.

Defendant's acts and practices, as described herein, constitute unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce under Cal. Civ. C. § 1750, *et seq.*  In addition, OWYN's mislabeling and misbranding of the Shakes constitute violations of these additional statutes which similarly prohibit false advertising and deceptive practices:

• Unfair Competition Law (UCL) under Business and Professions Code § 17200, et seq.;
• False Advertising Law (FAL) under Business and Professions Code § 17500, et seq.

## INJURIES SUFFERED

Plaintiff, as well as the other members of the Class, have been injured as a result of Defendant's use or employment of unfair or deceptive acts or practices as follows: (a) Plaintiff and the other members of the Class have incurred statutory damages and actual damages, including the amounts they paid for their respective purchases of the falsely and deceptively advertised Shakes during the Class Period; (b) Plaintiff and the other Class members have been injured in the amount of the profits made by Defendant on sales of the Shakes to Plaintiff and the other Class members; and (c) Plaintiff and the other  Class members have suffered non-economic injuries from having purchased a falsely advertised product.  The aggregate amount of actual damages suffered by Plaintiff and the Class cannot be determined without reference to Defendant's records and notice to the Class.

## DEMAND FOR RELIEF

Plaintiff, on behalf of herself and all others similarly situated, demands that Defendant:

1. Compensate Plaintiff and the other Class members for the actual damages incurred by them including, but not limited to, the total amounts spent by Plaintiff and the other Class members on the Shakes.

2. Destroy all misleading and deceptive materials and products;

3. Modify all Shake labeling, packaging and advertising to eliminate misrepresentations;

4. Allow limited and targeted confirmatory discovery; and

5. Reimburse Plaintiff and the other Class members for their reasonable attorneys' fees and expenses incurred in bringing this claim.

## REQUEST FOR PRESERVATION OF EVIDENCE

This letter also serves as a demand that, pending resolution of this matter, the Company and its agents preserve and maintain all of their relevant records for the time period commencing on May 23, 2020 and continuing throughout the duration of this dispute. Such records include, but are not limited to:

1. All iterations of the advertisements and labels for the Shakes;

2. All documents and communications constituting or concerning such labeling or advertising;

3. All documents and communications concerning the ingredients in these Shakes (including those in possession of third-party vendors);

4. All documents related to the pricing of these Shakes;

5. All material safety data sheets;

6. All consumer complaints and comments regarding the Shakes;

7. All documents and communications between the Company and retailers regarding the Shakes defects, returns, and consumer complaints about the Shakes;

8. All documents related to any decision to modify the formulations of the Shakes; and

9. All documents concerning or consisting of analyses, studies, research, or the like, conducted by you or a third party concerning the natural claim on costs, revenues, savings, pricing, and/or profits.

It is your statutory duty to respond within 30 days of your receipt of this letter. If we do not hear from you within that time, we will assume that you refuse to take any of the corrective actions demanded and file a lawsuit.

If you contend that any of the facts in this letter are inaccurate in any respect, please provide us with all of your facts, contentions, and supporting documents as quickly as possible, but in no event later than 30 days from receipt of this letter. We are available if you want to discuss any of the issues raised in this letter.

Sincerely,

Alec Pressly, Esq

CC: George Pressly, Esq.

11