George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Alec Pressly (State Bar No. 348054)
*alec@presslylegal.com*
**THE LAW OFFICE OF ALEC PRESSLY**
3110 Main Street Building C, #331
Santa Monica, California 90405
Telephone: (603) 809-6601

*Counsel for Plaintiff Emmett Enriques
and the Proposed Class*
(*additional counsel listed on signature page*)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| EMMETT ENRIQUES, *individually and on behalf of all others similarly situated*,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>ONLY WHAT YOU NEED, INC., *a Delaware Corporation*; THE SIMPLY GOOD FOODS COMPANY, *a Delaware Corporation*; *and* DOES 1 *through* 70, *inclusive*,<br><br>　　　　　　　Defendants. | Case No. 2:24-cv-08969-GW-BFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF EMMETT ENRIQUES' MOTION FOR LEAVE TO FILE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: June 26, 2025<br>Time: 8:30 a.m.<br>Place: Courtroom 9D, 9th Floor<br>Judge: Honorable George H. Wu |

MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... 2

I. INTRODUCTION ........................................................................................ 3

II. FACTUAL BACKGROUND ...................................................................... 4

III. LEGAL STANDARD ................................................................................ 10

IV. ARGUMENT .............................................................................................. 10

    A. Good Cause Exists to Grant Enriques Leave to Amend .......... 10

    B. Rule 15(a)'s Liberal Standard Is Satisfied, and Defendants Will Suffer No Prejudice Due to the Proposed Amendment ................................................................................................ 12

    C. Even Though Rule 16 Does Not Apply Here as no Rule 16 Schedule Has Been Set by the Court, the Proposed Amendment Meets the Standard of Rule 16 As Well .............. 13

V. CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011) ................................................................................................................ 15

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). ......... 11

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ..................................................... 11, 13

*Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). ....................... 11

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) .... 14, 15

*Meridian Rapid Def. Grp. LLC v. Delta Sci. Corp.*, No. 23-cv-07222-GW-PD, 2024 WL 5411398, at *3 (C.D. Cal. Mar. 1, 2024)(Wu, J.) ................................ 13, 14

*Orozco v. Midland Credit Mgmt. Inc.*, No. 2:12-CV-02585-KJM, 2013 WL 3941318, at *3 (E.D. Cal. July 30, 2013) .......................................................... 15

*Scott v. City of Los Angeles*, No. 2:21-cv-06161-ODW-JC, 2023 WL 2563070, at *2 (C.D. Cal. Mar. 17, 2023) ................................................................................ 15

*Starship, LLC v. Ghacham, Inc.*, No. 21-cv-04665-JAK-JEM, 2023 WL 5670793, at *4 (C.D. Cal. July 10, 2023). ........................................................................ 15

*Stoddart v. Express Servs.*, No. 2:12-cv-01054-KJM-CKD, 2017 WL 3333994, at *3 (E.D. Cal. Aug. 4, 2017) ............................................................................... 15

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, No. 08-cv-02068-PSG-FFM, 2009 WL 650730, at *2 (C.D. Cal. Mar. 12, 2009) .......................... 11

**STATUTES**

Fed. R. Civ. P. 16(b)(4). ........................................................................................ 14

Federal Rule of Civil Procedure 15(a)(2) ........................................................ 10, 15

Plaintiff Emmett Enriques ("Plaintiff" or "Enriques") respectfully submits this memorandum of points and authorities in support of his motion for leave to file the proposed First Amended Class Action Complaint submitted concurrently herewith as **Exhibit 1** to the Omnibus Declaration of George V. Granade ("Granade Declaration" or "Decl. Granade"). Plaintiff has submitted as **Exhibit 2** to the Granade Declaration a version of the proposed First Amended Complaint that shows through redlining, underlining, strikeouts, and similar typographic methods how the proposed First Amended Complaint differs from the operative pleading.

## I. INTRODUCTION

This putative class action alleges that Defendants Only What You Need, Inc. ("OWYN") and The Simply Good Foods Company (together, "Defendants") misrepresented the nutrient content of five "Elite PRO" brand ready-to-drink protein shakes, as demonstrated by scientific testing conducted on the shakes over a multi-year period in accordance with federal regulatory protocols.

