EXHIBIT 7

 Gmail

George Granade <ggranade@reesellp.com>

---

# Enriques v. Only What You Need, Inc., No. 2:24-cv-08969-GW-BFM (C.D. Cal.) - Letter requesting to meet and confer re: OWYN's responses to Plaintiff's first interrogatories and first requests for production of documents

---

**David Kwasniewski** <kwasniewski@braunhagey.com>                         Wed, Mar 5, 2025 at 6:26 PM
To: George Granade <ggranade@reesellp.com>, Michael Reese <mreese@reesellp.com>, "alec@presslylegal.com" <alec@presslylegal.com>, George Pressly <gpressly@presslylawgroup.com>, Peter Safirstein <psafirstein@safirsteinlaw.com>
Cc: Matt Borden <borden@braunhagey.com>, Chelsea Tirgardoon <Tirgardoon@braunhagey.com>

George,

Thank you for continuing our meet and confer yesterday. I write to summarize what we discussed and also correct some of the statements below.

**Plaintiff's false complaint.** During both calls, we discussed the false allegations in Plaintiff's Complaint. Specifically, the complaint, which Plaintiff testified he did not review prior to its filing, alleges that Plaintiff purchased the "Shakes" at retail stores in LA. (Compl. ¶ 5.) The Complaint alleges Plaintiff "relied on the nutrient-related representations on the packaging and labels of the Shakes when making his purchase," that he paid "a price premium for the Shakes," and that he "would not have purchased the Shakes or would have paid considerably less for them had he known their true macronutrient profile." (Compl. ¶¶ 6-8.) The Complaint specifically defines the term "Shakes" to mean "the following ready-to-drink protein shakes marketed and sold by Defendants: (1) Elite PRO Chocolate, 355mL; (2) Elite PRO Vanilla, 355 ML; (3) Elite PRO Plant Powered Drink, Vanilla, 330 ML; (4) Elite PRO Plant Powered Drink, No Nut Butter Cup, 330 ML; and (5) Elite PRO Plant Powered Drink, Sea Salted Caramel, 330 ML." (Compl. ¶ 1.) As set forth in our February 24, 2025 letter, Plaintiff testified he did not purchase any of these shakes. On our call, you agreed that Plaintiff did not purchase the Chocolate, Vanilla (355 ML), No Nut Butter Cup, or Sea Salted Caramel shakes. You maintained that Plaintiff did purchase the Vanilla (330 ML) shake, and that the Complaint is not literally false because it does not say that Plaintiff purchased all of the Shakes, notwithstanding the Complaint's definition of the term "Shakes" and allegations that Plaintiff purchased, relied on, paid a price premium for, and was misled by all of the shakes. I explained that OWYN will seek sanctions and that our relief would include the fees and costs incurred in responding to Plaintiff's discovery.

**Plaintiff's Discovery Requests**

As you note in your email below, we agreed to negotiate an appropriate ESI protocol in this case. We will send a proposed draft by Friday. We expect that all or virtually all of Plaintiff's interrogatories and RFPs will be addressed by the ESI production. We agreed the meet and confer process remains ongoing while we negotiate the ESI protocol.

Per your email below, OWYN also agrees to abide by Rule 26(e) and that an appropriate protective order

has been entered. OWYN also stated that it is not currently withholding any documents based on the objections set forth in its responses. If OWYN subsequently withholds responsive documents, it will so state, either by identifying the documents on a log (such as a privilege log, which we agreed to discuss the format of in connection with the ESI protocol), or via a supplemental discovery response if appropriate.

a. **Interrogatories**

Your summary of our discussion of Interrogatories 1 and 3-7 is accurate. We write to further set forth our position with respect Interrogatory 2, which seeks personal identifying information of ever customer who has purchased products from OWYN since its founding. In addition to being overbroad, producing personal data on every customer would implicate the consumer privacy laws of multiple states and at a minimum require an addendum to the protective order to limit dissemination of such information. We also agreed that no class has been certified in this case. I said that as a result it would be premature to seek customer contact information for purposes of giving notice. You agreed to discuss this request further with your team.

**Interrogatories 8-13, 15:** I explained that OWYN intended to produce documents containing the information requested in these interrogatories once the parties have completed their negotiation of the ESI protocol, except that OWYN does not agree documents prior to September 12, 2020 or documents relating to sales of products outside of California are likely to lead to the discovery of admissible evidence in this case.

**Interrogatory 16:**  You clarified that this request is seeking the identification of anyone who OWYN might contend is liable for the claims in the complaint. Based on that clarification, OWYN will provide a supplemental response.

**Interrogatory 18:** OWYN will produce documents containing the requested information once the parties have completed their negotiation of the ESI protocol, with the caveat that much (if not all) of the testing performed by OWYN has been performed through counsel and thus may be subject to attorney-client privilege or the protection of the attorney-work-product doctrine. Should OWYN withhold documents relating to product testing on these grounds, OWYN will provide an appropriate privilege log in the format and manner the parties will agree upon as part of their ESI protocol negotiations.

b. **Requests for Production**

With respect to all of the RFPs except for RFP 33, OWYN agreed to produce responsive documents pursuant to the terms of the forthcoming ESI protocol, except that OWYN does not agree to produce documents relating to sales outside of the State of California or documents prior to September 12, 2020. OWYN agreed to identify any responsive documents it withholds based on an objection in an appropriate privilege log and/or supplemental response, as appropriate.

With respect to RFP 33, OWYN maintains its position that there are no responsive documents because OWYN does not charge a premium for its products "due to any Representation." I explained that OWYN has made this determination following a reasonable investigation. I agreed that OWYN would supplement this response if it subsequently uncovered information responsive to this request.

Best regards,

[Quoted text hidden]