Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
  kwasniewski@braunhagey.com
H. Chelsea Tirgardoon, Esq. (SBN: 340119)
  tirgardoon@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210
Fax: (415) 276-1808

*Attorneys for Defendants The Simply Good
Foods Co. and Only What You Need, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMETT ENRIQUES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ONLY WHAT YOU NEED, INC., a Delaware Corporation; THE SIMPLY GOOD FOODS COMPANY, a Delaware Corporation; AND DOES 1 THROUGH 70, INCLUSIVE,<br><br>Defendants. | Case No. 2:24-cv-08969-GW-BFM<br><br>**DEFENDANTS THE SIMPLY GOOD FOODS COMPANY AND ONLY WHAT YOU NEED, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Date:** June 26, 2025<br>**Time:** 8:30 a.m.<br>**Judge:** Hon. George H. Wu |

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

    A.    The Parties ................................................................................3

    B.    The Allegations in the Complaint................................................3

    C.    The Court's Scheduling Order.....................................................4

    D.    Plaintiff's Deposition..................................................................5

    E.    Defendants' Repeated Efforts to Get Plaintiff to Correct His
Misrepresentations to the Court..................................................6

    F.    The Proposed Amended Complaint.............................................7

ARGUMENT ........................................................................................................8

    I.    PLAINTIFF HAS NOT PROVEN GOOD CAUSE TO AMEND THE
SCHEDULING ORDER.........................................................................8

    A.    The Standard Under Rule 16 Applies to this Motion .................8

    B.    Plaintiff Has Failed to Prove Good Cause...................................9

    II.    PLAINTIFF DEMONSTRATED BAD FAITH AND UNDULY
DELAYED IN SEEKING LEAVE TO AMEND ..............................10

    III.    ALLOWING AMENDMENT WOULD PREJUDICE
DEFENDANTS.........................................................................................12

CONCLUSION..................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                       **Page(s)**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
   781 F.2d 1393 (9th Cir. 1986) ............................................................... 11

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
   465 F.3d 946 (9th Cir. 2006) ...................................................................... 8

*Branch Banking & Tr. Co. v. D.M.S.I., LLC*,
   871 F.3d 751 (9th Cir. 2017) .................................................................. 8, 9

*Christensen v. CLP Res., Inc.*,
   No. 2:14-CV-08073-GW-PLAX, 2018 WL 6017015
   (C.D. Cal. Oct. 22, 2018) ................................................................... 10, 11

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002) .................................................................. 10

*Dillingham v. Asuncion*,
   No. 2:18-CV-01826-PSG-AFM, 2020 WL 10895368
   (C.D. Cal. Aug. 19, 2020) ........................................................................ 11

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*,
   980 F. Supp. 2d 1160 (E.D. Cal. 2013) ................................................... 14

*Henriquez v. City of Bell*,
   No. 2:14–CV-196–GW-SS, 2014 WL 12707230 (C.D. Cal. Sept. 11, 2014) ..... 1, 8

*Jackson v. Bank of Hawaii*,
   902 F. 2d 1385 (9th Cir. 1990) ................................................................ 14

*Johnson v. Mammoth Recreations*,
   975 F.2d 604 (9th Cir. 1992) .......................................................... 2, 9, 10

*Jordan v. Cnty. of Los Angeles*,
   669 F.2d 1311, 1324 (9th Cir.1982) ........................................................ 12

*McKettrick v. Yates*,
   627 F. Supp. 2d 1144 (C.D. Cal. 2008) .................................................. 11

*Ndandu v. Alvarado*,
   No. 2:23-08882 SB (ADS), 2025 WL 1093801 (C.D. Cal. Feb. 20, 2025) ............ 8

*Texaco, Inc. v. Ponsoldt*,
   939 F.2d 794 (9th Cir. 1991) ................................................................. 10

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*,
   278 F.R.D. 505 (N.D. Cal. 2011) .......................................................... 11

