1  George V. Granade (State Bar No. 316050)
   *ggranade@reesellp.com*
2  **REESE LLP**
   8484 Wilshire Boulevard, Suite 515
3  Los Angeles, California 90211
   Telephone: (310) 393-0070
4  Facsimile: (212) 253-4272

5  Michael R. Reese (State Bar No. 206773)
   *mreese@reesellp.com*
6  **REESE LLP**
   100 West 93rd Street, 16th Floor
7  New York, New York 10025
   Telephone: (212) 643-0500
8  Facsimile: (212) 253-4272

9  Alec Pressly (State Bar No. 348054)
   *alec@presslylegal.com*
10 **THE LAW OFFICE OF ALEC PRESSLY**
   3110 Main Street Building C, #331
11 Santa Monica, California 90405
   Telephone: (603) 809-6601

12 [Additional Counsel Listed on Signature Page]

13 *Counsel for Plaintiff Emmett Enriques*
14 *and the Proposed Class*

15                    **UNITED STATES DISTRICT COURT**

16                    **CENTRAL DISTRICT OF CALIFORNIA**

17                         **WESTERN DIVISION**

18

19 | EMMETT ENRIQUES, *individually and on behalf of all others similarly situated*, | Case No. 2:24-cv-08969-GW-BFM |
20 |  | **PLAINTIFF EMMETT ENRIQUES' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED CLASS ACTION COMPLAINT** |
21 | Plaintiff, |
22 | v. |
23 | ONLY WHAT YOU NEED, INC., *a Delaware Corporation*; THE SIMPLY GOOD FOODS COMPANY, *a Delaware Corporation*; and DOES 1 through 70, *inclusive*, |
24 |  | Date: June 26, 2025 |
25 |  | Time: 8:30 a.m. Place: Courtroom 9D, 9th Floor Judge: Honorable George H. Wu |
26 | Defendants. |

27

28

REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

I.      INTRODUCTION ......................................................................................... 1

II.    RESPONSE TO DEFENDANTS' STATEMENT OF THE CASE "BACKGROUND" ........................................................................................ 4

III.   ARGUMENT ............................................................................................... 6

     A.    Rule 15(a)(2) Is Satisfied ................................................................. 6

           1.    Defendants Will Suffer No Prejudice on Account of the Amendment ............................................................................ 6

           2.    Plaintiff Has Exercised Good Faith and Diligently Sought a Narrow Amendment ............................................... 10

     B.    Rule 16(b)(4) Does Not Apply, But Even If It Did, It Is Satisfied ......................................................................................... 14

           1.    Rule 16(b)(4) Does Not Apply Because the Court Has Not Yet Entered a Scheduling Order and Has Not Set a Deadline for Amending the Pleadings ...................................... 14

           2.    Even Assuming Rule 16(b)(4) Did Apply (Which It Does Not), Good Cause Exists to Allow the Proposed Amendment Because Plaintiff Has Been Diligent .................. 16

     C.    Plaintiff Properly Named The Simply Good Foods Company as a Defendant ............................................................................ 17

IV.   CONCLUSION ........................................................................................ 18

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2 ..................... 19

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>

3  *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*,
   No. 16-cv-01968-GW-JEM, 2017 WL 6888242 (C.D. Cal. Sept. 7, 2017) .......... 9

4

5  *Acri v. International Ass'n of Machinists & Aerospace Workers*,
   781 F.2d 1393 (9th Cir. 1986) ................................................................. 13

6  *Bowles v. Reade*,
   198 F.3d 752 (9th Cir. 1999) ............................................................. 10, 11

7

8  *DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ...................................................................... 6

9  *Dillingham v. Asuncion*, No. 2:18-cv-01826-PSG-AFM,
   2020 WL 10895368 (N.D. Cal. Aug. 19, 2020) ..................................... 13

10

11  *Echols v. Cnty. of San Bernardino*, No. 19-cv-00686-GW-KK,
    2020 WL 13283475 (C.D. Cal. Aug. 10, 2020) ................................. 10, 14

12  *Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .................................................................... 6

13

14  *Foman v. Davis*,
    371 U.S. 178 (1962) ........................................................................... 1, 6

15  *Jackson v. Bank of Hawaii*,
    902 F.2d 1385 (9th Cir. 1990) .................................................................. 10

16

17  *Luma Pictures, Inc. v. Betuel*, No. 16-cv-02625-GW-PLA,
    2016 WL 11519331 (C.D. Cal. Sept. 29, 2016) ....................................... 10

18  *Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) .................................................................... 2

19

20  *Meridian Rapid Def. Grp. LLC v. Delta Sci. Corp.*,
    No. 23-cv-07222-GW-PD, 2024 WL 5411398 (C.D. Cal. Mar. 1, 2024) .......... 11

21  *Orozco v. Midland Credit Mgmt. Inc.*, No. 2:12-cv-02585-KJM,
    2013 WL 3941318 (E.D. Cal. July 30, 2013) ........................................... 17

22

23  *SAES Getters S.p.A. v. Aeronex, Inc.*,
    219 F. Supp. 2d 1081 (S.D. Cal. 2002) ..................................................... 9

24  *Sneller v. City of Bainbridge Island*,
    606 F.3d 636 (9th Cir. 2010) .................................................................... 12

25

26  *Sotelo v. Rawlings Sporting Goods Co., Inc.*, No. 18-cv-09166-GW-MAA,
    2019 WL 4392528 (C.D. Cal. May 8, 2019) ............................................... 2

