1  Matthew Borden, Esq. (SBN: 214323)
     borden@braunhagey.com
2  David H. Kwasniewski, Esq. (SBN: 281985)
     kwasniewski@braunhagey.com
3  H. Chelsea Tirgardoon, Esq. (SBN: 340119)
     tigardoon@braunhagey.com
4  BRAUNHAGEY & BORDEN LLP
   747 Front Street, 4th Floor
5  San Francisco, CA 94111
   Tel: (415) 599-0210
6  Fax: (415) 276-1808

7  *Attorneys for Defendants The Simply Good*
   *Foods Co. and Only What You Need, Inc.*

8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11

12

13  EMMETT ENRIQUES, individually and       Case No. 2:24-cv-08969-GW-BFM
    on behalf of all others similarly situated,
14                                            **DEFENDANTS THE SIMPLY**
                    Plaintiffs,               **GOOD FOODS COMPANY AND**
15                                            **ONLY WHAT YOU NEED, INC.'S**
             v.                               **MEMORANDUM OF LAW IN**
16                                            **SUPPORT OF PARTIAL**
    ONLY WHAT YOU NEED, INC., a               **MOTION TO DISMISS**
17  Delaware Corporation; THE SIMPLE          **PLAINTIFF'S FIRST AMENDED**
    GOOD FOODS COMPANY, a Delaware            **COMPLAINT**
18  Corporation; AND DOES 1 THROUGH
    70, INCLUSIVE,                            **Date:** September 25, 2025
19                                            **Time:** 8:30 a.m.
                    Defendants.               **Judge:** Hon. George H. Wu
20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND.................................................................3

        A.    The Underlying Dispute .............................................3

        B.    The Amended Complaint............................................4

ARGUMENT ......................................................................................4

  I.    Plaintiff Lacks Standing to Sue Over Products He Did Not Purchase .5

        A.    Plaintiff Lacks Article III Standing ...........................5

            1.    Plaintiff Must Prove Standing for Every Claim He Seeks to Assert ...............................................................6

            2.    Plaintiff Lacks Standing to Assert Claims Regarding Products He Did Not Buy and Labels He Did Not See or Rely Upon.................................................................7

            3.    Even if Other Products Were "Similar" to the Ones Plaintiff Claims Harmed Him, He Cannot Sue Over Them .........................................................................8

        B.    The Court Should Assess Standing Now...................11

        C.    The Accused Shakes Lack Substantial Similarity ...................14

        D.    Plaintiff Lacks Statutory Standing.............................15

  II.    Plaintiff Fails to State a Claim Against Simply Good Foods .............16

        A.    Plaintiff's Statutory Claims .......................................16

        B.    Plaintiff's Common Law Claims................................18

  III.    Plaintiff Lacks Standing to Seek Injunctive Reflief ...........................19

CONCLUSION...................................................................................20

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Ang v. Bimbo Bakeries USA, Inc.*,
  No. 13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ............ 14

*Ashcroft v. Iqbal*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................... 5

*Augustine v. United States*,
  704 F.2d 1074 (9th Cir. 1983) ................................................................................. 5

*B.C. v. Plumas Unified Sch. Dist.*,
  192 F.3d 1260 (9th Cir. 1999) ................................................................................. 6

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 5

*Bryant v. Am. Seafoods Co., LLC*,
  2007 WL 9728641 (D. Wash. Sept. 19, 2007) ...................................................... 12

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................................................. 6

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ................................................................................. 19

*Easter v. Am. W. Fin.*,
  381 F.3d 948 (9th Cir. 2004) ................................................................................. 12

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................................... 5

*Emery v. Visa Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) ........................................................................... 16, 17

*Figy v. Frito-Lay N. Am., Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) ................................................................... 14

*Fisher v. Allis–Chalmers Corp. Prod. Liab. Trust*,
  95 Cal. App. 4th 1182 (2002) ............................................................................... 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ............................................................................................... 12

*Goldstein v. Gen. Motors LLC*,
  445 F. Supp. 3d 1000 (S.D. Cal. 2020) ................................................................. 13

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
  975 F.3d 788 (9th Cir. 2020) ................................................................................... 6

