Matthew Borden, Esq. (SBN: 214323)
borden@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
kwasniewski@braunhagey.com
H. Chelsea Tirgardoon, Esq. (SBN: 340119)
tirgardoon@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 599-0210
Fax: (415) 276-1808

*Attorneys for Defendants The Simply Good Foods Co. and Only What You Need, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMETT ENRIQUES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ONLY WHAT YOU NEED, INC., a Delaware Corporation; THE SIMPLY GOOD FOODS COMPANY, a Delaware Corporation; AND DOES 1 THROUGH 70, INCLUSIVE,<br><br>Defendants. | Case No. 2:24-cv-08969-GW-BFM<br><br>**DECLARATION OF MATTHEW BORDEN IN SUPPORT OF DEFENDANTS THE SIMPLY GOOD FOODS COMPANY AND ONLY WHAT YOU NEED, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Date:** September 25, 2025<br>**Time:** 8:30 a.m.<br>**Judge:** Hon. George H. Wu |

I, Matthew Borden, declare:

1. I am licensed to practice law before this Court and am counsel of record for Defendants The Simply Good Foods Company and Only What You Need, Inc. ("OWYN"). I make this declaration based on personal knowledge, and if called upon to testify, I could and would testify competently thereto.

2. On August 8, 2025, my colleague Chelsea Tirgardoon met and conferred with Plaintiff's counsel about this motion as required by L.R. 7-3. Ms. Tirgardoon explained that Plaintiff lacks standing and fails to state a claim. Plaintiff's counsel disagreed and declined to withdraw the allegations in the FAC.

3. Attached as **Exhibit 1** are true and correct excerpts from the transcript for the January 28, 2025, deposition of Plaintiff Emmet Enriques.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 18, 2025         */s/ Matthew Borden*
                               Matthew Borden, Esq.

# EXHIBIT 1

# Deposition Transcript

Case Number: 2:24-cv-08969-GW-BFM
Date: January 28, 2025

In the matter of:

# EMMETT ENRIQUES v ONLY WHAT YOU NEED, INC., et al.

## Emmett Enriques - CONFIDENTIAL

## ATTORNEYS' EYES ONLY



**CERTIFIED COPY**

Reported by:
RONNY ZAVOSKY

```
Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F
```

```
 1                 UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3

 4    _____

 5                                        Case No. 2:24-cv-0896
                                                    9-GW-BFM
 6    EMMETT ENRIQUES, individually and
      on behalf of all other situated,
 7

 8                      Plaintiffs,

 9      vs.

10    ONLY WHAT YOU NEED, INC., a
      Delaware Corporation; THE SIMPLE
11    GOOD FOODS COMPANY, a Delaware
      Corporation; AND DOES 1 THROUGH 70,
12    INCLUSIVE,

13                      Defendants.

14    _____

15           CONFIDENTIAL - ATTORNEYS' EYES ONLY

16                VIDEOTAPED DEPOSITION OF

17                    EMMETT ENRIQUES

18               LOS ANGELES, CALIFORNIA

19              TUESDAY, JANUARY 28, 2025

20

21

22    REPORTED BY:
      RONNY ZAVOSKY
23    CSR NO. 12359
      JOB NO. 1392594
24

25
```

