George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Alec Pressly (State Bar No. 348054)
alec@presslylegal.com
**THE LAW OFFICE OF ALEC PRESSLY**
3110 Main Street Building C, #331
Santa Monica, California 90405
Telephone: (603) 809-6601

[Additional Counsel Listed on Signature Page]

*Counsel for Plaintiff Emmett Enriques
and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| EMMETT ENRIQUES, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ONLY WHAT YOU NEED, INC., *a Delaware Corporation*; THE SIMPLY GOOD FOODS COMPANY, *a Delaware Corporation*; *and* DOES 1 *through* 70, *inclusive*,<br><br>Defendants. | Case No. 2:24-cv-08969-GW-BFM<br><br>**PLAINTIFF EMMETT ENRIQUES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS THE SIMPLY GOOD FOODS COMPANY'S AND ONLY WHAT YOU NEED, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: September 25, 2025<br>Time: 8:30 a.m.<br>Place: Courtroom 9D, 9th Floor<br>Judge: Honorable George H. Wu |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................ii

I.      INTRODUCTION .................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................... 2

        A.      The Shakes Share Common Labeling....................................... 2

        B.      The Shakes Have Materially Uniform Ingredients ................. 5

        C.      Laboratory Testing Has Confirmed Consistent Discrepancies
                Across Flavors and Formats..................................................... 6

III.    ARGUMENT ............................................................................................ 8

        A.      Plaintiff Has Standing ............................................................... 8

                1.      Legal Standard ............................................................... 8

                2.      Plaintiff Has Article III Standing, and Whether Plaintiff
                        May Represent Absent Class Members Who Purchased
                        Shakes That Plaintiff Did Not Purchase Is a Class
                        Certification Issue .......................................................... 9

                3.      All Products Are Substantially Similar ...................... 15

                4.      Plaintiff Has Statutory Standing ................................. 20

        B.      The FAC States a Claim against SGFC ................................ 20

        C.      Standing to Pursue Injunctive Relief ..................................... 22

IV.     CONCLUSION ...................................................................................... 23

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2...................... 24

1

## TABLE OF AUTHORITIES

2

CASES

3

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO,
    2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)......................................................19

4

*Ashton v. J.M. Smucker Co.*, No. 20-cv-00992-JGB-SHK,
5    2020 WL 8575140 (C.D. Cal. Dec. 16, 2020) ......................................................17

6

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-02910-EMC,
    2012 WL 2990766 (N.D. Cal. July 20, 2012)................................................16, 17

7

*B.K. by next friend Tinsley v. Snyder*,
8    922 F.3d 957 (9th Cir. 2019)........................................................10, 12, 13, 18

9

*B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD,
    2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)........................................................13

10

*Barrales v. New Chapter, Inc.*, No. 2:25-cv-01171-HDV-KES,
11    2025 WL 1584424 (C.D. Cal. June 4, 2025) ......................................................15

12

*Barrett v. Optimum Nutrition*, No. 21-cv-04398-DMG-SK,
    2022 WL 2035959 (C.D. Cal. Jan. 12, 2022) ....................................................12

13

*Battle v. Taylor James, LLC*,
14    607 F. Supp. 3d 1025 (C.D. Cal. 2022) ........................................................16, 20

15

*Boldt v. Caesarstone USA, Inc.*,
    760 F. Supp. 3d 1016 (C.D. Cal. 2024) ..............................................................11

16

*Bowen v. Energizer Holdings, Inc.*,
17    118 F.4th 1134 (9th Cir. 2024)........................................................................9

18

*Clevenger v. Welch Foods Inc.*, No. 20-cv-01859-CJC-JDE,
    2022 WL 16964009 (C.D. Cal. Feb. 25, 2022) ..................................................18

19

*Colucci v. ZonePerfect Nutrition Co.*, No. 12-cv-02907-SC,
20    2012 WL 6725377 (N.D. Cal. Dec. 28, 2012) ..............................................16, 17

21

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018).............................................................................22

22

*Davis v. The Kroger Co.*, No. 2:22-cv-02082-MEMF-RAO,
23    2023 WL 9511156 (C.D. Cal. Sept. 22, 2023) ..................................................10

24

*Foman v. Davis*,
    371 U.S. 178 (1962) .........................................................................................23

25

*Gen. Tel. Co. of Sw. v. Falcon*,
26    457 U.S. 147 (1982) .........................................................................................14

27

*Goldstein v. Gen. Motors LLC*,
    445 F. Supp. 3d 1000 (S.D. Cal. 2020) ..............................................................15

28

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ................................................................................ 14, 19

*Grivas v. Metagenics, Inc.*, No. 15-cv-01838-CJC-DFM,
    2018 WL 6185978 (C.D. Cal. Mar. 19, 2018) ............................................ 12, 19

*Hamzeh v. Pharmavite LLC*, No. 24-cv-00472-HSG,
    2025 WL 621891 (N.D. Cal. Feb. 26, 2025) ................................................... 15

*Hardy v. Mitsubishi Motors N. Am., Inc.*, No. 8:21-cv-01983-MEMF-KES,
    2023 WL 4067408 (C.D. Cal. Mar. 30, 2023) .................................................. 11

*In re Capacitors Antitrust Litigation*,
    154 F. Supp. 3d 918 (N.D. Cal. 2015) ............................................................. 15

*Johnson v. Nissan N. Am., Inc.*, No. 22-16644,
    2024 WL 4784367 (9th Cir. Nov. 14, 2024) ............................................... 10, 13

*Jones v. AIG Risk Mgmt., Inc.*,
    726 F. Supp. 2d 1049 (N.D. Cal. 2010) ........................................................... 21

*Kirola v. City & Cnty. of San Francisco*,
    860 F.3d 1164 (9th Cir. 2017) ....................................................... 10, 12, 13, 18

*Lee v. Plex, Inc.*,
    773 F. Supp. 3d 755 (N.D. Cal. 2025) ............................................................. 13

*Lorentzen v. Kroger Co.*,
    532 F. Supp. 3d 901 (C.D. Cal. 2021) ............................................................. 18

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) ................................................................. passim

*Mendoza v. Electrolux Home Prods., Inc.*, No. 1:20-cv-01133-DAD-BAM,
    2022 WL 4082200 (E.D. Cal. Sept. 6, 2022) ............................................. 12, 17

*Minor v. Favorite World, LLC*, No. 24-cv-04425-JFW-AJR,
    2024 WL 4834951 (C.D. Cal. Sept. 17, 2024) .................................................. 11

*Mitchell v. NY & Co Ecomm LLC*, No. 23-cv-10117-MWF-MRW,
    2024 WL 1328333 (C.D. Cal. Mar. 26, 2024) .................................................. 13

*Mitchell v. Sonesta Int'l Hotels Corp.*, No. 24-cv-02603-GW-SSC, 2024 WL
    4471772 (C.D. Cal. Oct. 4, 2024) ..................................................................... 9

*Murphy v. Olly Pub. Benefit Corp.*,
    651 F. Supp. 3d 1111 (N.D. Cal. 2023) ........................................................... 19

*Nunez v. Saks Inc.*,
    771 F. App'x 401 (9th Cir. 2019) ............................................................ 10, 12, 13