Plaintiff now seeks leave to amend to:

- add allegations regarding a sixth shake, the Elite PRO Chocolate 330mL Tetra Pak, including allegations regarding the representations made on the shake's packaging and images of the packaging;

- add allegations and charts regarding testing Plaintiff's counsel had conducted on the Elite PRO Chocolate 330mL shake in August 2022 and March 2025, including allegations concerning the results of the testing and attaching copies of the lab reports as exhibits to the pleading;

- revise Paragraph 5 of the pleading to state the specific Elite PRO flavors Enriques purchased, namely, the Elite PRO Vanilla 330mL Tetra Pak and the Elite PRO Chocolate 330mL Tetra Pak, as he testified to at his deposition on January 28, 2025;

- add allegations discussing the demand letter that Plaintiff sent on April 2, 2025, to Defendants pursuant to California's Consumers Legal Remedies

Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA"), regarding the Elite PRO Chocolate 330mL shake, Plaintiff's testing thereof, and the deceptive representations on the packaging thereof; discussing Defendant's failure to comply with the demand letter; and attaching a copy of the letter as an exhibit to the pleading;

- make changes based on the removal of this case from state court to reflect, for example, the current basis for this Court's jurisdiction, the current venue, the current rule governing class certification, and the rules currently applicable to Plaintiff's anticipated request for attorneys' fees, and make minor changes, including changes to the title page and signature block, minor deletions, correction of scrivener's errors, updates to internal references to paragraph numbers, and formatting changes.

These amendments are factual and narrow. They do not change the legal theories or expand the scope of the products at issue. Rather, the proposed amendments are being offered out of an overabundance of caution, to ensure that the pleadings precisely reflect Plaintiff's deposition testimony and streamline the case moving forward. Leave to amend should be granted as appropriate under Rule 15(a) (and Rule 16(b),[1] to the extent it applies).

## II.     FACTUAL BACKGROUND

Enriques filed his Complaint against Defendants on September 12, 2024, in the California Superior Court for Los Angeles County, *see* Compl., ECF No. 1-1, and Defendants removed the action on October 17, 2024, *see* Notice of Removal, ECF No. 1. The complaint was based upon Plaintiff's counsel's pre-filing due diligence that consisted of, among other things, sixty-five laboratory tests memorialized in at least twelve reports performed by an independent laboratory

---

[1] No Rule 16 schedule has yet been set by the Court.

using FDA-approved methods conducted over a two-year period.

Plaintiff brings claims on behalf of putative nationwide and California classes concerning the labeling of five ready-to-drink protein shakes marketed and sold by Defendants: (1) Elite PRO Chocolate, 355mL, which is sold in a plastic bottle; (2) Elite PRO Vanilla, 355mL, which is sold in a plastic bottle; (3) Elite PRO Plant Powered Drink, Vanilla, 330mL, which is sold in a Tetra Pak; (4) Elite PRO Plant Powered Drink, No Nut Butter Cup, 330mL, which is sold in a Tetra Pak; and (5) Elite PRO Plant Powered Drink, Seal Salted Caramel, 330mL, which is sold in a Tetra Pak (collectively, the "Shakes" or the "Products"). Compl. ¶¶ 1, 27, 32, 37, 40, 42, 90. The Complaint alleges "Plaintiff purchased the Shakes at retail locations in California including in Los Angeles County." *Id.* at ¶ 5.

Plaintiff Enriques was deposed on January 28, 2025. At his deposition, Plaintiff testified that he purchased the 330 mL Tetra Pak versions of the chocolate and vanilla Elite PRO shakes (the third Shake listed in paragraph 1 of the Complaint). Specifically, he stated:

> Q  When did you first buy an OWYN protein shake?
> A  I first purchased around last year -- February.
> Q  What flavor did you get?
> A  The first flavor that I purchased was chocolate.
>    . . .
> Q  Did you buy, like, a four-pack or just one?
> A  ***Every time I've purchased, I've purchased the tetra four-pack.***

Tr. Dep. Enriques 10:6-16 (attached as Exhibit 3 to the Declaration of George V. Granade) (emphasis added); *see also id.* at 11:8-23. Plaintiff further testified:

> Q  . . . How many times could you estimate that you purchased OWYN shakes?
> A  I've purchased OWYN shakes -- two to three times. Chocolate first, chocolate and vanilla, and then another chocolate

|   |   |
|---|---|
| 1 | again. I tried the chocolate. Tried the vanilla; didn't like the |
| 2 | vanilla as much, and then purchased the chocolate the next time |
| 3 | at Whole Foods. |
| 4 | . . . |
| 5 | Q  And when was the last time you bought an OWYN shake? |
| 6 | A  March, last year. |
| 7 | Q  That's 2024; right? |
| 8 | A  Correct. |

*Id.* at 12:1-20. Plaintiff further testified:

    Q  The -- the OWYN shakes that you purchased, after you drank them, what did you do with the bottle?

    A  Tossed them.

. . .

    Q  So we talked about the chocolate and the vanilla. Did you ever try any other flavors, or was it just those two?

    A  Just those two.

*Id.* at 19:20-20:12.

On being shown an image of the Elite PRO Chocolate 355mL Shake, which is sold in bottle (not Tetra Pak) form, Plaintiff again confirmed he had purchased the Elite PRO Chocolate and Elite PRO Vanilla in 330mL Tetra Pak form:

    Q  So you did not purchase the Elite Pro Chocolate in the 355-milliliter configuration?

    A  I believe -- no. I did not.

    Q  Which OWYN chocolate shake did you purchase?

    A  The -- it's either 335 or 330. Off the top of my head, I can't remember, but it's not -- it's not this bottle shape.

    Q  And same question for the vanilla shake. Did you buy the 355-milliliter or 335?

1        A   Same as the chocolate.

2 Tr. Dep. Enriques 74:16-25. Plaintiff also testified he did not purchase the No Nut
3 Butter Cup and Sea Salted Caramel flavors of the Shakes:

4        Q   So the complaint, as you may recall, discusses four flavors of
5            shakes. The chocolate, vanilla --
6        A   No Nut Peanut Butter.
7        Q   Right.
8        A   Sea Salt, Caramel.
9        Q   Great. The complaint says in paragraph 5 that you purchased
10            the shakes at retail locations in California, including Los Angeles
11            County, but you never purchased the No Nut Butter Cup; right?
12        A   No.
13        Q   And you never purchased the Sea Salt Caramel; right?
14        A   No.
15        Q   So, in fact, that allegation in the complaint that you purchased
16            all those different flavors, that's not true, is it?
17        MR. GRANADE:     Objection.
18        THE WITNESS:     I just purchased two of the flavors.
19 *Id.* at 62:14-63:7.

20      On February 10, 2025, defense counsel called Plaintiff's counsel and asserted
21 that, supposedly based on Enriques' deposition testimony, Plaintiff had not
22 purchased any of the Shakes identified in the Complaint and should therefore dismiss
23 the case. Decl. Granade ¶ 11. Plaintiff's counsel disagreed with that characterization
24 and explained that, to his recollection, Enriques had testified to purchasing at least
25 one of the Products. Because the deposition transcript had not yet been received,
26 Plaintiff's counsel stated he would review it to confirm the testimony. *Id.* The
27 transcript was delivered by email from the court reporter on February 12, 2025. *Id.*
28 ¶ 12. As detailed above, it confirms that Enriques testified to purchasing the Elite

PRO Vanilla 330 mL Shake in Tetra Pak form.

On the morning of February 24, 2025, counsel for Defendants sent Plaintiff's counsel a letter threatening to seek sanctions and demanding that Plaintiff dismiss his case by February 25, 2025, on the ground that Plaintiff (supposedly) admitted during his deposition that he did not purchase any of the Shakes at issue. Ex. 5, Decl. Granade.

On the afternoon of February 24, 2025, counsel for the parties met and conferred by telephone. Decl. Granade ¶ 15. During the call, Plaintiff's counsel cited directly from the Enriques deposition transcript, emphasizing that Enriques had testified to purchasing the Elite PRO Vanilla 330 mL Tetra Pak — the third product listed in paragraph 1 of the Complaint. *Id.* Plaintiff's counsel also indicated a willingness to consider amending the Complaint to specify the exact products Plaintiff purchased. *Id.* see also Ex. 6, Decl. Granade.