*Wimbeldon Fund, SPC (Class TT) v. Graybox, LLC*,
   No. 2:16-CV-02287-CAS-SS, 2019 WL 979246 (C.D. Cal. Feb. 28, 2019) ......... 14

**Statutes**

28 U.S.C. § 1927 ........................................................................................ 7

**Rules**

Fed. R. Civ. P. 15 ................................................................................. 8, 10

Fed. R. Civ. P. 16 ............................................................................. 8, 9, 10

Defendants The Simply Good Foods Company and Only What You Need, Inc. ("OWYN") respectfully submit this Opposition to Plaintiff's Motion for Leave to File an Amended Complaint.

### INTRODUCTION

OWYN is an innovative food and beverage company that sells plant-based protein shakes and powders that are made without major allergens, including dairy and soy. OWYN makes multiple lines of protein shakes that come in chocolate, vanilla, and a variety of other flavors, like "no nut buttercup" and "sea salted caramel." Simply Good Foods acquired OWYN just one year ago.

Plaintiff Emmett Enriques was recruited by his lawyers, rather than injured. He did not read the Complaint before his lawyers filed it. The Complaint alleges that Plaintiff bought certain protein shakes made by OWYN because of the amount of sugar and protein listed and that he was misled because the actual protein and sugar content was allegedly inaccurate. At his deposition, Plaintiff admitted that he had not bought any of the protein shakes identified in his Complaint and had not read the Complaint until he was preparing for the deposition. After the deposition, OWYN repeatedly requested Plaintiff correct the false allegations in his pleading, so that the Court would not rely on them—first by phone call, then by letter, and finally by serving a Rule 11 motion. In response, Plaintiff did nothing.

After nearly nine months of litigation, after forcing OWYN to serve a motion for sanctions, and on the eve of the class certification briefing deadline, Plaintiff has asked the Court to allow him to file what essentially amounts to a new case, which would add additional discovery and effectively amend the Court's Scheduling Order.

To amend the Court's Order, Plaintiff must prove good cause. "To demonstrate good cause under Rule 16(b), the party seeking to modify the scheduling order must show that, even with the exercise of due diligence, he or she could not have met the original order's time table." *Henriquez v. City of Bell*, No. 2:14–CV-

196–GW-SS, 2014 WL 12707230, *2 (C.D. Cal. Sept. 11, 2014) (Wu, J.) (citing *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992)).

Plaintiff cannot meet this standard for many reasons. For starters, he does not disclose that he filed a false pleading, much less explain why he did so. Second, had his lawyers properly investigated the claims they were filing by taking very simple steps—such as asking their client what products he bought or showing him the Complaint before filing it—they would not be asking the Court to amend its Scheduling Order. Third, Plaintiff knew after his own deposition months ago that his pleading was inaccurate. Fourth, OWYN repeatedly asked Plaintiff to correct his misrepresentations to the Court, and he refused to do so. Far from meeting his burden to prove good cause and diligence, these undisputed facts evidence a troubling and cavalier approach to Plaintiff's obligations to the Court.

Even if he could prove good cause, Plaintiff's motion should be denied because Plaintiff's actions also demonstrate bad faith and undue delay in bringing this Motion. Furthermore, Plaintiff's Proposed Amended Complaint would unduly prejudice OWYN because Plaintiff seeks to rewrite the most fundamental allegations in the Complaint, including by adding a new product, after the parties have already conducted extensive discovery and are preparing for the class certification hearing. The gravamen of the Complaint is that Plaintiff purchased a product he did not buy, in reliance on a label he did not read. Plaintiff now seeks to add a new shake to the complaint after nine months of litigation. His decision to prosecute a false complaint for months—including months after he testified that his allegations were untrue—has severely prejudiced OWYN. The new shake he wants to add is manufactured in different batches, and in a different facility, from the shakes that his Complaint accuses and that he now admits he did not purchase. (Moose Dec. ¶ 5.) The amendment would require Defendants to conduct additional investigation regarding the new product and manufacturing facility, consult with an expert regarding the new shake and facility, and spend additional time and expense defending new allegations.