27  *Stoddart v. Express Servs.*, No. 2:12-cv-01054-KJM-CKD,
    2017 WL 3333994 (E.D. Cal. Aug. 4, 2017) ............................................. 17

28

*Stotz v. Mophie Inc.*, No. 16-cv-08898-GW-FFM,
    2017 WL 1106104 (C.D. Cal. Feb. 27, 2017).........................................................2

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991)..............................................................................12

*Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*,
    278 F.R.D. 505 (N.D. Cal. 2011).......................................................................13

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
    No. 08-cv-02068-PSGFFM, 2009 WL 650730 (C.D. Cal. Mar. 12, 2009).........11

*Vital v. One World Co. LLC*, No. 12-cv-00314-JGB-MLG,
    2013 WL 12439681 (C.D. Cal. Apr. 4, 2013) ..............................................14, 16

*Waring v. Geodis Logistics LLC*, No. 19-cv-04415-GW-KS,
    2019 WL 3424955 (C.D. Cal. July 29, 2019)......................................................10

STATUTES

28 U.S.C. § 1927.............................................................................................................4

Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.*....................passim

OTHER AUTHORITIES

Federal Rule of Civil Procedure 11 ..............................................................4, 12, 19

Federal Rule of Civil Procedure 15 ..................................................................passim

Federal Rule of Civil Procedure 16 ..................................................................passim

1   Plaintiff Emmett Enriques ("Plaintiff" or "Enriques") respectfully submits
2   this reply memorandum of points and authorities in support of his motion for leave
3   to file a First Amended Class Action Complaint. *See* Pl.'s Notice Mot. & Mot. Leave
4   File First Am. Compl., ECF No. 26 ("Motion"); Mem. P. & A. Supp. Pl.'s Mot.
5   Leave File First Am. Compl., ECF No. 26-1 ("Brief" or "Br.").

6   **I.    <u>INTRODUCTION</u>**

7        In his opening Brief, Enriques showed that he well satisfies the liberal
8   standard set forth in Federal Rule of Civil Procedure 15(a)(2) for granting leave to
9   amend. Enriques seeks leave to make amendments to the pleading to specify which
10  Shakes[1] he purchased and to add claims regarding one additional substantially
11  similar Shake. Defendants Only What You Need, Inc. ("OWYN"), and The Simply
12  Good Foods Company ("SGFC") (together, "Defendants") will suffer no prejudice
13  due to the narrow amendments to the pleading. Furthermore, none of the factors set
14  forth in *Foman v. Davis*, 371 U.S. 178, 182 (1962), such as undue delay, bad faith
15  or dilatory motive, repeated failure to cure deficiencies by previous amendments, or
16  futility, is present. Under the circumstances present here, leave to amend should be
17  freely given.

18       Additionally, even though Federal Rule of Civil Procedure 16(b)(4) does not
19  apply here because the Court has not entered a scheduling order pursuant to Rule
20  16(b)(3)(A) and has not set a deadline for amendment of the pleadings, Plaintiff
21  nevertheless also demonstrated in his opening Brief that Rule 16(b)(4)'s good cause
22  standard is met because he has diligently sought leave to amend.

23       Defendants' arguments in opposition to Plaintiff's Motion are meritless.

24       Defendants' Opposition[2] hinges on a misrepresentation to this Court. They
25  continue to wrongly assert that the original Complaint is "false" because, they claim,

---

[1] "Shakes" and "Products" have the same definition as in the opening Brief. Br. 5:2-
9.
[2] Defs.' Opp'n Pl.'s Mot. Leave File First Am. Compl., ECF No. 28 ("Opposition"
or "Opp'n").

Plaintiff never purchased any of the Shakes at issue in the pleading. That assertion is false and directly contradicts Plaintiff's deposition testimony. As shown in the opening Brief, Plaintiff testified at his deposition on January 28, 2025, that he purchased the Elite PRO Vanilla Shake in the 330mL tetra pak container, a product expressly encompassed within the Complaint's definition of "Shakes." Defendants know this. Yet, they persist in distorting the record, hoping to mislead the Court into thinking this entire action rests on a factual error that does not exist.

Defendants also attempt to manufacture a false controversy by arguing the Complaint implies Plaintiff purchased every flavor variant and container variant of the Elite PRO line. Plaintiff strongly disputes that reading; however, to remove even the appearance of ambiguity, the proposed First Amended Class Action Complaint specifies the exact flavors in the exact container sizes he purchased. Yet Defendants simultaneously oppose the very clarification they have demanded. Further, Plaintiff notes that he has always been allowed under Ninth Circuit authority to pursue claims as to all products at issue, even the substantially similar ones he did not purchase, because Ninth Circuit courts follow the "class certification" approach regarding standing to pursue claims concerning substantially similar unpurchased products. *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015); *Sotelo v. Rawlings Sporting Goods Co., Inc.*, No. 18-cv-09166-GW-MAA, 2019 WL 4392528, at *3-4, *3 n.2 (C.D. Cal. May 8, 2019) (Wu, J.); *Stotz v. Mophie Inc.*, No. 16-cv-08898-GW-FFM, 2017 WL 1106104, at *6 (C.D. Cal. Feb. 27, 2017) (Wu, J.).

Despite Defendants' incorrect narrative that the pleading is "false," OWYN's own Chief Operating Officer has now admitted that the basic allegations in the Complaint are true. According to the Moose Declaration[3] filed with Defendants' Opposition brief, OWYN faced "***significant challenges*** maintaining consistent texture" during manufacturing, and in some cases, manufacturers diluted the shakes

---

[3] Decl. Moose Supp. Defs.' Opp'n Pl.'s Mot. Leave File First Am. Compl., ECF No. 28-1 ("Moose Declaration" or "Decl. Moose").