*Hall v. Marriott Int'l, Inc.*,
   344 F.R.D. 247 (S.D. Cal. 2023) ................................................................ 17
*In re Capacitors Antitrust Litigation*,
   154 F. Supp. 3d 918 (N.D. Cal. 2015) ........................................ 6, 7, 12
*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) ........................................................ 7
*In re Mosqueda*,
   No. 09-61446-SLJ, 2011 WL 867340 (Bankr. N.D. Cal. Mar. 8, 2011) ............... 18
*Johns v. Bayer Corp.*,
   No. 09CV1935 DMSJMA, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ............... 15
*Jones v. Nutiva, Inc.*,
   No. 16-cv-00711-HSG, 2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) ............... 14
*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................ 17, 18
*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ............................................................ 19
*Lewis v. Casey*,
   518 U.S. 343 (1996) ........................................................................ 9
*Lorentzen v. Kroger Co.*,
   532 F. Supp. 3d 901 (C.D. Cal. 2021) ........................................ 1, 8, 9, 15
*McCracken v. KSF Acquisition Corp.*,
   No. 5:22-cv-01666-SB-SHK, 2022 WL 18932849 (C.D. Cal. Dec. 15, 2022) ..... 11
*Melendres v. Arpaio*
   784 F.3d 1254 (9th Cir. 2015) ........................................................ 13, 14
*Murphy v. Olly Pub. Benefit Corp.*,
   651 F. Supp. 3d 1111 (N.D. Cal. 2023) ........................................ 14, 15
*Ochoa v. Zeroo Gravity Games LLC*,
   No. CV 22-5896-GW-ASX, 2023 WL 4291974 (C.D. Cal. Feb. 1, 2023) .... 1, 5, 10
*Oh v. Fresh Bellies, Inc.*,
   No. CV 24-5417 PSG (JPRX), 2024 WL 4500727 (C.D. Cal. Oct. 15, 2024) ...... 10
*Osanitsch v. Marconi PLC*, No. C,
   05-03988 CRB, 2009 WL 10695681 (N.D. Cal. Mar. 20, 2009) ........................ 18
*People v. Toomey*,
   157 Cal. App. 3d 1 (Ct. App. 1984) ........................................................ 16
*Perfect 10 Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ........................................................ 16, 17
*Pimentel v. Dreyfus*,
   670 F.3d 1096 (9th Cir. 2012) ................................................................ 6
*Prudencio v. Midway Importing, Inc.*,
   831 F. App'x 808 (9th Cir. 2020) .......................................................... 16
*Reyes v. Just Born, Inc.*,
   729 F. Supp. 3d 971 (C.D. Cal. 2024) ...................................................... 19

*Ringler v. J.M. Smucker Co.*,
No. 2:25-CV-01138-AH-(KESX), 2025 WL 1674390 (C.D. Cal. May 13, 2025) 10

*Roberts v. Corrothers*,
812 F.2d 1173 (9th Cir. 1987) .................................................................. 5

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) ................................................................. 18

*Sihler v. Fulfillment Lab, Inc*,
No. 3:20-CV-01528-H-MSB, 2020 WL 7226436 (S.D. Cal. Dec. 8, 2020).......... 13

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998).................................................................................. 6

*Stemmelin v. Matterport, Inc.*,
No. C 20-04168 WHA, 2020 WL 6544456 (N.D. Cal. Nov. 7, 2020) ................... 6

*Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.*,
594 F.2d 730 (9th Cir. 1979) .................................................................. 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..........................................................................passim

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)............................................................................... 6

*United States v. Bestfoods*,
524 U.S. 51 (1998).............................................................................. 18

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .............................................................. 18

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010)................................................. 18

*Zakikhan v. Hyundai Motor Company*
8:20-cv-01584-SB (JDEX), 2021 WL 4805454 (C.D. Cal. June 28, 2021) .......... 11

## STATUTES

Cal. Bus. & Prof. Code §§ 17204, 17535 ................................................ 15

Cal. Civ. Code § 1780(a) ........................................................................ 15

## OTHER AUTHORITIES

Newberg on Class Actions .................................................................... 13

Defendants Only What You Need, Inc. ("OWYN") and The Simply Good Foods Company respectfully submit this memorandum in support of their Partial Motion to Dismiss the First Amended Complaint.

## **INTRODUCTION**

OWYN makes a variety of protein shakes at different facilities with different formulations. Plaintiff claims that he bought two types of shakes that were out of spec. Yet he seeks to assert false advertising claims against OWYN over four different products he never bought, based on labels he never saw or relied on. He lacks Article III and statutory standing to assert such claims. His claims as to the four products he never bought should be dismissed under Rule 12(b)(1).

An inquisitive person might ask: Why would anyone sue over products they didn't buy? The answer to that question is that a real plaintiff wouldn't. The only person who would bring such a suit is a lawyer trying to maximize their leverage. Article III, and the limited jurisdiction of the federal courts do not countenance such litigation.

Plaintiff has little to do with this case. He is friend of his lawyer. (Declaration of Matthew Borden ("Borden Decl."), Ex. 1, Tr. 69:20-72:1.) He originally alleged that he bought the four products at issue after reading and relying on the labels. (Dkt. 1-1 ¶¶ 1, 5-6.) But when he was deposed, he admitted that all these representations were not truthful. (Borden Decl., Ex. 1, Tr. 62:14-63:1, 74:9-25.) He also explained that he had not bothered to read or fact-check his own pleading before his lawyers filed it. (*Id*. at 46:6-9.) The only reason the parties are now briefing this issue is that Plaintiff is trying to paper over his misconduct by claiming that he can sue over these products anyway. Plaintiff's claims as to the products he did not buy should be dismissed for several reasons.

***First,*** Plaintiff does not have Article III or statutory standing to assert claims regarding products he never purchased. *Ochoa v. Zeroo Gravity Games LLC*, No. CV 22-5896-GW-ASX, 2023 WL 4291974, at *8 (C.D. Cal. Feb. 1, 2023); *Lorentzen v.*

1    *Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021). The facts set forth in

2    Plaintiff's deposition and the declaration of Brad Moose (Dkt. 28-1) reveal that

3    Plaintiff lacks standing. As the party opposing a factual Rule 12(b)(1) motion,

4    Plaintiff cannot meet his burden of proving that he can sue over products he never

5    bought. Although Plaintiff has urged this Court to delay addressing this issue so that

6    he can create more unnecessary burden and expense over claims he cannot bring,

7    Article III standing is a threshold inquiry. Here the facts show that Plaintiff has no

8    standing as to certain claims. Pursuant to the Court's obligation to assess jurisdiction

9    at the earliest possible juncture, these issues should be adjudicated now.