1    The deposition of EMMETT ENRIQUES was taken on
2  behalf of the Defendants at 515 South Flower Street,
3  18th Floor, Los Angeles, California, commencing at
4  9:49 A.M. on Tuesday, January 28th, 2025, before
5  Ronny Zavosky, CSR No. 12359.
6
7
8
9              A P P E A R A N C E S
10
11  FOR THE PLAINTIFF:
12
13  REESE, LLP
14           BY:  GEORGE V. GRANADE II, ESQ.
15           8484 Wilshire Boulevard, Suite 515
16           Beverly Hills, California  90211
17           (310) 393-0070
18           ggranade@reesellp.com
19
20
21
22
23
24
25

```
 1   A P P E A R A N C E S (Continued):

 2

 3   FOR THE DEFENDANTS:

 4

 5   BRAUNHAGEY & BORDEN LLP

 6            BY:  David H. KWASNIEWSKI, ESQ.

 7            747 Front Street, 4th Floor

 8            San Francisco, California  94111

 9            (415) 599-0210

10            kwasniewski@braunhagey.com

11

12

13

14   ALSO PRESENT:

15

16   STEVE PETERSEN, VIDEOGRAPHER

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 09:55:30 | 1 | A    Inside, don't -- don't remember.  I drank it |
| 09:55:33 | 2 | so I don't remember seeing the color. |
| 09:55:35 | 3 | Q    Did you drink it right away, or did you sort |
| 09:55:37 | 4 | of wait a bit? |
| 09:55:39 | 5 | A    After I purchased? |
| 09:55:41 | 6 | Q    Yeah. |
| 09:55:43 | 7 | A    Wait a bit. |
| 09:55:45 | 8 | Q    Do you remember what store you bought it from? |
| 09:55:48 | 9 | A    Yes.  Target, as well as secondary purchase at |
| 09:55:53 | 10 | Whole Foods. |
| 09:55:59 | 11 | Q    Well, let's focus still on just the very first |
| 09:56:02 | 12 | time you bought it. |
| 09:56:02 | 13 | Was that at Target or Whole Foods? |
| 09:56:04 | 14 | A    Target. |
| 09:56:05 | 15 | Q    Okay.  Which Target? |
| 09:56:07 | 16 | A    I believe it was West Hollywood Target. |
| 09:56:16 | 17 | Q    And you mentioned February -- this was in |
| 09:56:19 | 18 | February of last year. |
| 09:56:20 | 19 | So that's February of 2024? |
| 09:56:22 | 20 | A    Correct. |
| 09:56:24 | 21 | Q    And you bought just one four-pack at that |
| 09:56:28 | 22 | time? |
| 09:56:28 | 23 | A    Yes.  At the time. |
| 09:56:32 | 24 | Q    And you said -- you mentioned the secondary |
| 09:56:35 | 25 | purchase at Whole Foods. |

```
09:56:36   1              How many times could you estimate that you
09:56:38   2   purchased QWYN shakes?
09:56:40   3         A    I've purchased OWYN shakes -- two to three
09:56:45   4   times.  Chocolate first, chocolate and vanilla, and then
09:56:50   5   another chocolate again.  I tried the chocolate.  Tried
09:56:53   6   the vanilla; didn't like the vanilla as much, and then
09:56:56   7   purchased the chocolate the next time at Whole Foods.
09:57:01   8         Q    So the second time you purchased vanilla was
09:57:03   9   that at Target or Whole Foods?
09:57:05  10         A    Target.
09:57:06  11         Q    And the last time you purchased chocolate,
09:57:07  12   that was at Whole Foods?
09:57:10  13         A    Correct.
09:57:10  14         Q    And which Whole Foods was that?
09:57:11  15         A    West Hollywood.
09:57:18  16         Q    And when was the last time you bought an OWYN
09:57:20  17   shake?
09:57:23  18         A    March, last year.
09:57:28  19         Q    That's 2024; right?
09:57:29  20         A    Correct.
09:57:33  21         Q    You haven't purchased any OWYN shakes since
09:57:36  22   then?
09:57:36  23         A    No.
09:57:37  24         Q    Why did you stop?
09:57:39  25         A    One, because of the testing results that I
```

```
10:40:37   1    March of 2024?
10:40:39   2              MR. GRANADE:  Objection.
10:40:41   3              THE WITNESS:  Don't -- don't recall.  Yes.
10:40:43   4    Don't recall.
10:41:10   5    BY MR. KWASNIEWSKI:
10:41:10   6        Q    You said you reviewed the complaint before
10:41:13   7    today's deposition.
10:41:14   8             Did you also review it before it was filed?
10:41:19   9        A    No.  Not that I recall.  No.
10:41:27  10        Q    So the first time you saw it was when?
10:41:32  11        A    First time I read it?  Maybe a month or two
10:41:37  12    ago.
10:41:50  13        Q    Did you agree with what was stated in the
10:41:53  14    complaint when you read it?
10:41:54  15        A    Yes.
10:42:55  16        Q    The test results that are referenced in the
10:42:57  17    complaint, do you remember when they were performed?
10:43:02  18        A    I have a general idea that they were performed
10:43:06  19    throughout a larger time frame -- time range of -- I
10:43:11  20    would say, to the best of my knowledge, last year -- the
10:43:15  21    year prior.  And the year prior.  Let me just add that.
10:43:34  22        Q    Do you know if any test results were performed
10:43:37  23    on products purchased between -- OWYN shakes purchased
10:43:40  24    between February and March of 2024?
10:43:42  25             MR. GRANADE:  Object to the form of the
```