*O'Dea v. RB Health (US) LLC*,
    779 F. Supp. 3d 1135 (C.D. Cal. 2025) ........................................................... 22

*Ochoa v. Zeroo Gravity Games LLC*, No. 22-cv-05896-GW-AS,
 2023 WL 4291974 (C.D. Cal. Feb. 1, 2023)..................................................17

*Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-cv-07271-JST,
 2024 WL 5205539 (N.D. Cal. Dec. 23, 2024)..............................................11

*Patterson v. RW Direct, Inc.*, No. 18-cv-00055-VC,
 2018 WL 6106379 (N.D. Cal. Nov. 21, 2018)..............................................15

*Poulopoulos v. OpticsPlanet, Inc.*, No. 2:24-cv-02511-JLS-KS,
 2024 WL 3822774 (C.D. Cal. Aug. 8, 2024)................................................20

*Ray v. Alad Corp.*,
 560 P.2d 3 (Cal. 1977) ................................................................................20

*Santiago v. Walls*,
 599 F.3d 749 (7th Cir. 2010) ......................................................................21

*Scheibe v. Fit Foods Distribution, Inc.*, No. 23-cv-00220-JLS-AHG,
 2023 WL 7434964 (S.D. Cal. Nov. 8, 2023) .........................................12, 13

*Sihler v. Fulfillment Lab, Inc*, No. 3:20-cv-01528-H-MSB,
 2020 WL 7226436 (S.D. Cal. Dec. 8, 2020)................................................15

*Sosna v. Iowa*,
 419 U.S. 393 (1975) ......................................................................................9

*Sotelo v. Rawlings Sporting Goods Co.*, No. 18-cv-09166-GW-MAA,
 2019 WL 4392528 (C.D. Cal. May 8, 2019) ..........................................11, 22

*Sousa v. Walmart, Inc.*, No. 1:20-cv-00500-EPG,
 2023 WL 1785960 (E.D. Cal. Feb. 6, 2023) ................................................13

*Stemmelin v. Matterport, Inc.*, No. 20-cv-04168-WHA,
 2020 WL 6544456 (N.D. Cal. Nov. 7, 2020)..........................................14, 15

*Stotz v. Mophie Inc.*, No. 16-cv-08898-GW-FFM,
 2017 WL 1106104 (C.D. Cal. Feb. 27, 2017)........................................11, 12

*Thakur v. Trump*, No. 25-cv-04737-RFL,
 2025 WL 2325390 (N.D. Cal. Aug. 12, 2025) ............................................13

*Tompkins v. Lasalle Bank Corp.*, No. 09-cv-03906,
 2009 WL 4349532 (N.D. Ill. Nov. 24, 2009)..............................................21

*Weinberg v. Twitter, Inc.*, No. 23-cv-04016-AMO,
 2024 WL 3908112 (N.D. Cal. Aug. 21, 2024)............................................13

*Williams v. Under Armour, Inc.*, No. 24-cv-01567 JGB-SSC,
 2025 WL 1415744 (C.D. Cal. Apr. 7, 2025) ...............................................20

**STATUTES**

21 C.F.R. § 101.4..........................................................................................5

**OTHER AUTHORITIES**

FED. R. CIV. P. 15 ..................................................................................................23

1      Plaintiff Emmett Enriques ("Plaintiff" or "Enriques") respectfully submits

2 this memorandum of points and authorities in opposition to the partial motion to

3 dismiss Plaintiff's First Amended Complaint, ECF No. 50 ("FAC"), filed by

4 Defendants The Simply Good Foods Company ("SGFC") and Only What You Need,

5 Inc. ("OWYN") (together, "Defendants"). *See* Defs.' Mem. Supp. Partial Mot.

6 Dismiss FAC, ECF No. 51-1 ("Mem.").

7 **I.   INTRODUCTION**

8      Defendants seek partial dismissal on three narrow grounds, each of which

9 fails. First, they argue Plaintiff lacks standing to represent purchasers of protein

10 Shake[1] variants he did not personally buy. Second, they move to dismiss SGFC

11 despite Plaintiff's allegations that SGFC acquired OWYN for $280 million,

12 converted it into an SGFC "brand," and continues marketing the Products—while

13 all information about the actual corporate structure and operational control remains

14 uniquely in Defendants' possession. Third, they challenge Plaintiff's standing for

15 injunctive relief because he does not assert he will repurchase the Shakes.

16      The Court should deny the motion. Plaintiff undisputedly has Article III

17 standing for his purchases of the Chocolate and Vanilla 330mL Shakes, and under

18 *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), whether he may represent

19 purchasers of other Shake variants is a class certification question. SGFC remains a

20 proper defendant based on successor liability theories and its continued marketing

21 of the OWYN line, with discovery needed to determine whether SGFC is ultimately

22 liable based on the true corporate relationships that only Defendants know. And

23 California's UCL and FAL specifically provide injunctive relief as a statutory

24 remedy that is available where, as here, Plaintiff has been injured.

25

---

26 [1] "Shakes" and "Products" mean: (1) Elite PRO Chocolate, 355 mL; (2) Elite PRO Vanilla, 355 mL; (3) Elite PRO Plant Powered Drink, Vanilla, 330 mL; (4) Elite

27 PRO Plant Powered Drink, Chocolate, 330 mL; (5) Elite PRO Plant Powered Drink, No Nut Butter Cup, 330 mL; and (6) Elite PRO Plant Powered Drink, Sea Salted

28 Caramel, 330 mL. FAC ¶ 1.

## II.    FACTUAL BACKGROUND

Defendants produce, market, and sell a line of ready-to-drink protein shakes under the brand name "Elite PRO." FAC ¶¶ 1, 28, 31, 36, 41, 44, 46, 48. The Elite PRO Shakes come in four flavors: Chocolate, Vanilla, No Nut Butter Cup, and Sea Salted Caramel. *Id.* The Shakes are sold in just two container types: 330 mL tetra paks and 355 mL plastic bottles. *Id.* Plaintiff purchased the Chocolate and Vanilla flavor Shakes in the 330 mL container size. *Id.* at ¶ 5.

As explained below, the Elite PRO Shakes are flavor variants of a standardized formulation and are all labeled, packaged, and marketed as a single uniform product line. FAC ¶ 28. Across all formats, the Shakes feature the same trade dress, layout, and front-panel nutritional claims. *Id.* Flavor differences are communicated solely through vignettes, color accents, and minor text; visual consistency is part of the Products' brand identity. *Id.*

### A.    The Shakes Share Common Labeling

Each Shake sold in a 330 mL format is packaged in a tetra pak-style container, which houses four individual cartons. FAC ¶¶ 28, 41, 44, 46, 48. The tetra-pak containers and the individual cartons within them are visually and substantively uniform across all flavors, including Chocolate, Vanilla, Sea Salted Caramel, and No Nut Butter Cup. *Id.* The following image is a side-by-side comparison of the 330 mL tetra pak containers for the four flavors:



*Id.* at ¶ 28. The following shows the individual cartons from within the tetra paks:



*Id.*

Defendants also sell the Chocolate and Vanilla flavors of the Shakes in a 355 mL plastic bottle format. FAC ¶¶ 31, 36. These bottles are uniform in size, design, and layout. *Id.* at ¶¶ 28, 31, 36. The following image is a side-by-side comparison of the Chocolate and Vanilla Shake flavors sold in the 355 mL plastic bottles:



*Id.* at ¶¶ 31, 36.