The parties continued the meet-and-confer by Zoom on March 4, 2025. Decl. Granade ¶ 16. In addition to discussing outstanding discovery responses, the parties also again discussed Plaintiff's deposition testimony. Defense counsel asserted that paragraph 5 of the Complaint was false because, in their view, it implied Plaintiff purchased all five Shakes. *Id.* Plaintiff's counsel disagreed, noting that the Complaint refers to a defined product line and that the record clearly shows Plaintiff purchased two of the listed Shakes. *Id.* On March 5 and 6, 2025, the parties exchanged emails memorializing their respective views. Exs. 7-8, Decl. Granade. In response to Defendants' repeated references to Rule 11, Plaintiff's counsel asked whether Defendants would stipulate to an amendment clarifying which Shakes Plaintiff purchased. Plaintiff's counsel made clear that Plaintiff had not purchased four of the five listed products but disputed any claim that the Complaint was misleading or sanctionable. At no point did Plaintiff concede Defendants' interpretation of the Complaint—he maintained throughout that the pleading fairly described his purchases, and that amendment was offered in good faith to eliminate

any purported ambiguity, not as an admission of error.

Meanwhile, on March 4, 2025, Plaintiff's counsel commissioned laboratory testing of the Elite PRO Chocolate 330 mL shake to evaluate, among other things, the protein, total carbohydrate, and dietary fiber content. Decl. Granade ¶ 27. Upon receiving testing data on March 26, 2025, which confirmed measurable discrepancies, Plaintiff's counsel determined that there was now a sufficient and dependable factual basis to proceed with a claim regarding the shake. *Id*. On April 2, 2025, Plaintiff sent Defendants a CLRA demand letter identifying violations of the CLRA relating to the Elite PRO Chocolate 330 mL shake and requesting both corrective action and consumer redress within 30 days. Ex. 9 Decl. Granade. Defendants did not respond or comply within the 30-day period. Decl. Granade ¶ 28.

Plaintiff's counsel emailed Defendants' counsel on April 21, 2025, stating that Plaintiff intended to amend his pleading to add claims regarding the Elite Pro Chocolate 330 mL shake. Decl. Granade ¶29.

The parties met and conferred by Zoom on May 13, 2025.

On May 19, 2025, the Defendants sent to Plaintiff a motion for sanctions under Rule 11 and 28 U.S.C. § 1927 based on a demonstrably false assertion specifically known to Defendants' counsel to be false. The parties are now in the 21-day safe harbor provided by Rule 11. Defendants falsely claim that Plaintiff "did not purchase any of the Products identified in the Complaint" and instead purchased only a "Chocolate-flavored shake in a 330 mL bottle." That claim directly contradicts Plaintiff's sworn deposition testimony (cited above), including clarifying exchanges elicited by the very attorney who signed the motion. Defendants also argue in that motion that the Complaint implies Plaintiff purchased every flavor and container size listed in the definition of "Shakes." That is an unreasonably interpretation of conventional pleading language.

As seen above, Defendants threatened Rule 11 motion is completely untrue and without merit and any such motion by Defendant would be frivolous.

Nonetheless, out of an overabundance of caution, Plaintiff now seeks leave to amend his complaint (which he has not yet had a chance to do) to provide more detail regarding his purchases.

## III. LEGAL STANDARD

Generally, a motion for leave to amend a pleading is evaluated under Federal Rule of Civil Procedure 15(a)(2), which provides that the Court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). According to the Ninth Circuit, Rule 15 "is 'to be applied with extreme liberality.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). As the United States Supreme Court has explained, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). And "[t]he party opposing amendment bears the burden of showing prejudice, unfair delay, bad faith, or futility of amendment." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, No. 08-cv-02068-PSG-FFM, 2009 WL 650730, at *2 (C.D. Cal. Mar. 12, 2009). According to the Ninth Circuit, the Rule 15 determination should be made "with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

## IV. ARGUMENT

### A. Good Cause Exists to Grant Enriques Leave to Amend

As detailed below, Plaintiff should be allowed to file a First Amended Class Action Complaint because Plaintiff has acted with diligence in seeking leave to amend. Plaintiff is timely bringing this motion promptly after receiving laboratory testing in late March 2025 that confirmed material discrepancies between the label

representations and actual contents of the Elite PRO Chocolate 330 mL shake—specifically with respect to protein, total carbohydrates, and "net carbs."