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

For these reasons, and those set forth below, Plaintiff's request for leave to amend should be denied.

## BACKGROUND

### A.    The Parties

OWYN is a New Jersey-based company founded by Kathryn Moos and Jeff Mroz, spouses and athletes who also both suffer from serious food allergies. They created OWYN to make plant-based protein products that are allergen friendly. OWYN's products are made from a proprietary pea protein blend combined with other natural flavors, vitamins, and minerals. The products are made without dairy, gluten, soy, egg, peanuts, tree nuts, fish, or shellfish ingredients. OWYN sells multiple different types of ready-to-drink protein shakes, including the original protein shakes and the Pro Elite High Protein Shake. (Declaration of Brad Moose ("Moose Decl.") ¶ 2; Compl., Dkt. 1-1, ¶ 17.) OWYN was acquired by Simply Good Foods in June 2024. (Compl. ¶ 10.)

Plaintiff is the co-owner of Chaddy, a company that sells lip plumper that enhances lips by irritating them with capsaicin extract and self-tanner that uses sugar cane beet to dye skin. (Tr. at 51:9-53:2.) Plaintiff is not pursuing this lawsuit because he was injured, but rather because he is friends with his lawyer. (Tr. at 69:20-72:1.)

### B.    The Allegations in the Complaint

The Complaint, filed on September 12, 2024, alleges that Plaintiff purchased five varieties of OWYN protein shakes: (1) Elite PRO Chocolate, (2) Elite PRO Vanilla (355 ml), (3) Elite PRO Vanilla (330 ml), (4) Elite PRO No Nut Butter Cup, and (5) Elite PRO Sea Salted Caramel. (Compl. ¶¶ 1, 5.) The Complaint further alleges that Plaintiff read and was misled by the labels of each of these products, which the Complaint alleges overstate the shakes' protein content and understate their carbohydrate content. (Compl. ¶¶ 6–8.)

The Complaint repeatedly alleges that Plaintiff purchased the five products at issue and that he did so because he read and relied on the language on the labels. For

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

example, the Complaint alleges that Plaintiff "purchased the Shakes at retail locations in California including in Los Angeles County" (Compl. ¶ 5); that he "relied on the nutrient-related representations on the packaging and labels of the Shakes when making his purchase" (Compl. ¶ 6); and that he "was injured when he paid the purchase price and/or a price premium for the Shakes that did not deliver what Defendant promised" (Compl. ¶ 7). It further alleges that "Plaintiff, like all other Class Members, purchased the Products in reliance on the macronutrient labeling and the various representations[.]" (Compl. ¶ 94.)

Plaintiff's allegations that he bought the five accused products in reliance on their labels pervade every cause of action. (Compl. ¶¶ 104, 117 (alleging Plaintiff "purchased the Defendants' Products for personal, family, or household use" and that Plaintiff has suffered damage "in that he paid for a Product he would not have purchased knowing its true macronutrient profile" in violation of Consumer Legal Remedies Act); Compl. ¶ 127 (alleging violation of False Advertising Law because "Plaintiff and California Class Members have suffered economic injury by purchasing Products that did not conform to the representations made by Defendants"); Compl. ¶ 137 (alleging Plaintiff's purchases caused him "injury in fact" in violation of the Unfair Competition Law); Compl. ¶ 144 (alleging breach of express and implied warranties arising because "Plaintiff and the Class purchased the Products"); Compl. ¶ 150 (alleging negligent misrepresentation because "Plaintiff and the Class reasonably relied on these misrepresentations in purchasing the Product"); Compl. ¶ 154 (alleging unjust enrichment because "Plaintiff and the Class conferred a benefit upon Defendants by purchasing the Product based on these misrepresentations")).