1  with water, causing "small variations in the protein and other nutrient content." Decl.

2  Moose ¶¶ 7-8 (emphasis added). Variations between Defendants' labeling and the

3  actual content of the Products are at the core of Plaintiff's claims in the original

4  Complaint. Defendants have not yet produced any discovery on their admittedly

5  "significant challenges." And they have produced no discovery as to how long those

6  "significant challenges" persisted or how many variations were tried out by

7  Defendants, all the while apparently knowingly mislabeling their Products. Rather

8  than refuting Plaintiff's claims, Defendants' sworn testimony confirms them.

9       The amendment is narrow and appropriate. It seeks to add the chocolate flavor

10  in the 330mL container to the definition of the "Shakes"—a product in the same

11  Elite PRO line that shares the same 330mL container, identical front-label

12  representations, and substantially similar ingredient formulation as the Vanilla, No

13  Nut Butter Cup, and Sea Salt Caramel flavors that already are part of the "Shakes."

14  Moreover, the chocolate flavor in the 355mL container is also already part of the

15  Complaint's definition of the "Shakes," meaning the proposed amendment merely

16  adds a different container size of a flavor already at issue. Plaintiff has proceeded

17  diligently, testing the chocolate flavor in the 330mL container, and complying with

18  the notice requirements of California's Consumers Legal Remedies Act, CAL. CIV.

19  CODE § 1750 *et seq.* ("CLRA"). After Defendants ignored Plaintiff's CLRA notice,

20  Plaintiff promply sought leave to amend.

21       Furthermore, the proposed amendment does not alter any current deadlines.

22  There are no fact or expert discovery deadlines; there is no dispositive motions

23  deadline; and a pretrial conference and a trial date are not set. Nor does amendment

24  unduly prejudice Defendants. Discovery is in early stages; Defendants have to date

25  only produced seven pages of documents; Defendants have not yet conducted any

26  searches for documents pursuant to the ESI Protocol[4]; Defendants have evaded

27

28  _____

[4] Decl. Granade Supp. Pl.'s Mot. Leave File First Am. Compl. ¶¶ 25-26, ECF No. 26-3 ("Decl. Granade"); *see also* ESI Protocol ¶ 4, ECF No. 25.

1  answering interrogatories propounded; and Defendants have not yet faced a
2  deposition. Remarkably, in these circumstances, Defendants nevertheless falsely
3  assert that "discovery is wrapping up." Opp'n 13:28. The record shows discovery is
4  in early stages and is far from "wrapping up."

5  Defendants' counsel has repeatedly threatened to seek sanctions under Federal
6  Rule of Civil Procedure 11 and 28 U.S.C. § 1927 if the case is not dismissed and has
7  in fact served such a motion—unsupported by any factual or legal basis. This
8  improper tactic reveals the weakness of Defendants' position and the overreach
9  animating their Opposition brief.

10  **II.    RESPONSE TO DEFENDANTS' STATEMENT OF THE CASE**
11       **"BACKGROUND"**

12  Defendants' recitation of the background of the case includes several
13  misstatements regarding the case's procedural history which Plaintiff will briefly
14  address. First, Defendants contend "Plaintiff did not respond to OWYN's letter" of
15  February 24, 2025, which asked Plaintiff to dismiss his case on the ground that he
16  (supposedly) testified he had not purchased any of the Products at issue. Opp'n 6:16-
17  20; *see also* Decl. Granade, Ex. 5, ECF No. 26-8 (copy of letter). The record shows
18  this is false. Plaintiff responded to the letter on the day he received it during a meet
19  and confer with defense counsel and documented the response in an email to defense
20  counsel. Decl. Granade ¶¶ 14-15, ECF No. 26-3; Decl. Granade, Ex. 6, at 2 of 4,
21  ECF No. 26-9.

22  Next, Defendants contend that during the parties' meet and confer of February
23  24,[5] 2025, "Plaintiff refused" to amend the pleading. Opp'n 6:22. This is also false.
24  The record shows that during the February 24, 2025, meet and confer, Plaintiff
25  indicated he "would consider the possibility of amending the pleading to specify

26

---

27  [5] Defendants state that this meet and confer took place on "February 26" (Opp'n
28  6:20), but a contemporaneous email confirms it took place on February 24. Decl.
   Granade, Ex. 6, at 2 of 4, ECF No. 26-9. Plaintiff assumes "26" is a typo.

1   which Shakes Plaintiff purchased." Decl. Granade ¶ 15, ECF No. 26-3.

2       Defendants then contend that during the parties' meet and confer of March 4,

3   2025, "Plaintiff once again refused" to amend the pleading. Opp'n 6:24-28. Again,

4   this is false. The record shows that during the meet and confer of March 4, 2025,

5   Plaintiff's counsel "asked if Defendants would be open to stipulating to an

6   amendment of the pleading." Decl. Granade ¶ 16, ECF No. 26-3. And an email

7   Plaintiff's counsel sent on March 6, 2025, memorializing Plaintiff's understanding

8   of the March 4 meet-and-confer confirms that Plaintiff's counsel asked if Defendants

9   would "be open to stipulating to an amendment of the pleading." Decl. Granade, Ex.

10  8, at 3 of 4, ECF No. 26-11.