10          Plaintiff has also argued that he has standing because his claims over products

11   he never bought are substantially similar to his claims over the products he has

12   bought. According to Plaintiff, he should be permitted to proceed to class

13   certification so long as he can demonstrate standing as to only some of his claims. As

14   noted above, Article III does not permit a plaintiff to defer his burden to establish

15   standing as to each claim when the relevant facts show that he lacks injury in fact.

16          ***Second,*** even if the Court were to apply the substantial similarity test and

17   import the standing of putative class members to Plaintiff, the products here are not

18   substantially similar. Central to Plaintiff's claims is that the values of certain

19   macronutrients allegedly mismatch the values represented on each accused shake's

20   nutrition label. As Plaintiff's own laboratory testing shows, the composition of each

21   accused shake is different.

22          ***Third,*** Plaintiff's claims against Simply Good Foods should be dismissed.

23   Simply Good Foods acquired OWYN in June 2024, after Plaintiff alleges that he

24   incurred any injury. Under California law, Plaintiff cannot hold Simply Good Foods

25   liable for conduct that took place before any relationship between OWYN and

26   Simply Good Foods arose.

27          ***Fourth,*** Plaintiff lacks standing to assert any claim for injunctive relief.

28   Plaintiff claims only that he suffered economic injury and alleges no facts showing

that he holds any intent to purchase any accused shake in the future. Without any intent to purchase the accused shakes, Plaintiff cannot show that there is any real threat that he will sustain any alleged economic injury.

For these reasons, the Court should dismiss Plaintiff's claims to the extent they challenge any product he did not purchase; dismiss Plaintiff's claims against Simply Good Foods; and dismiss Plaintiff's claims for injunctive relief, with prejudice.

## **FACTUAL BACKGROUND**

The Court is familiar with facts and allegations in this case and in this motion (*see, e.g.*, Dkt. 33), which are briefly summarized below.

### A.    The Underlying Dispute

Defendant OWYN makes ready-to-drink protein shakes. The business was founded by Kathryn Moos and Jeff Mroz, spouses and athletes who both suffer from serious food allergies, to make healthy products that are free of the top nine allergens. OWYN's products feature a proprietary pea protein blend combined with other natural flavors, vitamins, and minerals. OWYN sells multiple types of ready-to-drink protein shakes, including the Pro Elite High Protein Shakes. These shakes are sold in either 330mL Tetra Pak paper-based packaging or 355mL plastic bottles. Simply Good Foods acquired OWYN in June 2024. (FAC ¶ 10.)

Plaintiff is a friend of his lawyer, who recruited him to sue OWYN. (Borden Decl., Ex. 1, Tr. 69:20-72:1.) Plaintiff's initial complaint claimed that he read and relied on the labels of five different shakes made by OWYN and that he was misled by each of them because the shakes did not contain as much protein as advertised. (Compl. ¶¶ 5-7, 94.)

Discovery has been underway since December 2024. (Dkt. 33 at 1.) In January 2025, OWYN took Plaintiff's deposition. At the deposition, Plaintiff admitted that he had not purchased at least four of the five products whose labels he claimed to have read and relied on. (*Id.*)

Five months later, Plaintiff sought leave to amend his Complaint to add another product that he claimed to have purchased. The Court "agree[d] with Defendants that Plaintiff has unduly delayed in seeking the proposed amendments." (*Id*. at 3.) The Court explained: "The changes that Plaintiff seeks to make to the Complaint reflect information that he knew at the time of filing in September 2024. He knew which products he had purchased and which he did not; diligence on the part of his counsel would have readily revealed this information." (*Id*.) The Court further found: "That Plaintiff conceded he did not read the Complaint before it was filed underlines this lack of diligence." (*Id*.)

In response, Plaintiff claimed that none of his inaccurate representations to the Court mattered because by claiming that this case is a "class action," he was allowed to sue over products that he did not buy. (Dkt. 32, at 2.) OWYN opposed Plaintiff's motion on the grounds that Plaintiff could not sue over products he now admitted that he never bought and should be held to account for making OWYN do hundreds of thousands of dollars in needless work. Ultimately, the Court granted Plaintiff leave to amend pursuant to the liberal standard under the Federal Rules and held that it would adjudicate whether Plaintiff may assert claims as to the four products he did not purchase on a noticed motion. (Dkt. 45, at 3-5.)

**B.    The Amended Complaint**

Plaintiff filed the Amended Complaint on August 5, 2024. It adds a new product (Elite PRO Plant Powered Drink, Vanilla, 330mL). (FAC ¶ 5.) It also still seeks to bring claims regarding the four varieties of shakes that he admitted that he did not purchase: (1) Elite PRO Chocolate, 355mL; (2) Elite PRO Vanilla, 355mL; (3) Elite PRO Plant Powered Drink, No Nut Butter Cup, 330mL; and (4) Elite PRO Plant Powered Drink, Sea Salted Caramel, 330mL. (FAC ¶ 1.)