```
11:22:23   1           Did you review any of the letters that your
11:22:25   2   lawyers sent prior to filing the complaint to OWYN?
11:22:30   3      A    I do remember reading them, yes.
11:22:32   4      Q    When did you read them?
11:22:35   5      A    Around the same time that I read the
11:22:38   6   complaint.
11:22:42   7      Q    And just so the record is clear, around what
11:22:44   8   time frame was that?
11:22:45   9      A    I would say one or two months ago; however,
11:22:49  10   that's just reading them myself.  I had prior knowledge
11:22:52  11   of them since I've been in contact with my lawyers from
11:22:56  12   the past year.  So I did have an understanding of what
11:22:58  13   it was.
11:23:49  14      Q    So the complaint, as you may recall, discusses
11:23:52  15   four flavors of shakes.  The chocolate, vanilla --
11:24:00  16      A    No Nut Peanut Butter.
11:24:01  17      Q    Right.
11:24:01  18      A    Sea Salt, Caramel.
11:24:03  19      Q    Great.  The complaint says in paragraph 5 that
11:24:09  20   you purchased the shakes at retail locations in
11:24:13  21   California, including Los Angeles County, but you never
11:24:16  22   purchased the No Nut Butter Cup; right?
11:24:19  23      A    No.
11:24:19  24      Q    And you never purchased the Sea Salt Caramel;
11:24:22  25   right?
```

```
11:24:23   1          A    No.
11:24:24   2          Q    So, in fact, that allegation in the complaint
11:24:25   3    that you purchased all those different flavors, that's
11:24:27   4    not true, is it?
11:24:28   5               MR. GRANADE:  Objection.
11:24:30   6               THE WITNESS:  I just purchased two of the
11:24:32   7    flavors.
11:24:32   8    BY MR. KWASNIEWSKI:
11:25:11   9          Q    Earlier we talked about the types of relief
11:25:13  10    that you were seeking in this lawsuit.  We discussed
11:25:15  11    monetary relief.  You also mentioned injunctive relief.
11:25:21  12               What specific injunctive relief are you
11:25:25  13    seeking with this lawsuit?
11:25:26  14               MR. GRANADE:  Objection.
11:25:28  15               You may answer.
11:25:30  16               THE WITNESS:  Let me first clarify that I am
11:25:32  17    in no way an expert in law, in business, and labeling
11:25:38  18    products.  However, when I say injunctive relief, my --
11:25:45  19    the main meaning behind that, it means to be -- the
11:25:49  20    labels re- -- how do I put this?  I'd like to see the
11:25:55  21    labels not mislabeled and to be changed to reflect what
11:25:58  22    is actually in the product.
11:25:59  23    BY MR. KWASNIEWSKI:
11:26:12  24          Q    So just so that I understand, you are not
11:26:19  25    asking for the formula of the product to be changed?
```

```
11:34:51   1        Q    What if some batches of OWYN's shakes were --
11:34:56   2   had all the protein advertised and just some batches
11:34:59   3   didn't?  You would agree with me if that were the case,
11:35:03   4   then people who bought the batches that had all the
11:35:06   5   protein wouldn't have suffered an injury; right?
11:35:09   6             MR. GRANADE:  Objection.
11:35:12   7             THE WITNESS:  I would say -- so you are saying
11:35:16   8   if they had drinking -- if they had "drinken" the
11:35:19   9   product that was properly labeled -- that was batched
11:35:26  10   properly and labeled properly, that they wouldn't have
11:35:28  11   suffered injury, I would say yes.
11:35:30  12   BY MR. KWASNIEWSKI:
11:35:41  13        Q    Do you know which specific batches of OWYN's
11:35:43  14   shakes were not properly labeled?
11:35:47  15        A    Personally?  No.
11:36:15  16        Q    Switching gears a little bit.  I wanted to
11:36:17  17   talk to you about how you came to retain your lawyers in
11:36:22  18   this case.
11:36:22  19             How did you come to meet them?
11:36:25  20        A    I first met Alec when he was in law school
11:36:31  21   years ago.  And I only met George recently.  Within this
11:36:39  22   last month or two.
11:36:46  23        Q    How did you come to hire Alec in connection
11:36:48  24   with this case?
11:36:49  25        A    Alec actually worked for -- I wouldn't say
```