The front label of each 330 mL tetra pak container prominently states the Product contains "32g Plant Protein," "0g Sugar," and "0g Net Carbs." FAC ¶ 41 (page 14); *id.* at ¶ 44 (page 17); *id.* at ¶ 46 (page 20); *id.* at ¶ 48 (page 23). The front labels of the individual 330 mL cartons within the tetra paks reinforce the same key nutritional representations, "32g Plant Protein" and "0g Sugar." *Id.* at ¶¶ 28, 41, 44, 46, 48. Similarly, the front label of each 355 mL Shake bottle prominently states that the Product contains "32g Plant Protein" (or in 2022, "35g Plant Protein") and "0g Sugar." *Id.* at ¶¶ 31, 31 n.3, 36, 36 n.4, 87, 89, 91, 93.

The bottom panels of the 330 mL tetra pak containers repeat a claim that the Product contains "0 Net Carbs Per Serving." FAC ¶ 41 (page 15); *id.* at ¶ 44 (page 18); *id.* at ¶ 46 (page 21); *id.* at ¶ 48 (page 24). The side panels of the individual 330 mL cartons within the tetra paks also reinforce the "0g Net Carbs" claim. *Id.* at ¶¶ 28, 41, 44, 46, 48. Similarly, the side panels of the 355 mL Shake bottles state that the Products contain "0g Net Carbs." *Id.* at ¶¶ 31, 36. Nowhere on the container of any Shake is the term "Net Carbs" defined. *Id.* at ¶¶ 2.b, 66.

The "32g Plant Protein" (or on the 355 mL bottles in 2022, "35g Plant Protein"), "0g Sugar," and "0g Net Carbs" representations on the Shakes' labeling

are materially identical across all tested product years, from 2022 through 2025. FAC ¶¶ 71, 76, 82, 87-89, 93, 95.

Each 330 mL tetra pak, each individual carton within each 330 mL tetra pak, and each 355 mL bottle also displays a Nutrition Facts Panel that is identical for all material purposes for this litigation. Every Nutrition Facts Panel represents that (1) the Shake contains 32 grams (or for the 355 mL bottles in 2022, 35 grams) of protein; (2) the Shake contains 0 grams of total sugars; and (3) the amount of dietary fiber in the Shake is equal to the amount of total carbohydrates. FAC at ¶¶ 31, 31 n.31, 36, 36 n.4, 71, 76, 82, 87-89, 91, 93, 95; *id.* at ¶ 41 (page 15); *id.* at ¶ 44 (page 18); *id.* at ¶ 46 (page 21); *id.* at ¶ 48 (page 24).

## B.    <u>The Shakes Have Materially Uniform Ingredients</u>

All the Elite PRO Shakes share a standardized formulation that is consistent across flavors and formats. FAC ¶ 29. All Shakes contain the same protein base— pea protein, organic pumpkin seed protein, and flaxseed oil—marketed as the "OWYN™ Protein Blend." *Id.*; *id.* at ¶ 41 (page 15); *id.* at ¶ 44 (page 18); *id.* at ¶ 46 (page 21); *id.* at ¶ 48 (page 24). Indeed, Brad Moose, the Chief Operating Officer of OWYN, admits, without distinguishing among flavors or container sizes, that "OWYN's protein shakes are made from natural, plant-based ingredients, including a proprietary pea protein blend." Decl. Moose Supp. Defs.' Opp'n Pl.'s Mot. Leave File FAC ¶ 1, 6, ECF No. 28-1 ("Decl. Moose"). The pea protein blend is the heaviest ingredient, other than water, in all the Shakes. *See* FAC ¶ 41 (page 15); *id.* at ¶ 44 (page 18); *id.* at ¶ 46 (page 21); *id.* at ¶ 48 (page 24); 21 C.F.R. § 101.4 (requiring ingredients to be "listed by common or usual name in descending order of predominance by weight").

Every Shake also includes a "Greens Blend" of spinach, kale, and broccoli. FAC ¶ 29; *id.* at ¶ 41 (page 15); *id.* at ¶ 44 (page 18); *id.* at ¶ 46 (page 21); *id.* at ¶ 48 (page 24). Gums, including gellan gum, acacia gum blend, and guar gum, are present across all Products, sometimes individually labeled, sometimes grouped. *Id.*

Sunflower oil appears in all formulations, occasionally described as "Sunflower and/or Safflower Oil." *Id.*

The following chart compares the ingredients of all six Shakes.

| Ingredient | Vanilla 330 mL | Choc 330 mL | Sea Salt Caramel 330 mL | No Nut Butter 330 mL | Choc 355 mL | Vanilla 355 mL |
|---|---|---|---|---|---|---|
| Water | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Pea Protein | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Organic Pumpkin Seed Protein | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Flaxseed Oil | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Soluble Fiber | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Sunflower and/or Safflower Oil | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Sunflower Lecithin | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Gellan Gum / Acacia Gum Blend | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Guar Gum | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Natural Flavor | ✓ | ✓ | ✓ | | ✓ | ✓ |
| Monk Fruit Extract | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Himalayan Pink Sea Salt | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Greens Blend (Spinach, Kale, Broccoli) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Cocoa Powder | | ✓ | | ✓ | ✓ | |
| Natural Chocolate Flavor | | ✓ | | | ✓ | |
| Black Cocoa | | ✓ | | | ✓ | |
| Natural Flavor (Peanut-Free / Tree Nut-Free) | | | | ✓ | | |
| Natural Vanilla Flavor | ✓ | | | | | ✓ |

FAC ¶ 29.

The use of identical nutritional claims and near-identical ingredient lists confirms OWYN intended to maintain a uniform product line. *See also* Decl. Moose ¶ 9 (OWYN sought to "achieve uniform consistency and nutrient contents" across the Shakes).

C.    **Laboratory Testing Has Confirmed Consistent Discrepancies Across Flavors and Formats**

Plaintiff's counsel had an independent laboratory conduct laboratory testing of the Shakes across fourteen separate product lots between 2022 and 2025. FAC

¶¶ 32-35, 37-40, 42-43, 45, 47, 49-51, 56, 68, 73, 79, 84, 87-89, 91, 93, 95; *id.*, Exs. A-N, ECF No. 50-1 (certificates of analysis for each of the fourteen product lots). Two of the tests measured only the protein levels. FAC, Exs. C, G. The remaining twelve tests measured protein levels, total carbohydrates, fiber, sugar, fat, and other nutrients. *Id.*, Exs. A-B, D-F, H-N. Samples were composite in nature for ten of the tests, consisting of multiple sealed units with the same expiration date purchased from different retail locations. *Id.*, Exs. A (composite 7), B (composite 12), E (composite 12), F (composite 10), I-N (composite 12); *see* FAC ¶¶ 52, 57, 69, 74, 80, 85. Four of the tests were not composite. *Id.*, Exs. C-D, G-H. All testing was performed using AOAC-approved methodologies. FAC ¶¶ 53, 58, 70, 75, 81, 86.