During his January 28, 2025 deposition, Enriques testified that he purchased both the Elite PRO Plant Powered Drink, Vanilla, 330 mL, and the Elite PRO Plant Powered Drink, Chocolate, 330 mL. Ex.3 Decl. Granade. The latter product, however, is not among the shakes specifically listed in the operative complaint. Recognizing the potential significance of this product, Plaintiff commissioned comprehensive testing of the Elite PRO Chocolate 330 mL shake on March 4, 2025. Decl. Granade ¶ 27. The laboratory used a composite of 12 samples purchased from different retail locations, all bearing the same lot number and/or expiration date. All testing was conducted in accordance with validated methods approved by AOAC International.

Plaintiff's counsel received the results on March 26, 2025. Id. The data showed that the label substantially overstates the protein content and misrepresents the carbohydrate and "net carb" levels:

|  | Elite PRO Plant Powered Drink, Chocolate, 330 mL |
|---|---|
| Protein (Label) | 32g |
| Protein (Test Results) | 27.3g |
| Percent Difference | 14.6% less |
|  |  |
| Carbohydrates (Label) | 6g |
| Carbohydrates (Test Results) | 13.4g |
| Percent Difference | 123.3% more |
|  |  |
| Dietary Fiber (Label) | 6g |
| Dietary Fiber (Test Results) | 5.8g |
|  |  |
| Net Carbs (Label) | 0g |
| Net Carbs (Test Results) | 7.6g |

These discrepancies are material and directly contradict the product's

marketing claims. On April 2, 2025, within a week of receiving the lab report, Plaintiff sent a CLRA demand letter to Defendants, identifying the deceptive labeling and requesting corrective action and compensation for affected consumers. Defendants did not respond within the 30-day period. Decl. Granade ¶ 28.

Consistent with that notice and in further demonstration of diligence, Plaintiff's counsel emailed defense counsel on April 21, 2025, stating that Plaintiff intended to amend the complaint to add claims concerning the Elite PRO Chocolate 330 mL shake. Decl. Granade ¶ 29. A Rule 37-1 meet-and-confer videoconference was scheduled for May 13, 2025, in connection with this issue and related discovery matters. *Id.* ¶ 32.

Finally, it is worth nothing that in *Meridian Rapid Defense Group LLC* that Your Honor made the following observations in granting leave to amend:

> [W]hat is the end-result if the Court declines to permit Delta to amend in this particular regard? Unless there is a statute of limitations problem, it is likely that Delta could simply file a separate action to pursue such a claim. Administratively, it would make more sense to simply have all issues decided within this one litigation. A desire to see disputes resolved on their merits obviously would also support such a move. For those reasons, the Court is inclined to excuse any good cause/diligence failure in this particular regard.

*Meridian Rapid Def. Grp. LLC v. Delta Sci. Corp.*, No. 23-cv-07222-GW-PD, 2024 WL 5411398, at *3 (C.D. Cal. Mar. 1, 2024)(Wu, J.).

### B. Rule 15(a)'s Liberal Standard Is Satisfied, and Defendants Will Suffer No Prejudice Due to the Proposed Amendment

Leave to amend should be granted under Rule 15 unless there is evidence of undue delay, bad faith, futility, or prejudice. *Foman*, 371 U.S. at 182.

None of those factors is present here.

Defendants have not shown—and cannot show—undue prejudice from Plaintiff's request to amend. Discovery is still in its early stages, with only seven pages of documents produced by Defendants. Rule 30(b)(6) deposition notices have been sent but not scheduled. Decl. Granade ¶ 25. Plaintiff's amendment does not add a new theory or party but merely clarifies the identity of one of the purchased products and adds a substantially identical product from the same product line. Courts routinely grant leave to amend under far more disruptive circumstance.