**C.    The Court's Scheduling Order**

The parties filed the Joint Rule 26(f) Discovery Plan on December 10, 2024 and appeared for a scheduling conference before this Court on December 16, 2024. (Dkts. 17, 19.) At the conference, the Court informed the parties that its practice for

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

1    putative class actions is to schedule only the class certification hearing at that stage.

2    The same day, the Court issued an order scheduling the hearing on Plaintiff's motion

3    for class certification on July 31, 2025, at 8:30 a.m, with the reply brief due by July

4    17, 2025. (Dkt. 19.)

5         **D.    Plaintiff's Deposition**

6         Defendants took Plaintiff's deposition on January 28, 2025. During this time,

7    Plaintiff revealed that he had not, in fact, bought any of the five Products identified

8    in his Complaint as the basis for this suit and that he had not actually read his

9    Complaint until he was preparing for his deposition.

10        More specifically, Plaintiff denied buying any No Nut Butter Cup or Sea

11   Salted Caramel shakes, as he alleged that he did in Paragraph 1 of his Complaint.

12   (Declaration of David H. Kwasniewski ("Kwasniewski Decl."), Ex. 1 ("Tr.") at

13   62:14-63:1.)

14        Next, Plaintiff testified that he did not buy any Chocolate in 355 ml as alleged

15   in Paragraph 1 of his Complaint. He claimed instead that he bought Chocolate in 330

16   or 335 ml. (Tr. at 74:9–22.) ("Q. Does Exhibit 4 look like the label on the chocolate

17   protein shake that you purchased? A. No. Q. What's different? A. Serving side –

18   size; food ounces; type of packaging; shape of packaging. That's as far as I can go.

19   Q. So you did not purchase the Elite Pro Chocolate in the 355-milliliter

20   configuration? A. I believe – no. I did not.  Q. Which OWYN chocolate shake did

21   you purchase? A. The – it's either 335 or 330. Off the top of my head, I can't

22   remember, but it's not – it's not this bottle shape."). While it is the same flavor, this

23   purchase had nothing to do with the claims that Plaintiff asserts against OWYN

24   because (1) every SKU is separately produced, (2) Plaintiff did not test either the 335

25   or 330 ml SKU and has no scientific basis to allege that they were out of spec, and

26   (3) as Plaintiff himself recognized, the products are labeled differently.

27

28

Finally, Plaintiff also stated he did not buy the vanilla shakes alleged in his Complaint. (Tr. at 74:23–25.) ("Q. And same question for the vanilla shake. Did you buy the 355-milliliter or 335? A. Same as the chocolate.")

Plaintiff further testified that he never read the Complaint before his lawyers filed it. (Tr. at 46:6–9.) ("Q: You said you reviewed the complaint before today's deposition. Did you also review it before it was filed? A: No. Not that I recall. No."). Plaintiff also admitted he knew of no facts supporting his claims against OWYN's parent company, Simply Good Foods. (*Id.* at 47:23–49:16.)

### E. Defendants' Repeated Efforts to Get Plaintiff to Correct His Misrepresentations to the Court

Shortly after the deposition, Defendants reached out to Plaintiff as a courtesy and asked that he correct the inaccurate statements in the Complaint. (Kwasniewski Decl. ¶ 3.) Plaintiff said he would promptly investigate and get back to OWYN about whether he would continue with his claims. Instead, on February 14, 2025, Plaintiff sent OWYN a 34-page form letter demanding a meet and confer about OWYN's responses to Plaintiff's discovery requests. (Kwasniewski Decl. ¶ 4.)

On February 24, 2025, OWYN sent Plaintiff a letter explaining that the allegations in his Complaint were not true. OWYN again requested that Plaintiff correct the inaccurate representations upon which he was asking the Court to rely. (Dkt. 26-8.) Plaintiff did not respond to OWYN's letter.