11      To be clear, Plaintiff does not agree that his Complaint is false in any respect.

12  However, it is not true that Plaintiff did not respond to Defendants' assertions about

13  the content of his pleading. As shown above, Plaintiff timely replied to Defendants'

14  contentions and indicated a willingness to clarify any purported ambiguity through

15  a stipulated amendment (which Defendants refused to agree to).

16      Finally, Defendants contend Plaintiff "did not read" the labels of the Shakes

17  he purchased. Opp'n 2:20. This also is false. Plaintiff testified he read and relied on

18  the labels of the OWYN Shakes he purchased, including the nutrition facts labeling

19  and the labeling of protein content, carbohydrate content, and sugar content. *See* Tr.

20  Dep. Enriques[6] 15:24-16:10 ("Q. Okay. What specifically drew you to OWYN

21  products, as I imagine there's other protein shakes on the shelf? A. So typically I

22  think what you are asking me is my thought process behind purchasing. Like I said

23  earlier, I have tried most protein shakes. The first thing that would draw me into

24  purchasing a protein shake and a brand is the nutrition facts. Generally when I'm

25  looking at a protein shake, I will look at four things: Number one, the calories;

26  number two, the protein; number three, the carbohydrates; and number four, the

27

28

---

[6] These additional pages of the transcript of Enriques' deposition are attached as Exhibit 1 to the Reply Declaration of George V. Granade.

1  sugar."); *see also id.* at 16:21-23 ("Q. And so when you are buying protein shakes,
2  do you always read that panel [the nutrition facts panel]? A. Yes.").

3  **III.    ARGUMENT**

4      **A.    Rule 15(a)(2) Is Satisfied**

5          **1.    Defendants Will Suffer No Prejudice on Account of the**
6              **Amendment**

7      As the Ninth Circuit has explained, "[n]ot all of the factors [under Rule
8  15(a)(2)] merit equal weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048,
9  1052 (9th Cir. 2003). "[I]t is the consideration of prejudice to the opposing party that
10 carries the greatest weight." *Id.* "Absent prejudice, or a strong showing of any of the
11 remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of
12 granting leave to amend." *Id.* "The party opposing amendment bears the burden of
13 showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir.
14 1987). Defendants have not carried that burden here.

15     Defendants advance four unconvincing arguments regarding prejudice—none
16 of which withstand scrutiny.

17     ***First***, Defendants repeat the false narrative that the original Complaint
18 contains knowingly "false allegations," asserting that Plaintiff never purchased any
19 of the Shakes at issue in the pleading. *See* Opp'n 12:27-13:4. That claim is
20 contradicted by the very deposition testimony elicited by defense counsel, as detailed
21 in the opening Brief. Tr. Dep. Enriques 10:6-16, 11:8-23, 12:1-20, 19:20-20:12,
22 62:14-63:7, 74:16-25, ECF No. 26-6. Plaintiff testified under oath at his deposition
23 on January 28, 2025, that he purchased the Elite PRO Vanilla flavor in the 330mL
24 tetra pak container, which is expressly encompassed within the Complaint's
25 definition of "Shakes." *Id.*; Compl. ¶ 1. Defendants know this. They have known it
26 since January, and Plaintiff's counsel has explained it to them in meet-and-confer
27 discussions and in writing. Decl. Granade ¶ 15, ECF No. 26-3; Decl. Granade, Ex.
28 6, at 2 of 4, ECF No. 26-9 ("During the call, I stated, among other things, that Mr.

1   Enriques' testimony shows that he purchased the third product listed in the first

2   paragraph of the complaint, the Elite Pro vanilla 330 mL tetrapack. I discussed and

3   quoted from page 12 of the transcript of Mr. Enriques' deposition . . . page 74 of the

4   transcript . . . [and] page 10 of the transcript at lines 15-16 . . . ."); Decl. Granade,

5   Ex. 8, at 3 of 4, ECF No. 26-11 ("For sake of clarity . . . Mr. Enriques did purchase

6   the Elite Pro 330 mL Vanilla shake (as discussed in my prior email dated February

7   25, 2025) . . . ."). Defendants cite no testimony or other evidence contradicting the

8   testimony Plaintiff submitted in the opening Brief showing that Plaintiff purchased

9   the Elite PRO Vanilla 330 mL Shake. Defendants' persistent misrepresentation of

10  Plaintiff's testimony does not demonstrate prejudice (let alone *undue* prejudice).

11       Defendants also disingenuously claim they asked Plaintiff "many times to

12  correct his representations to the Court, but Plaintiff did nothing." Opp'n 13:4-5. As

13  shown above, this narrative is also false, for reasons including that Plaintiff promptly

14  sought to obtain Defendants' consent to amend the pleading on March 4, 2025, after

15  receiving their letter of February 24, 2025, but Defendants refused to consent. *See*

16  *supra* § II.

17       The amendment does not "fix" a "false" pleading; it simply clarifies exactly

18  which flavors and containers Plaintiff purchased and tested. That is not prejudicial.

19  It is good-faith pleading refinement of the kind Rule 15 is designed to facilitate.

20       **Second**, Defendants suggest that their own poor quality control processes

21  preclude Plaintiff from certifying a class or identifying harm, and that this somehow

22  constitutes prejudice. Opp'n 13:6-26. According to OWYN's Chief Operating

23  Officer, "some manufacturers" diluted certain batches of the shakes with water

24  during production, which caused "small variations in the protein and other nutrient

25  content." Decl. Moose ¶¶ 7-8. Defendants now argue that this variability prevents

26  anyone from knowing the nutritional content of a product unless that exact bottle is

27  tested.