## ARGUMENT

Under Rule 12(b)(1), dismissal is "appropriate where either the complaint or evidence extrinsic to the complaint demonstrates that the court lacks subject-matter

jurisdiction over the action." *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291974, at *1 (C.D. Cal. Feb. 1, 2023). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *Id.* (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)). "In evaluating a factual attack, if the jurisdictional issue is separable from the merits of a case, a district court may 'hear evidence regarding jurisdiction and . . . rule on that issue prior to trial, resolving factual disputes where necessary.'" *Id.* (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "In those cases, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Thornhill Publ'g Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).

A complaint should be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (*Twombly/Iqbal* standard recognizes "the need to prevent 'a plaintiff with a largely groundless claim' from 'tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value'" (cleaned up)).

# I. PLAINTIFF LACKS STANDING TO SUE OVER PRODUCTS HE DID NOT PURCHASE

Plaintiff's claims related to the four products he did not buy should be dismissed under Rule 12(b)(1). Plaintiff lacks constitutional and statutory standing to challenge those products, and any such claim arising from those products should be dismissed.

## A. Plaintiff Lacks Article III Standing

"Article III standing is a threshold issue, and the plaintiff bears the burden of demonstrating her standing for each claim." *Ochoa*, 2023 WL 4291974, at *2

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

(citation omitted) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Notably, "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* at 431 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)).

### 1. Plaintiff Must Prove Standing for Every Claim He Seeks to Assert

A "plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "Just because a suit 'derive[s] from a common nucleus of operative fact' does not mean 'federal jurisdiction extends to all claims sufficiently related to a claim within Article III to be part of the same case.'" *Stemmelin v. Matterport, Inc*., No. C 20-04168 WHA, 2020 WL 6544456 *3 (N.D. Cal. Nov. 7, 2020) (quoting *Cuno*, 547 U.S. at 351-52) (alteration in original).

Thus, where a representative plaintiff lacks standing to assert certain claims, those claims must be dismissed. *See Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) ("Because '[a] class of plaintiffs does not have standing to sue if the named plaintiff does not have standing,' [plaintiff's] standing determines whether he could seek injunctive relief on behalf of any class in this case." (citation omitted) (quoting *B.C. v. Plumas Unified Sch. Dist*., 192 F.3d 1260, 1264 (9th Cir. 1999))); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[I]f . . . the sole named plaintiff[] lacks standing, the class lacks standing as well."). This rule applies even if the named plaintiff lacks standing as to some, but not all claims. Judge Donato's decision in *In re Capacitors Antitrust Litigation*, 154 F.

Supp. 3d 918 (N.D. Cal. 2015), is illustrative. There, a putative class brought antitrust and various state law claims related to alleged price fixing of capacitors. *Id.* at 921. The named plaintiffs, however, lacked Article III standing as to some of the claims. *Id.* at 928. Judge Donato dismissed those claims, rejecting plaintiffs' request to defer the issue until class certification and rejecting their insistence that the named plaintiffs had established standing "as a whole" because they had standing for some but not all claims. *Id.* The court explained: "[S]tanding must be measured claim by claim" and "it is a named plaintiff who must possess the requisite standing; it is not sufficient that a putative class member may have standing to press one of the claims." *Id.* at 924-25.

### 2. Plaintiff Lacks Standing to Assert Claims Regarding Products He Did Not Buy and Labels He Did Not See or Rely Upon

Here, Plaintiff lacks standing to assert any claim relating to any product that he did not buy because he suffered no injury related to those products. *See, e.g.*, *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1010-20 (N.D. Cal. 2013) (dismissing false advertising claims for lack of standing because "none of these declarations actually states that Plaintiffs read or relied on any particular Apple misrepresentation regarding privacy"). The FAC now claims that he purchased only the Elite PRO Plant Powered Drink, Vanilla, 330mL, and the Elite PRO Plant Powered Drink, Chocolate, 330mL. (FAC ¶ 5.) The FAC contains no allegation that Plaintiff purchased any of the other four shakes he is trying to sue OWYN over, and Plaintiff's deposition testimony confirms that he did not buy them. (Tr. at 74:9-22; 74:23-25; 62:14-63:1.) Plaintiff's only alleged injury is economic loss. (FAC ¶ 27.) It goes without saying that Plaintiff cannot claim economic loss from products he never purchased. Plaintiff's own deposition testimony and allegations in the FAC demonstrate that Plaintiff suffered no concrete injury-in-fact from the products he never purchased. *See TransUnion*, 594 U.S. at 417 ("To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they

suffered a concrete harm."). Nor did products whose labels he never saw, much less read and relied on, cause any injury to Plaintiff. Nor is there any relief that the Court could issue as to those products that would redress any harm to Plaintiff. For each of those reasons (injury, causation, and redressability), Plaintiff's claims as to the products he did not buy should be dismissed for lack of Article III standing.