```
11:36:53  1   worked for me.  He was an independent contractor for me
11:36:56  2   in the past, so I had a good understanding of what he
11:36:59  3   did.  And he -- when he left working with me, I --
11:37:04  4   that's when I had a good understanding of what he did,
11:37:06  5   so that's how I kind of came into it and understood
11:37:10  6   that.
11:37:22  7        Q    You said earlier that you personally didn't
11:37:24  8   test any of OWYN's shakes.
11:37:26  9             Do you know who did?
11:37:33 10        A    I would make the assumption -- no.  As in who
11:37:39 11   sent it in?  No.
11:37:50 12        Q    Prior to you hiring Alec to represent you in
11:37:54 13   this case, did Alec approach you with the test results?
11:37:58 14        A    No.
11:37:59 15        Q    How did you hear about the test results?
11:38:02 16        A    I heard about the test results through Alec
11:38:05 17   because I was at his place and saw that he had the
11:38:11 18   protein shakes at his place, and me knowing, through
11:38:14 19   prior work through Alec, what he does for a career,
11:38:18 20   living, had asked him about it because I was drinking
11:38:22 21   the protein shakes around the same time.
11:38:26 22        Q    And at that time, was Alec representing you as
11:38:29 23   an attorney?
11:38:29 24        A    No.
11:38:33 25        Q    So what specifically did you ask Alec about
```

```
11:38:35   1    the protein shakes?
11:38:37   2         A    I asked him -- I asked him whether or not
11:38:39   3    the -- I asked -- first, I asked his thoughts and I
11:38:43   4    can't recall the exact conversation.  But I asked what
11:38:46   5    his relationship was with the protein shakes and what
11:38:48   6    was going on, and that's when I saw the nutrition.
11:38:55   7         Q    When you say "nutrition," you are talking
11:38:56   8    about the test results?
11:38:57   9         A    Yes.
11:39:02   10        Q    After you saw the test results, what did you
11:39:04   11   discuss?
11:39:07   12             MR. GRANADE:  And I just want to caution my
11:39:09   13   client, at some point my understanding is the
11:39:10   14   attorney-client privilege does attach here because, you
11:39:14   15   know, they started talking about Emmett wanting to
11:39:18   16   retain Alec.  So I take it that you are not asking about
11:39:22   17   those conversations once that had occurred.
11:39:24   18   BY MR. KWASNIEWSKI:
11:39:24   19        Q    Yeah.  I'm only asking about your
11:39:27   20   conversations prior to retaining Alec as your lawyer.
11:39:34   21   So you saw the test results.
11:39:35   22             Did you have any other conversations with Alec
11:39:37   23   before you decided to hire him as your lawyer?
11:39:40   24        A    I would -- I would say no.  I -- I mean, I
11:39:43   25   took interest for personal reasons.  I've taken a lot
```