Set forth below are the conclusions of these tests:

*Common misrepresentation of protein levels.* As discussed above, every Shake represents on its front panel and in the Nutrition Facts Panel that it contains 32 grams of protein (or for the 355 mL bottles in 2022, 35 grams of protein). Across ten of the fourteen product lots tested for protein content, actual protein levels fell materially below the 32g (or 35g) claimed on the label. FAC ¶¶ 87-96; *id.*, Exs. A-C, E-G, I-J, M-N. The deficiencies ranged from 12% to over 30% (or 3.9 to 10.6 grams below labeled amounts, FAC ¶¶ 89, 93; *id.*, Exs. F, J), and occurred across multiple flavors, years, and container sizes. FAC ¶¶ 87-96.

*Common misrepresentation of total carbohydrate levels.* Of the twelve product lots tested for total carbohydrates, all but two exceeded the labeled carbohydrate content. FAC ¶¶ 54, 59; *id.*, Exs. A, D-E, H-N. In some cases, the true values were more than double those listed—representing misstatements ranging from 32.8% to 266.7% (or 2.3 to 8.0 grams above labeled amounts). FAC ¶¶ 54, 59; *id.*, Exs. D-E. These misrepresentations appeared across different years, flavors, and formats. FAC ¶¶ 54, 59.

*Common misrepresentation of Net Carb levels.* As discussed above, every Shake represents on its packaging that it contains "0 Net Carbs," and no Shake label

defines "Net Carbs." Because every Nutrition Facts Panel lists dietary fiber as equal to total carbohydrates, FAC ¶¶ 31, 31 n.3, 36, 36 n.4; *id.* at ¶ 41 (page 15); *id.* at ¶ 44 (page 18); *id.* at ¶ 46 (page 21); *id.* at ¶ 48 (page 24), the most probable internal definition is that Defendants treat "Net Carbs" as total carbohydrates minus dietary fiber. Even using this most favorable interpretation, 92% of tested samples showed material net carbohydrate content. FAC ¶¶ 71, 76; *id.*, Exs. A, D-F, H-N. Actual net carbs ranged from 1.7g to 7.6g per serving—making the "0g Net Carbs" claim mathematically impossible. FAC ¶ 71; *id.*, Ex. F.

Several Products also contained sugar, despite the label claims of "0g Sugar." For example, the 2024 Vanilla 330 mL and No Nut Butter Cup Shakes contained 2.1g and 2.4g of sugar, respectively. FAC ¶ 82; *id.*, Exs. J-K. The presence of sugar independently renders the "0g Net Carbs" claim false, since carbohydrates necessarily include sugars under any recognized definition. *See, e.g.*, *Carbohydrate*, Merriam-Webster.com (2025), [https://www.merriam-webster.com/dictionary/carbohydrate](https://www.merriam-webster.com/dictionary/carbohydrate) (defining "carbohydrate" as "any of various neutral compounds of carbon, hydrogen, and oxygen (such as sugars, starches, and celluloses) most of which are formed by green plants and which constitute a major class of animal foods").

Taken together, these results show a uniform and repeated pattern of misrepresentation in the Shakes' labeling. The consistency of these inaccuracies across flavors, years, and packaging formats confirms that the misstatements are not incidental or batch specific. The labeling errors reflect systemic quality control failures which Plaintiff anticipates will be reliably evaluated on a class-wide basis using common evidence.

## III.   ARGUMENT

### A.   Plaintiff Has Standing

#### 1.   Legal Standard

In a factual Rule 12(b)(1) challenge to subject matter jurisdiction, "the moving

party 'introduc[es] evidence outside the pleadings' and seeks to have the existence of jurisdiction determined as a factual matter." *Mitchell v. Sonesta Int'l Hotels Corp.*, No. 24-cv-02603-GW-SSC, 2024 WL 4471772, at *3 (C.D. Cal. Oct. 4, 2024). "Although a district court faced with a factual challenge to its exercise of jurisdiction may resolve disputed facts as to purely jurisdictional questions, it may not do so when those jurisdictional questions are intertwined with the merits of a claim." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1139 (9th Cir. 2024).

>    **2.**    **Plaintiff Has Article III Standing, and Whether Plaintiff May Represent Absent Class Members Who Purchased Shakes That Plaintiff Did Not Purchase Is a Class Certification Issue**

Defendants concede, as they must, that Plaintiff has standing to seek monetary relief regarding his purchases of the Chocolate and Vanilla 330 mL Shakes. Mem. 7, 12. Defendants argue, however, that Plaintiff lacks standing as to the Shakes he did not purchase. *Id.* at 5-15. Defendants' argument confuses standing analysis with class certification analysis. The Court should follow *Melendres v. Arpaio* and hold that because Plaintiff has standing to pursue claims regarding the Chocolate and Vanilla 330 mL Shakes, Article III is satisfied and whether he may represent absent class members who purchased other similar Shakes is a class certification question.

In *Melendres*, the Ninth Circuit adopted the "class certification approach," under which "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Melendres*, 784 F.3d at 1262; *accord Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("The conclusion [that plaintiff has standing] . . . shift[s] the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.'"). Therefore, "any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to

1  standing." *Melendres*, 784 F.3d at 1262. "Stated differently, '[r]epresentative parties

2  who have a direct and substantial interest have standing; ***the question whether they***

3  ***may be allowed to present claims on behalf of others who have similar, but not***

4  ***identical, interests depends not on standing, but on an assessment of typicality and***

5  ***adequacy of representation***.'" *Id.* (emphasis added).

6        The Ninth Circuit followed *Melendres* in 2017, reaffirming adoption of the

7  class certification approach. *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164,

8  1176 (9th Cir. 2017).

9        Again in 2019, the Ninth Circuit reaffirmed *Melendres* and held the

10  defendants, like OWYN and SGFC here, "confuse[d] the standing analysis in a class

11  action for the class certification analysis." *B.K. by next friend Tinsley v. Snyder*, 922

12  F.3d 957, 967 (9th Cir. 2019) ("*Tinsley*"); *see also Davis v. The Kroger Co.*, No.

13  2:22-cv-02082-MEMF-RAO, 2023 WL 9511156, at *14 (C.D. Cal. Sept. 22, 2023)

14  ("Binding Ninth Circuit precedent seems to support the class certification

15  approach . . . .").

16        In November 2024, the Ninth Circuit reiterated in an unpublished opinion that

17  courts "apply Rule 23, not Article III standing, to analyze purported dissimilarities

18  between class representatives and unnamed class members." *Johnson v. Nissan N.*

19  *Am., Inc.*, No. 22-16644, 2024 WL 4784367, at *2 (9th Cir. Nov. 14, 2024)

20  (unpublished) (citing *Melendres*, 784 F.3d at 1262); *accord Nunez v. Saks Inc.*, 771

21  F. App'x 401, 402 (9th Cir. 2019) (unpublished) ("The district court erred by

22  concluding at the pleading stage that [the plaintiff] lacked standing to assert claims

23  on behalf of putative class members. Because [the plaintiff] has demonstrated

24  standing to pursue his individual claims, the district court should have deferred

25  consideration of whether he was an adequate class representative until the class

26  certification stage of proceedings.").