The proposed amendment strengthens the pleadings by aligning them more precisely with the deposition record and recent test data. The newly included product—the Elite PRO Chocolate 330 mL shake—is part of the same "Elite PRO" product line already at issue, and the amendment includes lab-verified data showing misrepresentations about core nutrient values (protein, carbohydrates, net carbs). This is sufficient to support the CLRA and other consumer fraud claims alleged.

The proposed amendment is narrow and timely. It updates a single paragraph to specify the products Plaintiff purchased and adds factual allegations regarding the 330 mL Chocolate Elite Pro Shake—a product in the same line of defendants' products already at issue in this litigation. There is no bad faith or undue delay. Plaintiff acted promptly after his deposition, initiated testing quickly, and filed this motion shortly after completing the CLRA notice period.

C. **Even Though Rule 16 Does Not Apply Here as no Rule 16 Schedule Has Been Set by the Court, the Proposed Amendment Meets the Standard of Rule 16 As Well**

Even though the Court has not entered a Rule 16 scheduling order, to the extent necessary, the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4) has been met here as well. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *see also Meridian Rapid Def. Grp. LLC v. Delta Sci. Corp.*, No. 23-cv-07222-GW-PD, 2024 WL 5411398, at *1 (C.D. Cal. Mar. 1,

2024) (Wu, J.); Fed. R. Civ. P. 16(b)(4).

Rule 16(b)(4)'s "'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.*

"When the proposed modification is an amendment to the pleadings, the moving party may establish good cause by showing (1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [he or she] could not comply with the order." *Starship, LLC v. Ghacham, Inc.*, No. 21-cv-04665-JAK-JEM, 2023 WL 5670793, at *4 (C.D. Cal. July 10, 2023).

"The moving party can show good cause through '. . . newly discovered evidence.'" *Scott v. City of Los Angeles*, No. 2:21-cv-06161-ODW-JC, 2023 WL 2563070, at *2 (C.D. Cal. Mar. 17, 2023). Good cause may also be shown where the "defendant's litigation practice [is] burdensome." *Stoddart v. Express Servs.*, No. 2:12-cv-01054-KJM-CKD, 2017 WL 3333994, at *3 (E.D. Cal. Aug. 4, 2017); *see also Orozco v. Midland Credit Mgmt. Inc.*, No. 2:12-CV-02585-KJM, 2013 WL 3941318, at *3 (E.D. Cal. July 30, 2013). Factors that may bolster a finding of good cause include that "the amendment 'create[s] no meaningful case management issues' and [does] not 'infringe[ ] on the efficient adjudication' of the litigation" and that "the prejudice to [the moving party] from a failure to modify the order likely would be substantial." *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011). Ultimately, the district court has "broad discretion" to determine whether good cause exists. *Johnson*, 975 F.2d at 607. If the court finds

that good cause exists, the court considers whether the moving party satisfies the standard under Rule 15(a)(2). *Id.* at 608.

Here, even though Rule 16 does not apply, the standard of Rule 16 is met. Amendment of the complaint (which is the first time that Plaintiff has amended) will not delay this litigation in any way. Furthermore, counsel sought amendment as soon as possible, once the time for Defendant to respond to the CLRA pre-suit demand letter had expired and the meet and confer process has been exhausted.

## V.  CONCLUSION

For the foregoing reasons, Enriques respectfully requests that the Court grant his Motion for Leave to File his First Amended Class Action Complaint.

Date: May 29, 2025                    Respectfully submitted,

By:  */s/Alec Pressly*

**THE LAW OFFICE OF ALEC PRESSLY**
Alec Pressly (State Bar No. 348054)
*alec@presslylegal.com*
3110 Main Street Building C, #331
Santa Monica, California 90405
Telephone: (603) 809-6601

**REESE LLP**
George V. Granade (SBN 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**PRESSLY LAW GROUP PLLC**
George Pressly (to apply pro hac vice)
*gpressly@presslylaw.com*
155 North Wacker Drive Suite 4250
Chicago, Illinois 60606-1750
Telephone: (603)-320-7030

**SAFIRSTEIN LAW LLC**
Peter Safirstein
*psafirstein@safirsteinlaw.com*
45 N. Broad Street
Suite 100
Ridgewood, NJ  07450
Telephone: (917) 952-9458

*Counsel for Plaintiff Emmett Enriques and the Proposed Class*