On February 26, 2025, the parties met and conferred to discuss OWYN's responses to Plaintiff's discovery requests. OWYN again detailed the inaccurate allegations in Plaintiff's Complaint. Plaintiff refused to make any corrections. (Kwasniewski Decl. ¶ 6.)

On March 4, 2025, the parties met and conferred again to discuss OWYN's responses to Plaintiff's discovery requests. OWYN once again urged Plaintiff to correct his inaccurate pleading, and Plaintiff once again refused. (Kwasniewski Decl. ¶ 7.)

On March 5, 2025, OWYN sent Plaintiff an email summarizing the parties' meet and confers, again explaining that the allegations in Plaintiff's Complaint are untrue and urging Plaintiff not to ask the Court to rely on inaccurate factual representations. (Dkt. 26-10.)

For months, Plaintiff did not take any other action to correct his inaccurate Complaint. On May 19, 2025, OWYN served Plaintiff with the motion for sanctions under Rule 11 and 28 U.S.C. § 1927. (Kwasniewski Decl. ¶ 9.) On May 29, 2025, Plaintiff filed this Motion, seeking leave to add allegations regarding an entirely new product.

**F.     The Proposed Amended Complaint**

Plaintiff proposes three main changes to his Complaint. First, Plaintiff seeks to rewrite the paragraph stating which products he purchased, including by listing only one of the five products he previously accused and by adding a new product that was not included in the original Complaint. (Dkt. 26-5 ¶ 5.)[1]

Second, Plaintiff seeks to add further allegations, laboratory testing, and a CLRA demand letter concerning the new product. (*Id*. ¶¶ 25; 46-48, 52, 57, 69, 86, 93.)

Third, Plaintiff seeks to add claims regarding federal jurisdiction, even though the case was properly removed and jurisdiction is not in dispute. (*Id*. ¶¶ 13-14.)

Plaintiff leaves in allegations against the products he admitted he did not purchase and against Simply Good Foods, even though Simply Good Foods has no involvement with the allegations in the Complaint other than becoming the parent company of OWYN after Plaintiff allegedly purchased the products. (*Id*. ¶ 10.)

---

[1] In the original Complaint, Plaintiff claims to have "purchased the Shakes at retail locations in California." (Complaint, ¶ 5.) Earlier "Shakes" is defined as "the following ready-to-drink protein shakes marketed and sold by Defendants: (1) Elite PRO Chocolate, 355ML; (2) Elite PRO Vanilla, 355 ML; (3) Elite PRO Plant Powered Drink, Vanilla, 330 ML; (4) Elite PRO Plant Powered Drink, No Nut Butter Cup, 330 ML; and (5) Elite PRO Plant Powered Drink, Sea Salted Caramel, 330 ML." (*Id*. ¶ 1.)

# ARGUMENT

Pursuant to Rule 16(b), a scheduling order should not be modified absent good cause. Fed. R. Civ. P. 16. "The good cause standard of Rule 16(b) primarily considers the diligence of the party seeking the amendment. If that party was not diligent, the inquiry should end." *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764 (9th Cir. 2017) (internal quotations and citations omitted). The burden to prove good cause is on the moving party. *Id.*; *Henriquez*, 2014 WL 12707230, at *2.

If the Court finds there is good cause or that there is no need to amend the scheduling order, the Rule 15(a) standard applies. Fed. R. Civ. P. 15(a). In applying Rule 15(a), the "district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Ndandu v. Alvarado*, No. 2:23-08882 SB (ADS), 2025 WL 1093801, at *1 (C.D. Cal. Feb. 20, 2025) (citing *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)).

## I. PLAINTIFF HAS NOT PROVEN GOOD CAUSE TO AMEND THE SCHEDULING ORDER

The party seeking to modify a Scheduling Order bears the burden of proof. *Branch Banking & Tr.*, 871 F.3d at 764. Plaintiff has not met that burden factually or legally. He cites the wrong legal standard and fails to put in any facts to support good cause.