28       This is not a prejudice argument. It is an admission of liability. OWYN's

internal manufacturing practices made the Products nutritionally unreliable—precisely the allegation in the Complaint. If anything, Defendants' admissions prove Plaintiff's claims. Whether the degree of batch-to-batch variability impacts class certification (it does not) is a Rule 23 issue, not a reason to deny leave to amend under Rule 15.

**Third**, Defendants argue that the Chocolate Elite PRO shake in the 330 mL tetra pak carton is manufactured at a different facility than the Chocolate Elite PRO shake in the 355 mL plastic bottle. Opp'n 14:2-5 (citing Decl. Moose ¶ 5). But this fact—which is not disclosed or known to consumers—does not demonstrate undue prejudice; it affirms the core allegation in the existing Complaint: that OWYN did not and cannot maintain consistent quality control across its Elite PRO product line. The Chocolate 355 mL shake is already part of the current Complaint, and Defendants have known since the outset that it is at issue. The proposed amendment merely seeks to add the Chocolate 330 mL carton variant, which is labeled with the same protein and net carb claims, sold during the same time period, and uses substantially the same formulation. OWYN's claim—with no evidentiary support—that it must "conduct additional investigation" and "consult with an expert" simply because the same flavor was produced in a different plant (Opp'n 14:5-8) is not a claim of prejudice. It is an admission that OWYN lacks reliable quality assurance across its facilities.

Food producers are responsible for ensuring that nutritional labels are accurate regardless of the location of production. The distinction between two undisclosed facilities producing the same product for the same brand does not transform the Chocolate 330 mL shake into a new product category. It simply highlights that Defendants engaged in systematic mislabeling—exactly what Plaintiff has alleged and what OWYN's own COO has now admitted. *See* Decl. Moose ¶¶ 7-9.

**Fourth**, Defendants argue they will be prejudiced because the amendment could delay discovery. Opp'n 14:8-21. But this amendment does not alter the causes

of action or the core theory of liability. It does not introduce a new product line. It simply adds the Chocolate flavor in the same 330 mL container size as the Vanilla, No Nut Butter Cup, and Sea Salted Caramel flavors already covered by the Complaint. Compl. ¶¶ 1, 37, 40, 42. Testing has already been completed, and CLRA notice has already been provided. Decl. Granade ¶¶ 27-28, ECF No. 26-3.

Moreover, Defendants' claim that "discovery is wrapping up" (Opp'n 13:28) is absurd. While Plaintiff served Defendants with discovery requests immediately after the parties' Rule 26(f) conference (Decl. Granade ¶ 7, ECF No. 26-3), in the nine months since removal, Defendants have produced fewer than ten pages of documents (*id.* at ¶ 9), failed to respond meaningfully to interrogatories, and have not made a single witness available for deposition. No ESI has been produced, no sampling data disclosed, and no internal QA documentation made available. The parties are still carrying out the ESI Protocol, and pursuant to the ESI Protocol, Plaintiff is seeking to depose Defendants prior to serving proposed search terms. *Id.* at ¶¶ 24-26. Defendants' assertion that discovery is nearing completion is untrue.

Any discovery necessitated by the amendment will be entirely manageable within the current case schedule. There is no scheduled fact discovery deadline, deadline for dispositive motions, pretrial conference, or trial date. Defendants offer no concrete reason why a clarification of the scope of the pleading would require any meaningful extension of deadlines. Courts routinely reject prejudice arguments based on speculative or incremental discovery. *See SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) (rejecting undue prejudice argument where additional discovery would be "minimal"). Moreover, Defendants will have the right and opportunity to take discovery on the new allegations, thereby minimizing any potential prejudice. *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, No. 16-cv-01968-GW-JEM, 2017 WL 6888242, at *5 (C.D. Cal. Sept. 7, 2017) (Wu, J.) ("[A]s Plaintiff points out, Defendants will have the right and opportunity to take discovery on the new claim, thereby minimizing any potential prejudice.").

1    The primary case that Defendants cite to support their argument of prejudice

2    actually demonstrates there is no prejudice here.

3    In *Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990), the court found

4    prejudice where the plaintiffs sought to add entirely new RICO claims under

5    different statutory subsections that required proof of different facts and would nullify

6    prior discovery, plus force relitigation of a separate insurance coverage case that had

7    been "extensively litigated." *Id.* at 1387-88. Here, Plaintiff seeks to add a product

8    variant with identical labeling claims and a substantially similar formulation where

9    no fact discovery deadline has been set and almost no discovery has been completed,

10    and no separate litigation would be affected.

11    Defendants' claims of prejudice collapse. There is no legitimate reason to

12    deny this narrow, factually supported amendment.

13    **2.**    **Plaintiff Has Exercised Good Faith and Diligently Sought a**

14    **Narrow Amendment**

15    Defendants also argue the Court should deny leave to amend under Rule

16    15(a)(2) on the grounds of bad faith and undue delay. Opp'n 10:19-12:25. These

17    arguments are also without merit.