### 3. Even if Other Products Were "Similar" to the Ones Plaintiff Claims Harmed Him, He Cannot Sue Over Them

In his prior briefing, Plaintiff argued that he has standing to assert claims on behalf of putative class members who bought the four products he did not buy because they are substantially similar to the ones he now claims to have purchased. But the substantial similarity test cannot override the constitutional requirements of Article III standing.

Judge Blumenfeld addressed this issue in *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901 (C.D. Cal. 2021). In that case, plaintiff was suing over ground coffee. She claimed that the label inaccurately stated the number of servings per package. *Id*. at 905-06. However, she only bought one of the Defendant's coffee products—the "Medium Roast Supreme Blend Ground Coffee 29 oz." *Id*. at 906. The Court held that plaintiff "does not have standing to bring claims related to products whose advertising caused her no injury—even if those products are substantially similar to the Supreme Blend." *Id*. at 907. The court rejected plaintiff's request to rely on the substantial similarity test as a substitute for standing to bring claims for products she never purchased. *Id.* at 908-09. The court aptly noted: "The similarity of a product, by itself, says nothing about whether a party suffered an injury traceable to the allegedly wrongful conduct of another." *Id.* at 909. The court further explained: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id*.

1  (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)) (ellipses in original).

2  Accordingly, "[i]mporting a 'substantial similarity' test into the principle of standing

3  overlooks this point and invites an analysis that is both difficult to apply and

4  unrelated to its objective." *Id.* (quoting *Lewis*, 518 U.S. at 358 n.6). In light of those

5  principles, Judge Blumenfeld held that the plaintiff lacked standing to bring any

6  claim for products she did not purchase. *Id.*

7      A few months after *Lorentzen*, the Supreme Court issued its decision in

8  *TransUnion*, which reversed the Ninth Circuit's misapplication of the standing

9  requirements, in the context of a class action. 594 U.S. 413. The Court confirmed

10  that Article III requires each class member, whether or not a named plaintiff, to have

11  suffered a concrete injury in fact to establish standing. *TransUnion LLC v.*

12  *Ramirez*, 594 U.S. 413, 422 (2021). In other words, "[n]o concrete harm, no

13  standing," and "the mere risk of future harm, without more," fails to "demonstrate

14  Article III standing in a suit for damages." *Id.* at 417, 437.

15      Although the Court in *TransUnion* did not expressly address the substantial

16  similarity test, that test is fundamentally inconsistent with *TransUnion*'s teaching.

17  *TransUnion* emphasized that the irreducible requirements of injury, causation, and

18  redressability ensure "that federal courts exercise their proper function in a limited

19  and separated government." *Id.* at 423 (quotation omitted). It explained that "[o]nly

20  those plaintiffs who have been *concretely harmed* by a defendant's statutory

21  violation may sue that private defendant over that violation in federal court," *id*.

22  at 427, and that "Article III grants federal courts the power to redress harms that

23  defendants cause plaintiffs, not a freewheeling power to hold defendants accountable

24  for legal infractions." *Id*. (quotation omitted).

25      To illustrate the limits of Article III, the Court gave an example of a company

26  in Maine suing a nearby factory for polluting its land and a company in Hawaii

27  attempting to sue over the same pollution, which had no effect on it. *Id*. It explained

28  that the first company would have standing and that the other would not, even if

Congress tried to pass a law authorizing such suits. *Id*. In the context of this case, Plaintiff's attempt to sue over products that he did not buy is no different than the company in Hawaii seeking to sue over pollution that caused it no harm. No rule or law, regardless of its source, would ever permit this. "An uninjured plaintiff who sues in those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's compliance with regulatory law (and, of course, to obtain some money via the statutory damages). Those are not grounds for Article III standing." *Id*. at 427-28 (quotations omitted).

Since *TransUnion* and *Lorentzen*, this Court and many others have correctly declined to allow plaintiffs to use the substantial similarity test to import the standing of putative class members for products the named plaintiffs never purchased. In *Ochoa v. Zeroo Gravity Games LLC*, for example, this Court found *Lorentzen* persuasive and noted that "the 'substantial similarity' analysis is in direct tension with the notion of standing." 2023 WL 4291974, at *8. This Court explained:

> The substantial similarity of a product says nothing about whether a party suffered an injury traceable to the allegedly wrongful conduct of another. A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely.

*Id.* This Court accordingly dismissed the plaintiff's claims to the extent they arose from products she never purchased. *Id.*

Others have followed suit. *See also Oh v. Fresh Bellies, Inc*., No. CV 24-5417 PSG (JPRX), 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024) ("[I]n light of the analysis in *Lorentzen*, the Court is persuaded that Plaintiff does not have standing to bring claims for products she did not purchase." (citation omitted)); *Ringler v. J.M. Smucker Co*., No. 2:25-CV-01138-AH-(KESX), --- F. Supp. 3d ---, 2025 WL 1674390, at *10 (C.D. Cal. May 13, 2025) ("The Court finds that "the 'substantial similarity' analysis appears to be inconsistent with the basic concept of

standing. The standing requirement extends to each claim and each remedy sought.'" (quoting *Lorentzen*, 534 F. Supp. 3d at 908-09)); *McCracken v. KSF Acquisition Corp.*, No. 5:22-cv-01666-SB-SHK, 2022 WL 18932849, at *2 (C.D. Cal. Dec. 15, 2022) ("The core jurisdictional problem is . . . that Plaintiff has not been injured by false advertising on products she did not purchase. Whether those unpurchased products contained identical, similar, or dissimilar representations does not alter the fact that they caused Plaintiff no harm."); *Zakikhan v. Hyundai Motor Co*., No.: 8:20-cv-01584-SB (JDEX), 2021 WL 4805454, at *5 (C.D. Cal. June 28, 2021) (relying on *TransUnion* and *Lorentzen* and concluding: "[T]his Court finds that the purchase of one product does not confer standing to assert claims for alleged injury sustained by others who bought a 'substantially similar' product.").