```
11:39:47   1   law classes before.  You know.  It's interesting to me.
11:39:51   2            Labeling, you know, like it's more of a
11:39:54   3   personal thing.  So after this -- that conversation that
11:39:58   4   was it.
11:40:01   5        Q   And you said you've taken on classes before?
11:40:05   6        A   I've taken law classes before.
11:40:07   7        Q   You've taken law classes.
11:40:09   8            Have you ever served as a plaintiff in another
11:40:11   9   lawsuit?
11:40:13  10        A   No.
11:40:13  11            THE VIDEOGRAPHER:  It's still attached.
11:40:16  12            THE WITNESS:  Oh, okay.
11:40:18  13   BY MR. KWASNIEWSKI:
11:40:18  14        Q   Have you ever been a party to a -- a prior --
11:40:20  15   a lawsuit before?
11:40:21  16        A   No.
11:40:37  17        Q   We've touched on this briefly, but you
11:40:40  18   understand that in this case you are representing a
11:40:42  19   class of consumers across the state and the entire
11:40:46  20   country; right?
11:40:47  21        A   Correct.
11:40:48  22        Q   And you understand that as a class
11:40:49  23   representative, you have duties to the other members of
11:40:52  24   the class that aren't present here today; right?
11:40:55  25        A   Correct.
```

EMMETT ENRIQUES - CONFIDENTIAL                                JOB NO. 1392594
JANUARY 28, 2025                  ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 11:43:38 | 1 | other class members to not receive any money if you and |
| 11:43:41 | 2 | your lawyers receive money; right? |
| 11:43:43 | 3 | A   I -- I think that the other class members |
| 11:43:45 | 4 | should receive money.  Yes. |
| 11:44:40 | 5 | MR. KWASNIEWSKI:  I'm going to show you what |
| 11:44:41 | 6 | we'll mark for identification is Exhibit 4. |
| 11:44:48 | 7 | (Exhibit 4 was marked for identification.) |
| 11:45:29 | 8 | BY MR. KWASNIEWSKI: |
| 11:45:30 | 9 | Q   Does Exhibit 4 look like the label on the |
| 11:45:32 | 10 | chocolate protein shake that you purchased? |
| 11:45:35 | 11 | A   No. |
| 11:45:36 | 12 | Q   What's different? |
| 11:45:38 | 13 | A   Serving side -- size; food ounces; type of |
| 11:45:42 | 14 | packaging; shape of packaging.  That's as far as I can |
| 11:45:50 | 15 | go. |
| 11:46:15 | 16 | Q   So you did not purchase the Elite Pro |
| 11:46:17 | 17 | Chocolate in the 355-milliliter configuration? |
| 11:46:20 | 18 | A   I believe -- no.  I did not. |
| 11:46:23 | 19 | Q   Which OWYN chocolate shake did you purchase? |
| 11:46:28 | 20 | A   The -- it's either 335 or 330.  Off the top of |
| 11:46:33 | 21 | my head, I can't remember, but it's not -- it's not this |
| 11:46:36 | 22 | bottle shape. |
| 11:47:03 | 23 | Q   And same question for the vanilla shake. |
| 11:47:05 | 24 | Did you buy the 355-milliliter or 335? |
| 11:47:09 | 25 | A   Same as the chocolate. |

```
 1            DECLARATION UNDER PENALTY OF PERJURY

 2

 3         I, the undersigned, declare under penalty of

 4    perjury that I have read the entire foregoing transcript

 5    of my deposition or the same has been read to me, and

 6    the same is true and accurate, save and except for

 7    changes, corrections, additions or deletions indicated

 8    by me on the DEPOSITION ERRATA SHEET hereof, with the

 9    understanding that I offer these changes as if still

10    under oath.

11

12         Signed on the _____ day of _____, 20___,

13    at _____, _____.

14            (City)                    (State)

15

16

17

18

19                              _____

20                                        EMMETT ENRIQUES

21

22

23

24

25
```

```
 1              I, RONNY ZAVOSKY, CSR No. 12359, certify that
 2    the foregoing proceedings were taken before me at the
 3    time and place therein set forth, at which time the
 4    witness was duly sworn and that the transcript is the
 5    true record of the testimony so given;
 6
 7              Witness review, correction and signature
 8         (X) shall be per venue code    ( ) was requested
 9         ( ) was not requested          ( ) was waived
10         ( ) not handled by the deposition officer due to
11             party stipulation
12
13              The dismantling, unsealing, or unbinding of
14    the original transcript will render the reporter's
15    certificate null and void.
16              I further certify that I am not financially
17    interested in the action, and I am not a relative or
18    employee of any attorney of the parties, nor of any of
19    the parties.
20              Dated this 7th day of February, 2025.
21
22
23                                    _____
                                      RONNY ZAVOSKY, CSR NO. 12359
24                                    CERTIFIED SHORTHAND REPORTER
25
```