27        Your Honor applied *Melendres* in *Stotz v. Mophie Inc.*, holding that because

28  the named plaintiffs had standing, "whether Plaintiffs may be allowed to present

claims on behalf of others in the class who have purchased similar, but not identical, products will therefore be determined on an assessment of typicality and adequacy of representation at the motion for class certification stage." *Stotz v. Mophie Inc.*, No. 16-cv-08898-GW-FFM, 2017 WL 1106104, at *6 (C.D. Cal. Feb. 27, 2017).

Your Honor reaffirmed this approach two years later in *Sotelo v. Rawlings Sporting Goods Co.* In that case, the plaintiff alleged the defendant violated the UCL and CLRA because its youth baseball bat weighed more than advertised, and he sought to represent a class of purchasers of any model of the bat. *Sotelo v. Rawlings Sporting Goods Co.*, No. 18-cv-09166-GW-MAA, 2019 WL 4392528, at *1-2 (C.D. Cal. May 8, 2019). The defendant sought dismissal, arguing the plaintiff lacked standing to represent purchasers of bats he did not purchase. *Id.* at *3. The court held it would "find, in keeping with *Melendres* [and] *Stotz* . . . that this issue is appropriate for resolution at the class certification stage and does not merit dismissal at this point in the litigation." *Id.* at *4. *Sotelo* recognized the practical reality that "without class discovery Plaintiff *could not know* which other bats are similarly mislabeled without purchasing one of every model and weighing the bats himself." *Id.*

Numerous California federal decisions have followed *Melendres* and rejected arguments that plaintiffs lack standing to sue regarding unpurchased products. *E.g.*, *Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-cv-07271-JST, 2024 WL 5205539, at *10 (N.D. Cal. Dec. 23, 2024) ("After *Melendres*, this Court and others in this district have applied the class certification approach to whether class representatives may represent a class of individuals who purchased different products from the class representatives."); *Minor v. Favorite World, LLC*, No. 24-cv-04425-JFW-AJR, 2024 WL 4834951, at *3 (C.D. Cal. Sept. 17, 2024); *Boldt v. Caesarstone USA, Inc.*, 760 F. Supp. 3d 1016, 1022 (C.D. Cal. 2024) (declining to dismiss allegations regarding unpurchased countertop models); *Hardy v. Mitsubishi Motors N. Am., Inc.*, No. 8:21-cv-01983-MEMF-KES, 2023 WL 4067408, at *1, *5-6 (C.D. Cal. Mar. 30, 2023) (following *Melendres* in case alleging undisclosed defects in automobiles; noting

that "to the extent that the CVT transmission and the underlying defect are the same or substantially similar, it should not matter which specific vehicles Plaintiffs purchased, just as it does not matter that one purchaser of a vehicle may have purchased a vehicle with a red exterior and beige interior where another purchased one with a black exterior and black interior"); *Mendoza v. Electrolux Home Prods., Inc.*, No. 1:20-cv-01133-DAD-BAM, 2022 WL 4082200, at *1, *5-7 (E.D. Cal. Sept. 6, 2022) (following *Melendres* and *Tinsley* in case alleging misrepresentations regarding defective microwaves); *Grivas v. Metagenics, Inc.*, No. 15-cv-01838-CJC-DFM, 2018 WL 6185978, at *1, *3-5, *4 n.5 (C.D. Cal. Mar. 19, 2018) (following *Melendres*, *Kirola*, and *Stotz* in case alleging fifteen food products were misbranded as "medical food").

For another example, in *Scheibe v. Fit Foods Distribution, Inc.*, the plaintiff had only purchased the blue raspberry flavor of the "Mutant GEAAR" essential amino acid powder at issue, and, like here, there was no dispute that the plaintiff had standing to assert claims based on that purchase. *Scheibe v. Fit Foods Distribution, Inc.*, No. 23-cv-00220-JLS-AHG, 2023 WL 7434964, at *1, *7-8 (S.D. Cal. Nov. 8, 2023). The plaintiff, however, like Enriques here, also sought "to represent the claims of consumers who purchased any flavor of the Mutant GEAAR powder," and the defendant argued the plaintiff lacked standing to do so. *Id.* The court observed that as in *Melendres*, there was a "disjuncture between the claims of [Plaintiff] and those of absent class members." *Id.* Following *Melendres* and *Nunez*, the court found that "this disjuncture is not grounds for dismissing Plaintiff's claims at the pleading stage for lack of standing." *Id.* Citing *Stotz*, the court concluded, "[w]hether Plaintiff may represent claims by other consumers based on the labeling for other flavors of the Mutant GEAAR powder is a question to be resolved at the class certification stage of the litigation." *Id.*; *see also Barrett v. Optimum Nutrition*, No. 21-cv-04398-DMG-SK, 2022 WL 2035959, at *1, *6-7 (C.D. Cal. Jan. 12, 2022) (following *Melendres* in slack fill case regarding protein powder).

Numerous California federal decisions have also applied *Melendres* and its progeny in other contexts. *E.g.*, *Thakur v. Trump*, No. 25-cv-04737-RFL, 2025 WL 2325390, at *5 n.3 (N.D. Cal. Aug. 12, 2025); *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 762, 774-75 (N.D. Cal. 2025) (Video Privacy Protection Act); *Weinberg v. Twitter, Inc.*, No. 23-cv-04016-AMO, 2024 WL 3908112, at *1, *5 (N.D. Cal. Aug. 21, 2024) (employment discrimination); *Mitchell v. NY & Co Ecomm LLC*, No. 23-cv-10117-MWF-MRW, 2024 WL 1328333, at *4-5 (C.D. Cal. Mar. 26, 2024) (deceptive pricing); *B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 WL 1343305, at *1, *4 (C.D. Cal. Feb. 1, 2024) (use of computer code to track users on websites).

The Court should follow *Melendres*, *Kirola*, *Tinsley*, *Nunez*, and *Johnson* and the host of decisions above and deny Defendants' request for dismissal of the Shakes Plaintiff did not purchase.

Defendants argue the Court should not "defer ruling" on whether Plaintiff has standing to sue for unpurchased products and instead "assess standing now." Mem. 11-14. This argument fundamentally misapprehends Ninth Circuit law, "confus[ing] the standing analysis in a class action for the class certification analysis." *Tinsley*, 922 F.3d at 967. *Melendres* and the authorities above do not hold courts should defer ruling on *standing*. Instead, they hold that once the court is satisfied the named plaintiff has standing, it should defer ruling on whether the named plaintiff is typical of, and may adequately represent, absent class members who have suffered similar, but not identical injuries. *Melendres*, 784 F.3d at 1262. Here, Plaintiff undisputedly has standing to pursue claims concerning the Chocolate and Vanilla 330 mL Shakes. Under *Melendres*, *Nunez*, and the many other authorities above, whether he may represent purchasers of the other Shakes is a class certification issue.

Similarly, Defendants contend Plaintiff lacks individual standing to sue regarding unpurchased Shakes. Mem. 7-8. *Scheibe* rejected this argument. There, the defendant argued "Plaintiff, to the extent he is suing as an individual, cannot

1    bring claims regarding flavors of the Product that he did not purchase." *Scheibe*,

2    2023 WL 7434964, at *7 n.2. The court stated it was "not clear from Plaintiff's

3    Complaint that Plaintiff asserts any claims regarding other flavors of the Product

4    outside of his status as a potential class representative." *Id.* "Indeed, Plaintiff," like

5    Enriques here, "argues only that he can serve as a representative for the claims of

6    consumers who purchased other flavors." *Id.* The court therefore declined to address

7    the argument. *Id.*

8        Defendants also contend Plaintiff must demonstrate standing for each claim

9    he seeks to press. Mem. 6-7. As a general matter, Plaintiff does not disagree with

10   this proposition, but in seeking to apply it, Defendants again misconstrue the law.