### A. The Standard Under Rule 16 Applies to this Motion

Plaintiff is incorrect that Rule 16 does not apply to his request for leave to amend. (Mot. at 13.) After receiving the parties' report under Rule 26(f) and conducting a scheduling conference, the Court issued a scheduling order with the class certification hearing set on July 31, 2025 and the class certification reply brief due July 17, 2025. (Dkt. 19.)

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff has conceded through his conduct that the Motion is a request to amend the Scheduling Order that is governed by Rule 16. The Ninth Circuit has recognized that, in some circumstances, it is appropriate to "consider[] a motion to amend the complaint as a motion to amend the scheduling order and the court's denial of that motion a denial of a motion to amend the scheduling order." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) (applying good cause standard where plaintiff "did *not* specifically request that the court modify its scheduling order; he merely moved to amend his complaint") (emphasis in original). Here, even though the Court has not set a deadline for amending pleadings, it is necessarily prior to June 26, 2025 (this Motion's hearing date) because that is only three weeks before the class certification reply brief deadline and five weeks before the class certification hearing. In that time, the parties need to complete necessary fact discovery, complete expert discovery, and brief the motion for class certification. For comparison, Plaintiff took the position in the Rule 26(f) statement that class certification discovery should close three months prior to submission of the class certification reply brief. (Dkt. 17 at 3-5.)

Plaintiff's proposed amendments will necessarily add additional discovery because he seeks to add allegations against a new protein shake. While the Court's Scheduling Order allows the parties flexibility to set certain deadlines within reason, it does not give them license to ignore the schedule all together. Plaintiff's claim that Rule 16 does not apply cannot stand unless he intends to adhere to the schedule for the class certification hearing. In order to modify the Scheduling Order, Plaintiff must show good cause and seek the Court's consent. Fed. R. Civ. P. 16(b)(4).

## B.    Plaintiff Has Failed to Prove Good Cause

Plaintiff cannot demonstrate good cause to modify the Scheduling Order. "The good cause standard of Rule 16(b) primarily considers the diligence of the party seeking the amendment. If that party was not diligent, the inquiry should end." *Branch Banking & Tr. Co.*, 871 F.3d at 764 (internal quotations and citations

1    omitted). "Moreover, carelessness is not compatible with a finding of diligence and

2    offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.

3          Plaintiff knew what products he bought before he filed the Complaint. That is

4    not newly discovered evidence or something he could not have diligently discovered

5    before both filing suit on products he did not purchase and maintaining that suit for

6    many months before seeking leave to amend. Plaintiff seeks to amend the Complaint

7    because of his own failure to read it before filing it and his lawyer's failure to

8    conduct a reasonable investigation. At his deposition in January 2025, Plaintiff

9    revealed that he never purchased the products that form the basis of his claims and

10    that he did not read the Complaint before filing it. (Tr. at 62:14-63:7, 74:16-25; 46:6-

11    9; 47:23–49:16.) His motion provides no excuse for this carelessness. Indeed, there is

12    no excuse. It is fundamental that every attorney "has a duty prior to filing a

13    complaint [] to conduct a reasonable factual investigation[.]" *Christian v. Mattel,*

14    *Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Plaintiff's counsel's abandonment of this

15    duty amounts to carelessness at the very least. Accordingly, Plaintiff has not

16    demonstrated good cause for modification of the Complaint, and ultimately the

17    schedule, under Rule 16.

18    **II.    PLAINTIFF DEMONSTRATED BAD FAITH AND UNDULY DELAYED IN SEEKING TO LEAVE TO AMEND**

19

20          Even if there is no modification to the Scheduling Order or if the Court finds

      that there is good cause, leave to amend should still be denied pursuant to Rule 15(a).