18    "Undue delay by itself . . . is insufficient to justify denying a motion to amend"

19    under Rule 15(a). *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999); *accord Echols*

20    *v. Cnty. of San Bernardino*, No. 19-cv-00686-GW-KK, 2020 WL 13283475, at *4

21    (C.D. Cal. Aug. 10, 2020) (Wu, J.). However, "[a] court may deny leave to amend

22    if it determines the amendment is made in bad faith because it was sought solely for

23    delay, or to defeat the court's jurisdiction." *Echols*, 2020 WL 13283475, at *4;

24    *accord Luma Pictures, Inc. v. Betuel*, No. 16-cv-02625-GW-PLA, 2016 WL

25    11519331, at *3 (C.D. Cal. Sept. 29, 2016) (Wu, J.); *Waring v. Geodis Logistics*

26    *LLC*, No. 19-cv-04415-GW-KS, 2019 WL 3424955, at *7 (C.D. Cal. July 29, 2019)

27    (Wu, J.) (plaintiff's delay in seeking to amend was in bad faith because it "implie[d]

28    a desire to forum shop and manipulate jurisdiction"). Defendants bear the burden of

showing bad faith and undue delay. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, No. 08-cv-02068-PSGFFM, 2009 WL 650730, at *2 (C.D. Cal. Mar. 12, 2009).

Here, Defendants do not contend, nor could they, that Plaintiff's proposed amendment is made solely to delay or to defeat the Court's jurisdiction. Indeed, while Defendants repeatedly use the words "bad faith" in their brief and they fault Plaintiff for not seeking leave to amend sooner, they do not attempt to identify any supposedly improper purpose it would serve Plaintiff to wait until now to seek this amendment. Here as in *Meridian Rapid Defense Group LLC v. Delta Scientific Corp.*, there is "no obvious answer to that question." *Meridian Rapid Def. Grp. LLC v. Delta Sci. Corp.*, No. 23-cv-07222-GW-PD, 2024 WL 5411398, at *4 (C.D. Cal. Mar. 1, 2024) (Wu, J.). As in *Meridian Rapid Defense Group LLC*, the Court should hold Defendants have failed to show bad faith here. *Id.*

Defendants primarily contend Plaintiff has unduly delayed because he knew or should have known the information he now seeks to add to the pleading sooner, and he should have conducted tests on the Elite PRO Chocolate 330mL shake sooner. Opp'n 10:19-12:25. Undue delay alone, however, does not justify denial of leave to amend under Rule 15(a)'s extremely liberal standard. *Bowles*, 198 F.3d at 758.

Furthermore, Plaintiff has acted with diligence and has offered an adequate explanation for the timing of this Motion. With respect to Plaintiff's request to amend paragraph 5 of the Complaint to specify which Shakes he purchased, Plaintiff is acting in response to Defendants' (baseless) accusations that the pleading is "false." While Plaintiff does not agree that the pleading is false in any respect, he has heard Defendants' qualms and seeks to clarify the pleading to specify exactly which Products he purchased, in accordance with his testimony. Defendants should not be heard to argue amendment of the pleading is improper at the same time that

Defendants have demanded a "correction" of the pleading and have served Plaintiff with a Rule 11 motion. *See also Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639-40 & n.5 (9th Cir. 2010) (filing of motion for leave to amend within 21-day period after service of sanctions motion is sufficient to invoke Rule 11(c)(2) safe harbor). Defendants' inconsistent positions reveal their true goal: to avoid scrutiny of their labeling by any means necessary.

With respect to Plaintiff's request to amend the Complaint to add allegations related to a sixth Shake, the Elite PRO Chocolate 330 mL Shake, including allegations concerning the labeling of the Shake, testing of the Shake, and a CLRA demand letter Plaintiff sent on April 2, 2025, Plaintiff has also offered an adequate explanation of the timing of this Motion. During Plaintiff's deposition, Defendants questioned whether Plaintiff had tested the specific container he purchased and drank from. Tr. Dep. Enriques 39:7-40:15 (Reply Decl. Granade, Ex. 1). In response, Plaintiff:

1.  commissioned additional laboratory testing in March 2025;
2.  obtained results on March 26, 2025, confirming the same mislabeling pattern in the Chocolate 330mL variant;
3.  served proper CLRA notice for the newly tested product; and
4.  promptly moved for leave to amend upon expiration of the 30-day CLRA notice period and the seven-day period required under Local Rule 7-3.

Decl. Granade ¶¶ 27-32, ECF No. 26-3. This is not delay or gamesmanship—it is methodical and responsible litigation conduct. Without the testing conducted in March 2025, Plaintiff did not have a sufficient basis to allege a claim regarding the Elite PRO Chocolate 330mL variant of the Products.

The cases Defendants cite to support their bad faith/undue delay argument demonstrate there is no bad faith or undue delay here.

In *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991), the Ninth Circuit

affirmed denial of leave to amend where Texaco sought to add an entirely new theory of liability eight months after losing on summary judgment. *Id.* at 798-99. Here, Plaintiff seeks to clarify existing allegations and add a product variant with identical labeling claims, and no adverse summary judgment ruling exists.

In *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986), the Ninth Circuit affirmed denial of leave to amend where the district court "found that plaintiffs' motion to amend was brought to avoid the possibility of an adverse summary judgment ruling, and that allowing amendment would prejudice the [defendant] because of the necessity for further discovery." *Id.* at 1398-99. By contrast, Enriques' case remains in early stages with no completed discovery and no deadline for dispositive motion practice.

In *Dillingham v. Asuncion*, No. 2:18-cv-01826-PSG-AFM, 2020 WL 10895368 (N.D. Cal. Aug. 19, 2020), the petitioner sought his third amendment based on information available for five years, after one trial and two previous amendments. *Id.* at *2. Here, Plaintiff seeks his first amendment based on recently obtained testing evidence conducted specifically in response to Defendants' challenges.