Beyond its incompatibility with Article III standing, the substantial similarity test contributes to the proliferation of cases like this one, where the "client" has been recruited by their lawyer instead of injured, and does not even bother to read the pleading or vet the truthfulness of the representations to the Court. As the Court pointed out in *TransUnion*, the limited role of the federal judiciary serves to settle real cases and real controversies by individuals who have in fact been injured by the harm alleged. A regime that allows "unharmed plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority" because such actions are "not within the purview of private plaintiffs (and their attorneys). Private plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law." *Id*. at 429.

## B.    The Court Should Assess Standing Now

In prior arguments, Plaintiff has asserted that the Court should defer ruling on whether he has standing to sue for products he never purchased until class certification. This argument—which is really just a redux of the substantial similarity test—should be rejected because the constitutional requirements of Article III

standing cannot be ignored. Article III requires that each plaintiff must establish standing as to each claim and each form of requested relief at the outset of his or her case. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification."); *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 923 (N.D. Cal. 2015) ("[T]he Court declines to defer resolution of this threshold issue until a later time. The Ninth Circuit has made clear that the district courts can—and usually should—resolve the issue of Article III standing at the outset of a case."); *Bryant v. Am. Seafoods Co., LLC*, 2007 WL 9728641 *2 (D. Wash. Sept. 19, 2007) ("The Supreme Court has clearly stated that courts ultimately have an 'obligation to assure [themselves] that [plaintiffs have] Article III standing at the outset of the litigation.'") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)) (brackets in original). Plaintiff will never have standing to assert claims over products he did not buy, regardless of what happens at the class certification stage. *TransUnion*, 594 U.S. at 431 ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.").

Here, the allegations in the FAC and Plaintiff's own testimony demonstrate that Plaintiff never purchased four of the six accused shakes. Plaintiff has no basis to establish standing as to any claim about products he admittedly never bought. Plaintiff never incurred any economic injury as to those Shakes and thus, as *TransUnion* dictates—"[n]o concrete harm, no standing." 594 U.S. at 442. There is no legal or practical reason to proceed with claims that Plaintiff has no standing to pursue. "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion*, 594 U.S. at 431 (quoting *Lujan*, 504 U.S. at 561). Here, OWYN is bringing an evidentiary motion under Rule 12(b)(1), after discovery. Plaintiff has already admitted that he

1  did not buy, and therefore would never be entitled to any relief for, four of the

2  accused shakes.

3       Moreover, Plaintiff's wait-and-see approach creates the threat of significant

4  unnecessary discovery burdens on defendants facing putative class action lawsuits—

5  as this case has already demonstrated. Under Plaintiff's theory, a named plaintiff

6  could bring totally different claims against the same defendant. Regardless of the

7  named plaintiff's ability to show standing for all claims, so long as some putative

8  class members had standing to bring those claims, the defendant would be forced to

9  proceed through discovery and class certification before it could seek to have those

10  dissimilar claims dismissed. This approach is not fair, nor is it permitted by

11  Article III.

12       Contrary to the assertions in Plaintiff's prior briefing, *Melendres v. Arpaio*

13  does not stand for the proposition that a court may defer evaluation of standing to the

14  class certification stage. 784 F.3d 1254 (9th Cir. 2015). Rather, *Melendres* held that

15  "once the named plaintiff demonstrates her individual standing to bring a claim, the

16  standing inquiry is concluded, and the court proceeds to consider whether the

17  Rule 23(a) prerequisites for class certification have been met." *Id.* at 1262 (quoting

18  NEWBERG ON CLASS ACTIONS § 2:6). But "the proper procedure when the class

19  plaintiff lacks individual standing is to dismiss the complaint, not to deny class

20  certification." NEWBERG ON CLASS ACTIONS § 2:6. As numerous district courts have

21  recognized, *Melendres* "requires that a named plaintiff first have Article III standing

22  for the relevant claims." *Sihler v. Fulfillment Lab, Inc*, No. 3:20-CV-01528-H-MSB,

23  2020 WL 7226436, at *16 (S.D. Cal. Dec. 8, 2020); *see also Goldstein v. Gen.*

24  *Motors LLC*, 445 F. Supp. 3d 1000, 1021 (S.D. Cal. 2020) (holding that *Melendres*

25  does not "stand for the proposition that this Court must delay its consideration of

26  standing"). Here, Plaintiff fails to demonstrate his individual sanding to bring a claim

27

28

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

arising from products he never purchased. Without any basis for standing, those claims must be dismissed. *See TransUnion*, 594 U.S. at 417.[1]