11   At class certification, Plaintiff will show that his claims regarding the Chocolate and

12   Vanilla 330 mL Shakes "do not 'implicate a significantly different set of concerns'"

13   than the absent class members' claims regarding Chocolate and Vanilla Shakes in a

14   different *container size* or the absent class members' claims regarding different

15   *flavors* of the Shakes in the same container size, *see* FAC ¶ 111; under Supreme

16   Court precedent, Plaintiff may adequately represent the class in such a scenario, and

17   both Rule 23 and Article III are satisfied, *Gratz v. Bollinger*, 539 U.S. 244, 263, 265

18   (2003); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (named plaintiffs

19   can adequately represent class claims that are "fairly encompassed by the named

20   plaintiff's claims"). Defendants, in seeking to finely parse between 330 mL and 355

21   mL sizes and between the various Shake flavors, are asking the Court to "employ

22   too narrow or technical an approach" to determining what constitutes "the same kind

23   of injury," which the Ninth Circuit has counseled against. *Melendres*, 784 F.3d at

24   1263.

25       Defendants rely on decisions requiring plaintiffs attempting to assert a claim

26   for violation of a state's law to be injured within that state, including *Stemmelin v.*

27   *Matterport, Inc.*, No. 20-cv-04168-WHA, 2020 WL 6544456, at *3-4 (N.D. Cal.

28   Nov. 7, 2020); *In re Capacitors Antitrust Litigation*, 154 F. Supp. 3d 918, 928 (N.D.

Cal. 2015); *Sihler v. Fulfillment Lab, Inc*, No. 3:20-cv-01528-H-MSB, 2020 WL 7226436, at *15-16 (S.D. Cal. Dec. 8, 2020); and *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1020-21 (S.D. Cal. 2020). Mem. 6-7, 12, 13. Many courts have distinguished *Melendres* from these circumstances. *Stemmelin*, for example, explained:

> The legal distinction . . . is that the named plaintiffs in *Melendres* asserted the *same* constitutional injury as the class; they just alleged different circumstances. But the dissimilarity of circumstances raised *within the same claim* was "relevant only to class certification, not to standing." . . . Here, where Mr. Stemmelin raises *separate* claims under the laws of several states, the general requirement of standing for *each* claim and mode of relief . . . remains unsatisfied.

*Stemmelin*, 2020 WL 6544456, at *3; *accord Sihler*, 2020 WL 7226436, at *16; *Goldstein*, 445 F. Supp. 3d at 1020-21; *but see Barrales v. New Chapter, Inc.*, No. 2:25-cv-01171-HDV-KES, 2025 WL 1584424, at *3 n.2 (C.D. Cal. June 4, 2025) (following *Melendres* where plaintiff sought to bring California state law claims on behalf of non-California class members); *Patterson v. RW Direct, Inc.*, No. 18-cv-00055-VC, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018) ("[The plaintiff] does not himself seek to raise a claim under the laws of a different state; rather, he seeks to represent a class member who can raise such a claim."); *Hamzeh v. Pharmavite LLC*, No. 24-cv-00472-HSG, 2025 WL 621891, at *4 (N.D. Cal. Feb. 26, 2025) (following *Patterson*). Here, Plaintiff asserts claims under California law and has not alleged claims under the laws of other states. FAC ¶¶ 123-77. Plaintiff therefore does not run afoul of *Stemmelin*, *Capacitors*, *Sihler*, or *Goldstein*.

### 3.    All Products Are Substantially Similar

If the Court applies a "substantial similarity" test at the pleading stage, the Shakes easily satisfy that standard. "Substantial similarity" analysis examines "whether the challenged products are of the same kind, whether they are comprised

1   of largely the same ingredients, and whether each of the challenged products bears
2   the same alleged mislabeling." *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025,
3   1043 (C.D. Cal. 2022).
4          California courts have found substantial similarity in circumstances like this
5   action. In *Astiana v. Dreyer's Grand Ice Cream, Inc.*, the plaintiffs challenged "All
6   Natural Flavors" and "All Natural Ice Cream" labels on ice cream products under
7   three brand names (Dreyer's, Edy's, and Haagen-Dazs) that they had not all
8   purchased, arguing the products contained artificial ingredients. *Astiana v. Dreyer's
9   Grand Ice Cream, Inc.*, No. 11-cv-02910-EMC, 2012 WL 2990766, at *1-2 (N.D.
10  Cal. July 20, 2012). The court declined the defendant's request to dismiss the
11  unpurchased products, finding "Plaintiffs are challenging the same kind of food
12  products (i.e., ice cream) as well as the same labels for all of the products—i.e., 'All
13  Natural Flavors' for the Dreyer's/Edy's products and 'All Natural Ice Cream' for the
14  Haagen-Dazs products." *Id.* at *13. Critically, the court found that "different ice
15  creams may ultimately have different ingredients," but this was "not dispositive as
16  Plaintiffs are challenging the same basic mislabeling practice across different
17  product flavors." *Id.* The court noted "many of the ingredients are the same—i.e., 21
18  out of 59 ice creams contain propylene glycol monostearate; 43 out of 59 contain
19  potassium carbonate; and all 59 appear to contain glycerin, mono and diglycerides,
20  tetrasodium pyrophosphate, and xanthan gum." *Id.*
21         Similarly, in *Colucci v. ZonePerfect Nutrition Co.*, the court found substantial
22  similarity among 20 different flavors of nutrition bars. *Colucci v. ZonePerfect
23  Nutrition Co.*, No. 12-cv-02907-SC, 2012 WL 6725377, at *5-6 (N.D. Cal. Dec. 28,
24  2012). The plaintiff had purchased only one flavor but sought to challenge "All-
25  Natural" labeling on all 20 varieties as deceptive due to the presence of artificial
26  ingredients. *Id.* at *2-3, *4-5. The court found all products were substantial similar,
27  explaining that:
28         [T]he accused products are all of a single kind, that is, they are all

1   nutrition bars. They share a uniform size and shape. On casual
2   inspection, the only obvious difference between the bars is their flavor.

3   *Id.* at *6. Most importantly, the court found "six of the nine challenged ingredients
4   appear in all twenty nutrition bar flavors," and "all twenty flavors bear the same
5   challenged label: 'All-Natural Nutrition Bars.'" *Id.* The court concluded the plaintiff
6   "has standing for both Article III and UCL purposes to sue for alleged mislabeling
7   of all twenty nutrition bar flavors." *Id.*; *see also Mendoza*, 2022 WL 4082200, at *7
8   n.9 (even assuming substantial similarity test applied, it was satisfied); *Ashton v.*
9   *J.M. Smucker Co.*, No. 20-cv-00992-JGB-SHK, 2020 WL 8575140, at *6 (C.D. Cal.
10  Dec. 16, 2020) (finding substantial similarity where "[a]ll the Products involve
11  ground coffee, the challenged representations are materially identical across each
12  Product, and Plaintiffs' theory of liability is uniform across all products").