21    Plaintiff's new allegations involve facts known to Plaintiff since before the original

22    Complaint was filed and Plaintiff ignored opportunities to amend his Complaint

23    sooner, demonstrating bad faith and making Plaintiff's delay in amending his

24    Complaint undue. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991)

25    ("Undue delay is a valid reason for denying leave to amend.") (citation omitted);

26    *Christensen v. CLP Res., Inc.*, No. 2:14-CV-08073-GW-PLAX, 2018 WL 6017015,

27

28

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

at \*4 (C.D. Cal. Oct. 22, 2018) (Wu, J.) (denying leave to amend where "Plaintiffs cannot point to any new facts to justify their proposed amendment").

As a threshold matter, the factual information that Plaintiff seeks to add in the Proposed Amended Complaint—namely, allegations regarding the products he now claims he actually purchased—was known to him before he filed his Complaint. Plaintiff had ample time and opportunity to add these facts, but did not do so. There is no justification for adding them now. Courts in this district frequently "deny leave to amend where the party seeking amendment had prior knowledge of the facts in the amended pleading but failed to include them in an earlier pleading." *McKettrick v. Yates*, 627 F. Supp. 2d 1144, 1151 (C.D. Cal. 2008); *see also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." (citations omitted)). Plaintiff's motion does not address this authority or otherwise suggest Plaintiff lacked knowledge of what products he purchased at the time he filed the original Complaint.

In addition, absent from Plaintiff's motion is any explanation for why he waited until after his deposition to seek testing on the product he actually purchased, which is itself grounds for denying Plaintiff's motion. *Dillingham v. Asuncion*, No. 2:18-CV-01826-PSG-AFM, 2020 WL 10895368, at \*2 (C.D. Cal. Aug. 19, 2020) (motion to amend denied where Petitioner could have raised his claim earlier and offered no explanation for the delay); *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011) ("[U]ndue delay combined with bad faith is enough to justify a denial of a motion to amend."), *aff'd*, 475 F. App'x 334 (Fed. Cir. 2012). At the very least, he could have amended the claims following his deposition in January 2025, which he did not do despite many requests from Defendants.

In *Christensen v. CLP Resources*, this Court found that the undue delay and bad faith factors weighed against granting a motion to amend where plaintiff knew

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

the relevant facts at the time of the filing of the complaint and provided no explanation for the late amendment. *Christensen*, 2018 WL 6017015, at *4. Similarly, here Plaintiff obviously knew what products he actually purchased at the time he filed the Complaint and provides no explanation for his failure to read the Complaint at the time it was filed.

According to Plaintiff, his motion to amend is timely because he filed it "promptly after receiving laboratory testing in late March 2025." (Mot. 10.) Not so. Plaintiff admits he did not commission the reports until March 4, 2025—a year after he purchased the products and more than five months after he filed his Complaint. (*Compare* Mot. 11 *with* Mot. 4-5.) Plaintiff could have commissioned the reports at any time after he first purchased the product, and indeed he commissioned the reports on the other products over a year ago. Had Plaintiff's counsel properly investigated, they would have sought laboratory testing and served the demand letter regarding the products Plaintiff actually purchased before filing the original Complaint. Therefore those claims are similarly unduly delayed. *Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.1982) ("Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied."), *vacated on other grounds*, 459 U.S. 810 (1982). Thus, Plaintiff's argument regarding the timing of his laboratory testing is irrelevant to when he could have amended the Complaint.

Because Plaintiff knew, or should have known, the information upon which he relies in his proposed amendments, his delay in seeking leave to amend demonstrates bad faith and is undue, which is a separate and independent reason for denying the motion.

## III.    ALLOWING AMENDMENT WOULD PREJUDICE DEFENDANTS

Plaintiff claims the proposed amendments will not prejudice Defendants. (Mot. at 12-13.) This is incorrect. Defendants have had to defend against Plaintiff's false

1  allegations for nearly nine months. Plaintiff would have known that the allegations
2  were untrue had he read his Complaint or had his lawyers properly investigated. For
3  over four months, Plaintiff and his lawyers proceeded on a Complaint that they knew
4  was untrue. During this time, OWYN asked Plaintiff many times to correct his
5  representations to the Court, but Plaintiff did nothing.