In *Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*, 278 F.R.D. 505 (N.D. Cal. 2011), the court denied amendment after a two-year delay in a patent case governed by heightened local patent rules beyond Rule 15. *Id.* at 509-10. Furthermore, the court found "the motion to amend was taken in bad faith, more specifically, as a last-ditch attempt to avoid the case being dismissed in its entirety." *Id.* at 510. By contrast, Enriques moved for amendment under Rule 15's liberal standard shortly after receiving test results regarding the Elite PRO Chocolate 330mL shake and sending a related CLRA demand letter, before any substantive rulings. Enriques does not seek to use the amendment to avoid the case being dismissed.

The amendment ensures that Plaintiff's complaint precisely reflects his testing

1  and purchasing experience—exactly the kind of refinement that Rule 15 exists to
2  encourage.

3         Finally, Defendants contend Plaintiff "could have amended the claims
4  following his deposition in January 2025, which he did not do despite many requests
5  from Defendants." Opp'n 11:25-26. This is disingenuous. As discussed above,
6  Plaintiff sought to enter into a stipulation with Defendants to amend the complaint
7  on March 4, 2025, shortly after receiving Defendants' letter of February 24, 2025.
8  *See supra* § II. Defendants, however, have refused to stipulate to an amendment. *See*
9  *Echols*, 2020 WL 13283475, at *4 (granting motion to amend where "Plaintiff also
10 contends he attempted to avoid delay by seeking stipulation from the Defendant to
11 make the correction of Defendant's name before January 17, 2020, but that
12 Defendant refused to stipulate the proposed change").

13    **B.**    **Rule 16(b)(4) Does Not Apply, But Even If It Did, It Is Satisfied**

14         **1.**    **Rule 16(b)(4) Does Not Apply Because the Court Has Not Yet**
15              **Entered a Scheduling Order and Has Not Set a Deadline for**
16              **Amending the Pleadings**

17         Defendants concede, as they must, that "the Court has not set a deadline for
18 amending pleadings." Opp'n 9:9. Review of the record confirms the Court has set
19 no deadline to amend the pleadings. *See generally* Civil Minutes, ECF No. 19; Tr.
20 Scheduling Conference, Dec. 16, 2024, ECF No. 30 (attached as Exhibit 2 to the
21 concurrently filed Reply Declaration of George V. Granade). This alone is sufficient
22 to dispose of Defendants' arguments based on Rule 16(b)(4). "[T]he Court has not
23 set a deadline to amend the pleadings, therefore Plaintiffs' Motion is timely." *Vital*
24 *v. One World Co. LLC*, No. 12-cv-00314-JGB-MLG, 2013 WL 12439681, at *2
25 (C.D. Cal. Apr. 4, 2013).

26         Furthermore, Defendants' contention that the Court has entered a Rule 16
27 scheduling order is wrong. *See, e.g.*, Opp'n 8:23-27. The Court has not yet entered
28 a Rule 16 scheduling order. Rule 16(b)(3)(A) requires a scheduling order to "limit

the time to join other parties, amend the pleadings, complete discovery, and file motions." FED. R. CIV. P. 16(b)(3)(A). Here, the Court has issued no order limiting the time to join other parties or to amend the pleadings, and there are no fact or expert discovery cutoffs. The Court also has not set a deadline to file summary judgment motions (although it did set a class certification hearing and a deadline for the class certification reply brief). Defendants point to ECF No. 19 (Opp'n 8:23-27), but that document is denominated "Civil Minutes" and does not set the deadlines required under Rule 16(b)(3)(A) (although it does set the aforementioned class certification hearing date and reply deadline).

Indeed, the record shows that the case schedule has not yet been established. During the case management conference of December 16, 2024, the Court observed, "Obviously, if I certify the class, it's going to take a lot longer than if I don't." Tr. Scheduling Conference 5:17-18, ECF No. 30. The Court also stated that "the only discovery that is absolutely necessary early on in the case is the discovery that relates to the motion for class cert." *Id.* at 6:5-7. And during the conference the Court set "another scheduling conference for the 31st of July for the remainder of the case." *Id.* at 6:17-19. The Court's statements at the case management conference are inconsistent with the proposition that a case schedule as contemplated by Rule 16(b)(3)(A) has been set at this time.

Confronted with the plain absence of any deadline to amend the pleadings, Defendants resort to attempting to divine one, arguing a deadline to amend the pleadings "necessarily" must exist. Opp'n 9:9-12 ("Here, even though the Court has not set a deadline for amending pleadings, it is necessarily prior to June 26, 2025 . . . ."). Defendants cite no authority for the proposition that a deadline for amending the pleadings "necessarily" must exist even though the Court has not set such a deadline in an order. Generally, principles of due process suggest Plaintiff should have notice of when Rule 16(b)(4) will limit his ability to amend his pleading in the form of an order from the Court. Deadlines do not operate by surprise.

Defendants continue on to argue that whether a deadline to amend the pleadings exists turns on Plaintiff's conduct. According to Defendants, "Plaintiff's claim that Rule 16 does not apply cannot stand unless he intends to adhere to the schedule for the class certification hearing." Opp'n 9:20-22. This argument is nonsensical and contravenes ordinary litigation practice, and Defendants again provide no case law to support their position. A deadline to amend the pleadings exists if the Court has entered an order stating the deadline to amend the pleadings. *See* FED. R. CIV. P. 16(b)(3)(A). Here, the Court has not done so. Rule 16(b)(4) therefore does not apply. *See, e.g.*, *Vital*, 2013 WL 12439681, at *2.