## C.    The Accused Shakes Lack Substantial Similarity

Even if the substantial similarity test could somehow create a basis for Plaintiff to have standing to assert claims over products he never bought, Plaintiff could not establish substantial similarity between the products he purchased and the ones he did not. Under the substantial racial similarity test, a court looks to "whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014). Additionally, "where the actual composition . . . of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition." *Ang v. Bimbo Bakeries USA, Inc*., No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014); *see also Murphy v. Olly Pub. Benefit Corp*., 651 F. Supp. 3d 1111, 1131 (N.D. Cal. 2023) (plaintiff must show "the resolution of the asserted claims will be identical between the purchased and unpurchased products"); *Jones v. Nutiva, Inc*., No. 16-cv-00711-HSG, 2016 WL 5210935, at *4-5 (N.D. Cal. Sept. 22, 2016) (same).

Here, Plaintiff cannot meet this standard based on his own pleadings. Plaintiff claims that OWYN misrepresented the quantities of carbohydrates, dietary fiber, sugar, and protein in the accused shakes. The quantities of these nutrients are far from "identical" across products. *See Ang*, 2014 WL 1024182, at *8. Plaintiff's own

---

[1] *Melendres* had nothing to do with a plaintiff suing over products they did not buy. It was a case against a sheriff in Arizona who had caused diverse injuries to Latino community members through racial profiling in "saturation patrols" and through his general policies. 784 F.3d at 1258. The Court held that victims of the sheriff's racial profiling policy had standing to assert § 1983 Fourth Amendment claims on behalf of a class of racial profiling victims, regardless of the context in which the profiling arose. *Id.* at 1264.

testing shows variation among every product with respect to every challenged claim. (FAC, ¶¶ 54, 59, 71, 82.) This is unsurprising, because OWYN's shakes are manufactured at different facilities across the country and each of OWYN's shakes posed unique formulation challenges. (*See* Dkt. 28-1 ¶¶ 5, 8.)  Because the core of Plaintiff's claim is to challenge the carbohydrate, dietary fiber, sugar, and protein quantities on the accused shakes' labels, and those quantities allegedly vary among the shakes Plaintiff purchased and those he did not, there is no substantial similarity.

Plaintiff also cannot establish substantial similarity by pointing to similarities across the labels and ingredients. The visual consistency across packaging and the fact that the products all contain water, pea protein, organic pumpkin seed protein, and other ingredients are irrelevant because they have nothing to do with Plaintiff's claims. *Murphy*, 651 F. Supp. 3d at 1131 (presence of the same ingredient does not establish substantial similarity where "the issue is not the presence of a particular ingredient, it is the quantity of that ingredient.").

Thus, even under the substantial similarity test, Plaintiff fails to plead facts establishing standing for any product that he did not purchase.

## D.    Plaintiff Lacks Statutory Standing

Plaintiff also lacks statutory standing to assert claims under the UCL, FAL, and CLRA for the Unpurchased Shakes. To establish statutory standing under these statutes, a plaintiff must allege that he suffered an "injury in fact" and "has lost money or property" as a result of defendant's alleged conduct. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a). Under these statutes, a plaintiff "cannot expand the scope of his claims to include a product he did not purchase." *Johns v. Bayer Corp.*, No. 09CV1935 DMSJMA, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010); *see also Lorentzen*, 532 F. Supp. 3d at 909 n.4. Accordingly, for this additional reason, the Court should dismiss Plaintiff's UCL, FAL, and CLRA claims related to the four products he did not buy.

## II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST SIMPLY GOOD FOODS

All claims against Defendant Simply Good Foods should also be dismissed. Plaintiff fails to allege facts showing any connection between Simply Good Foods and OWYN at the time of Plaintiff's injury. To the contrary, Plaintiff alleges that Simply Good Foods acquired OWYN in June 2024, which is after Plaintiff sustained his alleged injury. (FAC ¶ 10.)

The Court should also dismiss all claims against Simply Good Foods. Simply Good Foods acquired OWYN in June 2024. (FAC ¶ 10.) Plaintiff, however, alleges that he purchased the two shakes at some point before May 2024. (FAC ¶ 5 ("In 2024, Plaintiff purchased the [shakes]."); FAC, Ex. O, at 3 (demand letter dated May 23, 2024, stating that Plaintiff had "purchased the Shakes"); *see also* Tr. 11:17-12:20 (stating that Plaintiff purchased two of the accused shakes a few times between February and March 2024).) Thus, the FAC demonstrates that Simply Good Foods had no relationship with OWYN during the relevant period and is therefore not liable.

### A.     Plaintiff's Statutory Claims

A claim under California's consumer protection statutes may not be premised on vicarious liability. Rather, a "defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500." *Perfect 10 Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002)). This rule applies to the UCL, CLRA, and FAL. *See People v. Toomey*, 157 Cal. App. 3d 1, 14 (Ct. App. 1984) ("The concept of vicarious liability has no application to actions brought under [UCL].")); *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 811 (9th Cir. 2020) ("To permit a CLRA claim based on a vicarious liability theory would upend our decision in *Perfect 10* because, as the appellants themselves argue, a CLRA violation provides

the requisite predicate for a UCL claim."); *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 267–68 (S.D. Cal. 2023) ("Under the CLRA, liability cannot be predicated on vicarious liability unless there is evidence of 'personal participation in the unlawful practices and unbridled control" over those deceptive practices.'"); *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (the UCL and FAL require a defendant's "personal participation" and "unbridled control" over the wrongful conduct).