13      Here, the Shakes are all substantially similar. Like the ice cream products in
14  *Astiana*, all Shakes are the same kind of product (protein shakes) with identical
15  labeling claims across all variants, i.e., "32g Plant Protein," "0g Sugar," and "0g Net
16  Carbs." *See supra* § II.A. Like the nutrition bars in *Colucci*, the Shakes share uniform
17  packaging, marketing, and core formulations with only flavor or size variations. *See*
18  *supra* §§ II.A-B. The Shakes share a standardized base formulation across all flavors
19  and container sizes, with the same protein blend and most all other ingredients
20  appearing in every variant. *See supra* § II.B. And Plaintiff's systematic laboratory
21  testing showing consistent discrepancies across all Products confirms the alleged
22  misrepresentations are uniform across the entire Product line, not flavor-specific
23  anomalies. *See supra* § II.C.

24      Defendants' reliance on *Ochoa v. Zeroo Gravity Games LLC* is misplaced.
25  *See* Mem. 1, 10. In *Ochoa*, the defendant published two casino-style slot games for
26  mobile devices which the plaintiff alleged included deceptive in-game promotions,
27  including the game "Cash Tornado." *Ochoa v. Zeroo Gravity Games LLC*, No. 22-
28  cv-05896-GW-AS, 2023 WL 4291974, at *1 (C.D. Cal. Feb. 1, 2023). The defendant

1  argued the plaintiff lacked standing to sue as to Cash Tornado because she did not
2  allege she downloaded, played, or made a purchase in it. *Id.* at \*6. The plaintiff's
3  pleading made no allegation that Cash Tornado was substantially similar to the other
4  game. *Id.* at \*7. The court held the plaintiff failed to state a claim as to Cash Tornado
5  and lacked standing to bring claims regarding it. *Id.* at \*8. The opinion did not
6  mention *Melendres*, *Kirola*, or *Tinsley*, presumably because the parties did not raise
7  them. Further, computer games are complex, and there is no reason to believe the
8  programming or playing experience of the two games was at all similar. Here, by
9  contrast, Plaintiff pleads extensive allegations as to the unpurchased Shakes, which
10  are simply container size and flavor variants of the purchased Shakes. *See supra* § II.
11  The circumstances here are legally and factually entirely distinct from *Ochoa*.

12      The court should decline Defendants' invitation to follow *Lorentzen v. Kroger*
13  *Co. See* Mem. 1-2, 8-11, 15. As the Court pointed out in granting leave to amend,
14  *Lorentzen* itself acknowledges Ninth Circuit courts have split as to whether plaintiffs
15  may assert claims as to substantially similar products. *Lorentzen v. Kroger Co.*, 532
16  F. Supp. 3d 901, 908 (C.D. Cal. 2021); ECF No. 45 at 4. Moreover, *Lorentzen* did
17  not mention *Melendres*, *Kirola*, or *Tinsley*, presumably because the parties did not
18  raise them. Here, the Court should follow Ninth Circuit precedent.

19      *TransUnion LLC v. Ramirez*, upon which Defendants rely, also does not aid
20  them. *See* Mem. 9-11. As the Court noted in granting leave to amend, "*TransUnion*
21  did not discuss the Ninth Circuit's 'substantial similarity' test and is not helpful to
22  the inquiry here." *Clevenger v. Welch Foods Inc.*, No. 20-cv-01859-CJC-JDE, 2022
23  WL 16964009, at \*4 (C.D. Cal. Feb. 25, 2022); ECF No. 45 at 4 n.8. In *TransUnion*,
24  many class members suffered no "concrete harm" whatsoever. *TransUnion*, 594
25  U.S. at 441. The Supreme Court held these uninjured class members could not
26  recover. *Id.* Here, when Plaintiff and all putative class members paid a price
27  premium for the deceptively-labeled Shakes, they all suffered monetary harm, which
28  *TransUnion* recognized is a one of the "traditional tangible harms" that "readily

1   qualify as concrete injuries under Article III." *Id.* at 425.

2        Defendants cite *Ang v. Bimbo Bakeries USA, Inc.* for the proposition that

3   "where the actual composition . . . of the product is legally significant to the claim

4   at issue, the consumer may only be allowed to pursue claims for products with

5   identical product composition," Mem. 14 (quoting *Ang v. Bimbo Bakeries USA, Inc.*,

6   No. 13-cv-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014)), but

7   that statement is dicta. *Ang* denied the defendant's motion to dismiss, except as to

8   claims regarding the words "fresh" and "baked daily" on products the plaintiff did

9   not purchase (which were dismissed). *Id.* at *9-10. The court reasoned that

10  "numerous contextual determinations" were "needed regarding each [unpurchased]

11  product's label, ingredients, and appearance" to determine the accuracy of the

12  "fresh" and "baked daily" statements as to the unpurchased products; it did not hold,

13  however, that the unpurchased products had to be dismissed because the ingredients

14  were not identical. *Id. Ang* provides no support for Defendants.

15       *Murphy v. Olly Public Benefit Corp.*, which Defendants cite, is inapposite. *See*

16  Mem. 14-15. In *Murphy*, the plaintiffs did not test all of the unpurchased products at

17  issue and, instead, supplied "speculative and conclusory" allegations that the non-

18  purchased, non-tested products had the problem at issue. *Murphy v. Olly Pub. Benefit*

19  *Corp.*, 651 F. Supp. 3d 1111, 1131 (N.D. Cal. 2023). Here, Plaintiff has tested all

20  Shakes and found discrepancies as to all of them. *See supra* § II.C.

21       Furthermore, to the extent that *Ang* and *Murphy* demand that ingredients and

22  quantities be identical, they contradict Ninth Circuit authority, which has warned

23  against being too persnickety when assessing similarity of injury. Assessing class

24  certification, *Melendres* held the named plaintiffs were adequate class

25  representatives because their claims "do not 'implicate a significantly different set

26  of concerns' than the unnamed plaintiffs' claims." *Melendres*, 784 F.3d at 1263

27  (quoting *Gratz*, 539 U.S. at 265); *see Grivas*, 2018 WL 6185978, at *4 n.4. The court

28  instructed that "[i]n determining what constitutes the same type of relief or the same

kind of injury, 'we must be careful not to employ too narrow or technical an approach.'" *Melendres*, 784 F.3d at 1263. "Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Id.* The rigid approach for which Defendants advocate flies in the face of *Melendres* and *Gratz* and should be rejected.

Finally, Defendants suggest the manufacture of the Shakes at "different facilities around the country" somehow impacts Plaintiff's claims. Mem. 15. Plaintiff, however, has more than plausibly demonstrated a systematic quality control problem with all Shakes, regardless of where they may be manufactured. *See supra* § II.C. And the Moose Declaration admits to a systematic quality control problem affecting all Shakes. Decl. Moose ¶¶ 6-7.