6      Moreover, Plaintiff does not know whether he actually purchased a product
7  with nutrient levels that significantly differed from the contents reported on the
8  OWYN label. OWYN has been upfront with its customers that due to the natural
9  variations in plant-based ingredients, it faced significant challenges maintaining
10 consistent texture in its shakes early on when it began implementing large-scale
11 productions. (Moose Dec. ¶ 7.) During that time, some manufacturers noticed that
12 batches of shakes were overly thick and added small amounts of water to achieve the
13 consistency consumers expected, which led to small variations in the protein and
14 other nutrient content in those batches. (*Id*. ¶ 8.) Only a limited number of batches
15 were affected, and the amount of dilution varied as OWYN reformulated the
16 products and worked to address the issue. (*Id*. ¶ 9.) After a short learning curve,
17 OWYN achieved consistent and accurate nutrient contents across its shakes. (*Id*. ¶
18 10.) Plaintiff does not allege that any of the shakes he actually purchased contained
19 less protein than advertised. Plaintiff's lawyers own alleged testing confirms that, at
20 least at or around the time of Plaintiff's alleged purchases, OWYN's shakes
21 contained at least as much, if not more, protein as was stated on the labels. Thus,
22 Plaintiff's supposed laboratory testing, which was not performed on the shakes that
23 Plaintiff actually purchased, cannot confirm that Plaintiff actually purchased a shake
24 with inaccurate nutritional information. Similarly, Plaintiff will not be able to certify
25 a class because the batches that were affected, and the degree to which they were
26 affected, varied over time and across manufacturers.

27     Plaintiff seeks to add allegations regarding an additional, previously
28 unmentioned protein shake at a time when discovery is wrapping up, Defendants

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

have already taken Plaintiff's deposition, and the parties are gearing up for the motion for class certification. Significantly, the chocolate Pro Elite Tetra Pak shakes are manufactured in a different facility from the chocolate Pro Elite shakes sold in plastic bottles (which Plaintiff claims he purchased in the original Complaint but now admits he did not purchase). (*Id*. ¶ 5.) Thus, the amendment would require Defendants to conduct additional investigation regarding the new product and manufacturing facility, consult with an expert regarding the new shake and facility, and spend additional time and expense defending new allegations. Courts in this district routinely find undue prejudice where, as here, an amendment would delay discovery. *See, e.g.*, *Jackson v. Bank of Hawaii*, 902 F. 2d 1385, 1387 (9th Cir. 1990) (denying leave to amend due to undue delay and the prejudice that would be caused by additional discovery after amendment); *Wimbeldon Fund, SPC (Class TT) v. Graybox, LLC*, No. 2:16-CV-02287-CAS-SS, 2019 WL 979246, at *12 (C.D. Cal. Feb. 28, 2019) (same, where discovery was set to be completed in one month and the claims would expand the scope of discovery); *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1178 (E.D. Cal. 2013) (explaining that "a late-tendered amendment that would fundamentally change the case to incorporate new causes of action and that would require discovery" is "prejudicial to the opposing party" and should be denied). As Plaintiff's proposed amendments would unduly prolong this action and increase legal expenses, they would prejudice Defendants and should be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that Plaintiff's motion for leave to amend should be denied and the class certification hearing scheduled for July 31, 2025 should not be modified.

1    Dated: June 5, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:    */s/ David H. Kwasniewski*
David H. Kwasniewski

*Attorneys for Defendants The Simply
Good Foods Co. and Only What You
Need, Inc.*

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

1

## CERTIFICATE OF COMPLIANCE WITH THE WORD COUNT

2      The undersigned, counsel of record for Defendants, certifies that this brief

3  contains 4,365 words, which complies with the word limit of L.R. 11-6.1.

4

5  Dated: June 5, 2025                    /s/ David H. Kwasniewski

6                                         David H. Kwasniewski