## 2. Even Assuming Rule 16(b)(4) Did Apply (Which It Does Not), Good Cause Exists to Allow the Proposed Amendment Because Plaintiff Has Been Diligent

As demonstrated above, Rule 16(b)(4) does not apply. Even assuming it did, however, its good cause standard is met because Plaintiff has been diligent in seeking leave to amend.

In asserting Plaintiff has not shown good cause under Rule 16(b)(4), Defendants argue the proposed amendment does not concern "newly discovered evidence or something he could not have diligently discovered before . . . filing suit." Opp'n 10:3-5. As detailed above and in the opening Brief, however, Plaintiff has diligently sought to amend the complaint to clarify which Shakes he purchased and to add allegations related to a sixth Shake based on testing conducted in March 2025, after sending CLRA notice and waiting for the required 30-day period. *See supra* pp. 11-12.

Defendants also argue, again, that Plaintiff's deposition testimony reveals he did not purchase any of the Shakes at issue. Opp'n 10:8-11. As discussed above, Defendants' characterization of Plaintiff's accurate pleading as "false" is wrong. *See supra* pp. 6-7. Defendants know or should know that Plaintiff testified he purchased the Elite PRO Vanilla 330mL Shake, which is the one of the Shakes at issue in the

Complaint, Tr. Dep. Enriques 10:6-16, 11:8-23, 12:1-20, 19:20-20:12, 62:14-63:7, 74:16-25, ECF No. 26-6; Compl. ¶ 1; Decl. Granade ¶ 15, ECF No. 26-3; Decl. Granade, Ex. 6, at 2 of 4, ECF No. 26-9, and Defendants know or should know there is no evidence in the record to the contrary, yet Defendants have doggedly pursued the false narrative that Plaintiff did not purchase a single Shake at issue. The Court should not reward this behavior by Defendants.

Furthermore, good cause exists because Defendants' litigation practice has been burdensome. *See Stoddart v. Express Servs.*, No. 2:12-cv-01054-KJM-CKD, 2017 WL 3333994, at *3 (E.D. Cal. Aug. 4, 2017); *Orozco v. Midland Credit Mgmt. Inc.*, No. 2:12-cv-02585-KJM, 2013 WL 3941318, at *3 (E.D. Cal. July 30, 2013). Defense counsel routinely fails to respond to repeated emails from Plaintiff's counsel regarding basic issues for days or weeks on end. *See* Decl. Granade ¶¶ 19-23, ECF No. 26-3. Moreover, at the same time that Defendants have alleged the Complaint contains inaccuracies, Defendants have refused to stipulate to amend the pleading to clarify the alleged inaccuracies. *Id.* at ¶ 16.

C.   **Plaintiff Properly Named The Simply Good Foods Company as a Defendant**

Defendants also challenge the motion to amend because it continues to name SGFC as a defendant when SGFC is a separate legal entity from OWYN. However all public-facing materials of which Plaintiff's counsel are aware identify SGFC as the parent and operator of the OWYN brand. Defendants offer no declaration or documentary evidence to rebut the inference that SGFC bears responsibility for the challenged labeling.

Moreover, SGFC's website repeatedly references OWYN as one of its "brands." OWYN's former CEO Mark Olivieri now holds the title "Senior Vice President and General Manager, OWYN," at SGFC, further showing the relationship between the two entities. https://www.thesimplygoodfoodscompany.com/corporate-governance/management (click image of Mark Olivieri: "Mark Olivieri joined

Simply Good Foods as SVP/GM of OWYN, in June 2024."). Additionally, Anika Bansal, M.S., Vice President of Food Safety and Quality at SGFC, includes in her publicly claimed responsibilities overseeing the food safety and quality management at the "OWYN brand." https://foodscience.ucdavis.edu/people/anika-bansal#/. Plaintiff's counsel conducted diligent research before filing, reviewing SGFC's SEC filings, press releases, and corporate website. None clarified OWYN's post-acquisition structure—a situation that persists today. Plaintiff named SGFC to ensure all potentially responsible parties were before the Court, particularly given the possibility that SGFC continued or ratified the labeling at issue.

## IV.    **CONCLUSION**

For all of the foregoing reasons and the reasons given in the opening Brief, Enriques respectfully requests that the Court grant this Motion and allow him leave to file the First Amended Class Action Complaint attached as Exhibit 1 to the Declaration of George V. Granade in support of the opening Motion, ECF No. 26-4.

Date: June 12, 2025                                    Respectfully submitted,

**REESE LLP**

By:  _/s/ George V. Granade_
George V. Granade (SBN 316050)
ggranade@reesellp.com
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (SBN 206773)
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**THE LAW OFFICE OF ALEC PRESSLY**
Alec Pressly (State Bar No. 348054)
alec@presslylegal.com
3110 Main Street Building C, #331

Santa Monica, California 90405
Telephone: (603) 809-6601

**PRESSLY LAW GROUP PLLC**
George Pressly (*pro hac vice* to be filed)
*gpressly@presslylaw.com*
155 North Wacker Drive Suite 4250
Chicago, Illinois 60606-1750
Telephone: (603) 320-7030

**SAFIRSTEIN LAW LLC**
Peter Safirstein
*psafirstein@safirsteinlaw.com*
45 North Broad Street
Suite 100
Ridgewood, New Jersey 07450
Telephone: (917) 952-9458

*Counsel for Plaintiff Emmett Enriques
and the Proposed Class*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for Plaintiff Emmett Enriques and the proposed class, certifies that this brief contains 5,762 words, which complies with the word limit of Local Rule 11-6.1.


Date: June 12, 2025              By: _/s/ George V. Granade_
                                     George V. Granade