Here, Plaintiff has evidently named Simply Good Foods as a defendant purely on a theory of vicarious liability. The FAC contains no allegations showing that Simply Good Foods exhibited any "personal participation" or "unbridled control" over any of the alleged wrongful conduct. *See Perfect 10*, 494 F.3d at 808. In fact, Plaintiff cannot do so because it is undisputed that Simply Good Foods acquired OWYN in June 2024, after Plaintiff sustained his alleged injury. (*See* FAC ¶ 10; FAC, Ex. O.) Plaintiff purchased the two shakes at some point before May 2024. (*Id.*) At that time, Simply Good Foods had no relationship with OWYN. It did not oversee or have any part in formulating the accused shakes, nor did it have any part in creating the labels for the accused shakes. Unsurprisingly, the FAC contains next to no allegations about Simply Good Foods and lacks any factual allegation regarding its personal involvement with the accused labels, much less its "unbridled control" over OWYN during the events in question. *See Perfect 10*, 494 F.3d at 808. Under clear California law, Plaintiff's statutory claims against Simply Good Foods must be dismissed. *See id.*

Plaintiffs' claims against Simply Good Foods should also be dismissed because they fail to meet the heightened pleading standard required to state a claim under the UCL, CLRA, or FAL. To prevent plaintiffs from harassing defendants or naming parties for other ulterior purposes, the Ninth Circuit requires that UCL, CLRA, and FAL claims be pleaded with particularity under Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled

that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010) (heightened pleading standard under Rule 9(b) applies to FAL claims). Under Rule 9(b), claims based in fraud must allege "'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Here, there can be no non-frivolous argument that Plaintiff's statutory claims against Simply Good Foods meet that standard, as they do not identify any individual at Simply Good Foods who made any alleged false statement, when such alleged false statement was made, what the alleged false statement was, what product(s) any supposed false statement relates to, or any of the other standard information required by Rule 9(b). These claims have no possibility of stating a claim under Rule 9(b) and should be dismissed. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (dismissing claims under the UCL and CLRA for failure to adhere to Rule 9(b)).

## B. Plaintiff's Common Law Claims

Nor can Simply Good Foods be held liable for Plaintiff's common law claims. "A corporation which purchases or otherwise acquires the assets of another corporation generally is not liable for torts committed prior to the acquisition." *In re Mosqueda*, No. 09-61446-SLJ, 2011 WL 867340, at *3 (Bankr. N.D. Cal. Mar. 8, 2011) (quoting *Fisher v. Allis–Chalmers Corp. Prod. Liab. Trust*, 95 Cal. App. 4th 1182, 1188 (2002)); *see also Osanitsch v. Marconi PLC*, No. C 05-03988 CRB, 2009 WL 10695681, at *7 (N.D. Cal. Mar. 20, 2009) ("Because Ericsson is a successor company that purchased Marconi PLC's assets, it should not be held liable for Marconi PLC's actions prior to the acquisition."). This rule is a fundamental principle of corporate law. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and

legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries.")

Simply Good Foods and OWYN are separate corporate entities. Without any allegations providing any basis for successor liability, the FAC fails to state a claim for negligent misrepresentation or unjust enrichment against Simply Good Foods. Those claims should be dismissed.

## III.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE REFLIEF

Plaintiff has not, and cannot, demonstrate a threat of future injury, and thus, his request for injunctive relief fails for lack of standing. (*See* FAC ¶ 149.) "Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). To establish standing to seek injunctive relief, a plaintiff must demonstrate "a real and immediate threat of repeated injury" and that "the claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Id.* Further, the "threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Reyes v. Just Born, Inc.*, 729 F. Supp. 3d 971, 975 (C.D. Cal. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)). "A profession of an intent is simply not enough to satisfy Article III. A 'some day' intention—without any description of concrete plans, or indeed even any specification of *when* the some day will be—does not support a finding of the actual or imminent injury that" Article III requires. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (cleaned up) (quoting *Lujan*, 504 U.S. at 564) (concluding that plaintiff's statement that she would "consider buying" a product in the future "does not satisfy this standard").

Here, the FAC contains no allegation that Plaintiff holds any intent to purchase any accused shake in the future. Accordingly, Plaintiff lacks standing to seek injunctive relief due to his failure to demonstrate a threat of future injury.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss under Rule 12(b)(1) and 12(b)(6).

Dated: August 18, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:___*/s/ Matthew Borden*_____

Matthew Borden, Esq.

*Attorneys for Defendants The Simply Good Foods Co. and Only What You Need, Inc.*

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

## <u>CERTIFICATE OF COMPLIANCE WITH THE WORD COUNT</u>

The undersigned, counsel of record for the Defendants, certifies that this brief contains 6,621 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 18, 2025                                          */s/ Matthew Borden*
                                                                          Matthew Borden, Esq.