### 4.    Plaintiff Has Statutory Standing

Defendants argue Plaintiff lacks statutory standing under the UCL, FAL, and CLRA to pursue claims as to the unpurchased Shakes for the same reasons he lacks Article III standing. *See* Mem. 15. California courts addressing this argument, however, have rejected it on facts like those at bar. *Poulopoulos v. OpticsPlanet, Inc.*, No. 2:24-cv-02511-JLS-KS, 2024 WL 3822774, at *3-4 (C.D. Cal. Aug. 8, 2024); *Battle*, 607 F. Supp. 3d at 1041-43; *Williams v. Under Armour, Inc.*, No. 24-cv-01567 JGB-SSC, 2025 WL 1415744, at *4-5 (C.D. Cal. Apr. 7, 2025).

### B.    The FAC States a Claim against SGFC

The Court should not dismiss Plaintiff's claims against SGFC. Plaintiff alleges SGFC acquired OWYN in June 2024 for $280 million, and OWYN is now operated as a SGFC "brand." FAC ¶ 10. This allegation may support both successor liability and direct liability. The conversion of OWYN into a "brand" of SGFC may support a continuation theory under California law, which recognizes successor liability when a transaction amounts to a merger or continuation of the seller's business. *See Ray v. Alad Corp.*, 560 P.2d 3, 7 (Cal. 1977). Plaintiff also alleges SGFC itself has continued marketing the Elite PRO line post-acquisition using the

1  same deceptive labeling, subjecting SGFC to direct liability.

2      At the pleading stage, Plaintiff cannot know whether OWYN continues as a

3  wholly-owned subsidiary with independent liability or whether it has been or is

4  being integrated and merged into SGFC's operations.[2] All information necessary to

5  determine the actual structure and operational control is uniquely in the possession

6  of Defendants themselves. To dismiss SGFC now would effectively penalize

7  Plaintiff for lacking access to facts that only the two Defendants know and control.

8  Plaintiff therefore respectfully requests that the Court allow him to pursue discovery

9  to ascertain the relationship between OWYN and SGFC and the details of the

10  acquisition. *See Jones v. AIG Risk Mgmt., Inc.*, 726 F. Supp. 2d 1049, 1056 (N.D.

11  Cal. 2010) ("The Court has the ability to permit [] discovery . . . where, as here,

12  relevant evidence is solely within the province of Defendants, leaving open the

13  possibility of further amendment."); *cf. Santiago v. Walls*, 599 F.3d 749, 758-59 (7th

14  Cir. 2010) (improper to discuss complaint where lack of specificity is due to facts

15  plaintiff cannot know for certain without discovery); *Tompkins v. Lasalle Bank*

16  *Corp.*, No. 09-cv-03906, 2009 WL 4349532, at *3 (N.D. Ill. Nov. 24, 2009) (plaintiff

17  should be afforded opportunity to conduct discovery into liability of parent

18  corporation before summary judgment).

19      Defendants' arguments as to vicarious liability, Mem. 16-17, are inapposite

20  because Plaintiff does not seek to hold SGFC liable on a vicarious liability theory.

21

22

---

23  [2] Plaintiff reviewed SGFC's public filings, press releases, and website before filing
but could not determine whether OWYN remains a stand-alone subsidiary or has
24  been fully integrated as a SGFC "brand." Public references point to overlap: SGFC
lists OWYN among its "brands"; its former CEO now serves as "Senior Vice
25  President and General Manager, OWYN" at SGFC,
http://www.thesimplygoodfoodscompany.com/corporate-governance/management
26  (click image of Mark Olivieri); and SGFC's Vice President of Food Safety and
Quality publicly identifies oversight of the "OWYN brand" as part of her role, *see*
27  https://foodscience.ucdavis.edu/people/anika-bansal#/. Because the true structure
and control remain solely within Defendants' knowledge, Plaintiff named SGFC to
28  ensure all potentially responsible parties are before the Court.

1   ## C.    <u>Standing to Pursue Injunctive Relief</u>

2          The Court should follow *Sotelo* and reject Defendants' argument that Plaintiff

3   lacks standing to seek injunctive relief because he does not assert he would like to

4   purchase the Shakes again in the future. *See* Mem. 19; *Sotelo*, 2019 WL 4392528, at

5   *4. Similarly to *Sotelo*, Plaintiff alleges repeated instances in which Shakes of sizes

6   or flavors different from the ones Plaintiff purchased also bore a label

7   misrepresenting their protein, carbohydrate, and net carb content. *Id.*; *see supra*

8   §§ II.A-C. And as in *Sotelo*, Plaintiff's UCL and FAL claims "provide for injunctive

9   relief as a specified remedy that is entirely a function of the statute and that does not

10  require any showing of the plaintiff's intention to purchase the product in the future."

11  *Sotelo*, 2019 WL 4392528, at *4. Thus, because Plaintiff has undisputedly "shown

12  individual injury," he "can seek injunctive relief for the benefit of the public as to

13  the defendant's improper conduct that caused the injury." *Id.*

14         If, however, the Court decides Plaintiff lacks standing to pursue injunctive

15  relief, it should not extinguish the public-facing remedy with prejudice. Instead, the

16  Court should sever and remand the injunctive-only piece to state court under

17  principles of fairness and comity, as the state court's ability to issue an injunction is

18  not constrained by Article III. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,

19  970 n.6 (9th Cir. 2018) (declining to resolve "whether severance and remand, as

20  opposed to dismissal, is the appropriate option where standing is lacking for only

21  some claims or forms of relief"). Alternatively, the Court should dismiss the claim

22  for injunctive relief without prejudice to refiling in state court. *See O'Dea v. RB*

23  *Health (US) LLC*, 779 F. Supp. 3d 1135, 1144 (C.D. Cal. 2025) (dismissing claims

24  for injunctive relief without prejudice for lack of standing). In either scenario,

25  Plaintiff agrees to stay the state action until this Court decides class certification,

26  thereby avoiding duplicative proceedings while preserving the statutory remedy

27  California law provides.

28

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' partial motion to dismiss the FAC. If the Court grants any part of the motion, Plaintiff respectfully requests leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a)(2).

Date: September 4, 2025                              Respectfully submitted,

**REESE LLP**

By:  */s/ George V. Granade*
George V. Granade (SBN 316050)
ggranade@reesellp.com
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese (SBN 206773)
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**THE LAW OFFICE OF ALEC PRESSLY**
Alec Pressly (State Bar No. 348054)
alec@presslylegal.com
3110 Main Street Building C, #331
Santa Monica, California 90405
Telephone: (603) 809-6601

**PRESSLY LAW GROUP PLLC**
George Pressly (*pro hac vice* to be filed)
gpressly@presslylaw.com
155 North Wacker Drive Suite 4250
Chicago, Illinois 60606-1750
Telephone: (603) 320-7030

**SAFIRSTEIN LAW LLC**
Peter Safirstein (*pro hac vice* to be filed)
psafirstein@safirsteinlaw.com
45 North Broad Street
Suite 100
Ridgewood, New Jersey 07450
Telephone: (917) 952-9458

*Counsel for Plaintiff Emmett Enriques and the Proposed Class*

OPPOSITION TO PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT

23

1    <u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**</u>

2        The undersigned, counsel of record for Plaintiff Emmett Enriques and the

3    proposed class, certifies that this brief contains 6,999 words, which complies with

4    the word limit of Local Rule 11-6.1.

5

6    Date: September 4, 2025                    By:  */s/ George V. Granade*

7                                                          George V. Granade

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28