1 | Matthew Borden, Esq. (SBN: 214323)
    borden@braunhagey.com
2 | David H. Kwasniewski, Esq. (SBN: 281985)
    kwasniewski@braunhagey.com
3 | H. Chelsea Tirgardoon, Esq. (SBN: 340119)
    tigardoon@braunhagey.com
4 | BRAUNHAGEY & BORDEN LLP
    747 Front Street, 4th Floor
5 | San Francisco, CA 94111
    Tel: (415) 599-0210
6 | Fax: (415) 276-1808

7 | *Attorneys for Defendants The Simply Good*
    *Foods Co. and Only What You Need, Inc.*
8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 |

12 |

13 | EMMETT ENRIQUES, individually and on behalf of all others similarly situated,

14 |            Plaintiffs,

15 |     v.

16 |

17 | ONLY WHAT YOU NEED, INC., a Delaware Corporation; THE SIMPLE GOOD FOODS COMPANY, a Delaware

18 | Corporation; AND DOES 1 THROUGH 70, INCLUSIVE,

19 |            Defendants.

Case No. 2:24-cv-08969-GW-BFM

**DEFENDANTS THE SIMPLY GOOD FOODS COMPANY AND ONLY WHAT YOU NEED, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Date:** September 25, 2025
**Time:** 8:30 a.m.
**Judge:** Hon. George H. Wu

20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

I.   PLAINTIFF LACKS ARTICLE III STANDING ...........................................2

     A.   Plaintiff's Claim That He Can Sue Over Products He Never Bought Is Foreclosed by This Court's Precedent, Supreme Court Precedent, and Article III................................................................................2

         1.   Plaintiff fails to adequately address *Ochoa* and *TransUnion* .....3

         2.   *Melendres* does not apply to the issues in Defendants' motion ...............................................................................5

         3.   Plaintiff cannot sue over products he never bought ..................8

     B.   The Accused Shakes Are Not Substantially Similar ...........................9

II.   PLAINTIFF LACKS STATUTORY STANDING .......................................12

III.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST SIMPLY GOOD FOODS ........................................................................13

IV.   PLAINTIFF LACKS STANDING TO SEEK INJUNTIVE RELIEF.........................................................................15

CONCLUSION..................................................................................................17

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Allee v. Medrano*,
  416 U.S. 802 (1974)...................................................................................7

*Ang v. Bimbo Bakeries USA, Inc.*,
  No. 13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) . 10, 11, 12

*Ashton v. J.M. Smucker Co.*,
  No. 20-cv-00992-JGB-SHK, 2020 WL 8575140 (C.D. Cal. Dec. 16, 2020) ........ 11

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  No. C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ................... 10

*Butler v. Adoption Media, LLC*,
  486 F. Supp. 2d 1022 (N.D. Cal. 2007)................................................. 14

*CenterPoint Energy, Inc. v. Superior Ct.*,
  157 Cal. App. 4th 1101 (2007) ............................................................. 14

*Chan v. ArcSoft, Inc.*,
  No. 19-CV-05836-JSW, 2020 WL 13891272 (N.D. Cal. Sept. 16, 2020)............ 14

*Chang v. Cashman*,
  No. 22-CV-02010-AMO, 2024 WL 2941516 (N.D. Cal. June 11, 2024)............. 14

*Colucci v. ZonePerfect Nutrition Co.*,
  No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ......................... 10

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .............................................................. 16

*Doe v. Skyway House, Inc.*,
  No. 216CV00627TLNCMK, 2017 WL 2984878 (E.D. Cal. July 13, 2017) ......... 15

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................ 13

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)......................................................................... 8, 9

*Ibarra v. Pharmagenics LLC*,
  660 F. Supp. 3d 914 (C.D. Cal. 2023) .................................................. 16

*Johns v. Bayer Corp.*,
  No. 09CV1935 DMSJMA, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .............. 13

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004) ............................................................ 14

*Lorentzen v. Kroger Co.*,
  532 F. Supp. 3d 901 (C.D. Cal. 2021) ............................................... 1, 13

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) ....................................................... 1, 5, 6

*Mendoza v. Electrolux Home Prods., Inc.*,
   No. 1:20-cv-01133-DAD-BAM, 2022 WL 4082200
   (E.D. Cal. Sept. 6, 2022) .................................................................................. 10, 11
*Murphy v. Olly Pub. Benefit Corp.*,
   651 F. Supp. 3d 1111 (N.D. Cal. 2023) .................................................................. 12
*Ochoa v. Zeroo Gravity Games LLC*,
   No. 22-CV-05896-GW-AS, 2023 WL 4291974 (C.D. Cal. Feb. 1, 2023) ...... 1, 2, 3
*Raya v. Mead Johnson Nutrition Co.*,
   758 F. Supp. 3d 819 (N.D. Ill. 2024) ....................................................................... 7
*Sotelo v. Rawlings Sporting Goods Co., Inc.*,
   No. CV 18-9166-GW(MAAX), 2019 WL 4392528 (C.D. Cal. May 8, 2019) ...... 16
*Stemmelin v. Matterport, Inc.*,
   No. C 20-04168 WHA, 2020 WL 6544456 (N.D. Cal. Nov. 7, 2020) ................... 9
*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021) .................................................................... 7
*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) .................................................................. 15
*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).................................................................................................. 4, 5
*Zakikhan v. Hyundai Motor Co.*,
   No. 8:20-CV-01584-SB (JDEX), 2021 WL 4805454
   (C.D. Cal. June 28, 2021) .................................................................................... 4, 13

**Statutes**

42 U.S.C. § 1983................................................................................................................ 1

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC

Defendants respectfully submit this reply in support of their Partial Motion to Dismiss the First Amended Complaint.

## **INTRODUCTION**

In his opposition, Plaintiff offers no explanation for why he wants to sue over products he did not purchase. On page 17 of his brief, he finally addresses this Court's decision in *Ochoa v. Zeroo Gravity Games LLC* but omits this Court's reasoning from his discussion. No. 22-CV-05896-GW-AS, 2023 WL 4291974 (C.D. Cal. Feb. 1, 2023).

In *Ochoa*, this Court rejected the same argument Plaintiff makes here: "Plaintiff states that other courts have permitted class plaintiffs to assert claims for 'substantially similar' products in some circumstances . . . . However, Defendant's citation to *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021), is more persuasive." 2023 WL 4291974, at *8 (citations omitted). In describing why it applied the analysis in *Lorentzen* and not the judge-made substantial similarity test, this Court explained: "[T]he 'substantial similarity' analysis is in direct tension with the notion of standing. The substantial similarity of a product says nothing about whether a party suffered an injury traceable to the allegedly wrongful conduct of another. A plaintiff who is falsely led to buy a product may claim injury resulting from that purchase; the same plaintiff, however, cannot claim injury from similarly false advertising upon which he or she did not injuriously rely." *Id*.

*Ochoa*, which dismissed unpurchased product claims under Rule 12(b)(1), and its reasoning—that a plaintiff cannot be hurt by products he or she did not buy— control here. Contrary to Plaintiff's brief, no Ninth Circuit case has ever held that plaintiffs can sue over products they did not purchase. Plaintiff relies on *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), but that was a civil rights case predating the Supreme Court's recent standing cases and has nothing to do with Plaintiff's species of litigation. *Melendres* involved people who had suffered harm from a racial profiling policy suing a racist sheriff under 42 U.S.C. § 1983; whereas Plaintiff is a

friend of his lawyer, who admittedly could not be bothered to read his own pleading before his lawyer filed it, suing over products that could not have harmed him. *Melendres* turned on injuries from a policy of mistreating a group of people; whereas Plaintiff claims that he was hurt by being misled by the labels on products he bought and "cannot claim injury from similarly false advertising upon which he or she did not injuriously rely." *Ochoa*, 2023 WL 4291974, at *8.

The remainder of Plaintiff's arguments separately fail. Plaintiff offers no cogent reason for why he would have standing to seek an injunction when he fails to allege that he intends to ever purchase the accused shakes in the future. The thesis of his substantial similarity argument—that the products look similar—ignores the evidence in the record, which shows that the guts of the products widely vary; they were made at different facilities, by different people, using different formulae. Finally, neither *Melendres* nor any other case supports Plaintiff's sue first, ask questions later approach in naming the company that acquired OWYN after Plaintiff supposedly made the purchases alleged in his pleading without having any factual basis to say that it did anything wrong.

As noted in the moving papers and unaddressed by Plaintiff, this case provides a paradigmatic example of why Article III exists. Absent strict enforcement of the immutable standing requirements, federal dockets would be even more awash with Plaintiff's false brand of injury-free litigation.

## <u>ARGUMENT</u>

## I.    PLAINTIFF LACKS ARTICLE III STANDING

### A.    Plaintiff's Claim That He Can Sue Over Products He Never Bought Is Foreclosed by This Court's Precedent, Supreme Court Precedent, and Article III

Defendants' motion laid out the straightforward argument that because Plaintiff lacks standing to sue for products he never purchased, his claims regarding unpurchased products should be dismissed. (Mot. at 5-8.) Plaintiff attempts to sow confusion by repeating the refrain that this is a "class certification issue," citing

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC

*Melendres*. (Opp. at 9-15.) Plaintiff also asks this Court to disavow its most recent pronouncement on this very issue in *Ochoa*. (Opp. at 17-18.) These arguments should be rejected. This Court correctly decided *Ochoa*, and *Melendres* does not apply to the issues here.

### 1.    Plaintiff fails to adequately address *Ochoa* and *TransUnion*

Noticeably missing from Plaintiff's opposition is any meaningful contention with this Court's decision in *Ochoa*. The plaintiff in *Ochoa*, just like Plaintiff here, attempted to bring a class action lawsuit for products she never purchased. 2023 WL 4291974, at *6. There, the plaintiff brought CLRA, UCL, FAL, and common law claims related to two casino-style mobile phone games. *Id.* at *1. The plaintiff alleged that both games used the same misleading promotions to create a false sense of urgency in players to make in-app purchases. *Id.* at *6. The plaintiff, however, had only downloaded and played one of those games. *Id.* Like Defendants here, the defendant moved to dismiss her claims to the extent they related to the game the plaintiff had not played, Cash Tornado. *Id.* The plaintiff attempted to argue that the two games were substantially similar because they were both "casino-style games" and had "identical game mechanics and operations." *Id.* at *7. But this Court rejected that argument and held that the "'substantial similarity' analysis ***is in direct tension with the notion of standing***." *Id.* at *8 (emphasis added). This Court dismissed the plaintiff's claims related to Cash Tornado for lack of standing because "Plaintiff did not use Cash Tornado, let alone suffer an economic injury stemming from it." *Id.*

Plaintiff's attempt to address *Ochoa* is buried in his discussion of whether the accused shakes are substantially similar. (Opp. at 17-18.) Plaintiff offers nothing more than the contention that this Court should diverge from its own precedent because the parties presumably did not cite the cases that Plaintiff cites, namely, *Melendres*. This argument is unavailing. *Melendres* did not fabricate a "substantial similarity" test for false advertising cases. As this Court observed in *Ochoa*, such a rule, at least in the context of false advertising claims, is inconsistent with Article III.

This is especially true in light of numerous subsequent cases that further define the structural limits of Article III. As noted in Defendants' moving papers, many courts including this Court have followed *Lorentzen* and the teachings of *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) and hold that the "substantial similarity" test cannot substitute for standing. (Mot. at 10-11.)

Contrary to Plaintiff's arguments, many of these courts expressly reject the notion that *Melendres* created a substantial similarity test in cases involving the purchase of goods. For example, in *Zakikhan v. Hyundai Motor Co.*, the plaintiff brought a putative class action raising CLRA, UCL, FAL, and common law claims arising from defects in the anti-lock brake systems in 14 different car models. No. 8:20-CV-01584-SB (JDEX), 2021 WL 4805454, at *1 (C.D. Cal. June 28, 2021). The named plaintiffs only purchased some of those models. *Id.* at *5. Defendant moved to dismiss those claims and the claims of non-California residents, and in response, the plaintiffs argued that the court "should defer its consideration of standing until the class certification stage" under *Melendres*. *Id.* at *6. The Court rejected the plaintiffs' reliance on *Melendres* and held—like this Court did in *Ochoa*—that "the substantial-similarity theory ***is inconsistent with basic principles of Article III standing*.**" *Id.* at *5 (emphasis added). Moreover, the court found that *TransUnion* confirmed that the substantial similarity test is no substitute for standing, noting that the "U.S. Supreme Court recently reaffirmed these standing principles, concluding that Article III standing is neither 'dispensed in gross' nor dispensed with in class actions." *Id.* at *5 (quoting *TransUnion*, 594 U.S. at 431). The court dismissed the plaintiffs' claims arising from any car they did not purchase. *Id.* at *6.

It is true that *TransUnion* did not address the judge-made substantial similarity test, but that does not diminish the importance of its holding that class allegations cannot alter the bedrock rules of standing. Plaintiff does not meaningfully contend with *TransUnion*. Plaintiff claims that his suit does not run afoul of *TransUnion* because unnamed class members purportedly purchased the accused shakes at a

premium. (Opp. at 18.) For purposes of this motion, any unnamed class members' ability to show standing is beside the point. As explained in the moving papers, *TransUnion* clarified that "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." 594 U.S at 427; Mot. at 9-10. Here, Plaintiff seeks to hold Defendants liable for what he claims are legal infractions, even though he admittedly suffered no injury from four of the six accused shakes. An unidentified class of purported plaintiffs cannot remedy this defect.

### 2. *Melendres* does not apply to the issues in Defendants' motion

Citing *Melendres*, Plaintiff claims that Defendants have "confused" standing issues with class certification. (Opp. at 9.) Not so. *Melendres* does not control the issues presented here. For one, *Melendres* does not address the substantial similarity test. This is unsurprising, given that the substantial similarity test is a district court invention within the consumer products realm. At least in the false advertising arena, where the claims are predicated on the specific purchases that supposedly caused the injury, the substantial similarity test cannot be reconciled with the requirements of Article III standing.

Additionally, the holding of *Melendres* has no application to the issues raised in Defendants' motion. The plaintiffs in *Melendres* alleged that the Maricopa County Sheriff and Sheriff's Office had carried out a "custom, policy and practice" of profiling Latino drivers and passengers in violation of the Fourth and Fourteenth Amendments. 784 F.3d at 1258, 1261. The plaintiffs alleged that the county employed racial profiling during "saturation patrols" and regular patrols. *Id.* at 1258. During "saturation patrols," officers would target a particular location with the purpose of using traffic stops to find people who had violated immigration laws. *Id.* The district court certified a class and found that the county employed an unconstitutional practice of considering race in both the saturation and regular traffic patrols. *Id.* On appeal, the county argued that the class should be partially decertified

because there was no evidence to support a Fourth or Fourteenth Amendment claim as to the two named plaintiffs who were stopped during regular patrol. *Id.* at 1261. The Ninth Circuit declined to partially decertify the class. *Id.* at 1264. Because the county's unconstitutional profiling policies "applied to both" saturation and regular patrols, the named plaintiffs stopped during a saturation patrol were adequate representatives for the whole class. *Id.* at 1263. The unlawful conduct in *Melendres* was a single unconstitutional policy of profiling drivers during traffic patrols, and the injunctive class need not be limited to the particular factual circumstances in which each named plaintiff had been unconstitutionally stopped.[1]

What Plaintiff highlights from *Melendres* is the Ninth's Circuit's clarification that any divergence between the "interests" of the named plaintiff and the interests of the purported class should be addressed at class certification. *Id.* at 1262; *see* Opp. at 10. Defendants' motion, however, is not premised on the notion that merely the "interests" or injuries between Plaintiff and unnamed putative class members are different; it is that Plaintiff is not injured at all by the products he did not buy. Unlike the plaintiffs in *Melendres*, Plaintiff here does not challenge a single policy or practice at OWYN that causes harm in different factual circumstances. Rather, Plaintiff alleges that he was injured by the representations on the labels of two protein shakes. Under *Melendres*, Plaintiff's injury "defines the scope of the controversy he . . . is entitled to litigate." *Id.* at 1261. Plaintiff does not dispute that he lacks standing to assert any claim for shakes he did not buy. Thus, any claim arising from those unpurchased shakes must be dismissed. These straightforward facts do not turn on the "dissimilarities in injuries between named and unnamed plaintiffs." *See id.* at 1262.

---

[1] This policy was so stubborn and persistent that Defendant Sheriff Joe Arpaio was subsequently convicted of criminal contempt for violating the injunction by continuing his policy of detaining Latino people based on race.

*Melendres* is inapplicable for the additional reason that it addresses a totally different subject matter. *Melendres* considers the constitutional claims asserted by a class seeking a permanent injunction to stop racial profiling in a county sheriff's office. Here, on the other hand, Plaintiff seeks to recoup attorney's fees and *de minimus* alleged economic injuries arising from the labels of two protein shakes. The nuanced issues related to the boundaries of a class who suffered injuries related to a single unconstitutional practice are not present here.

Instead of trying to follow a made up "rule" that has no basis in Article III and nothing to do with *Melendres*, the Court should follow its correct decision in *Ochoa*[2] and those of many other federal courts that dismiss class action claims for products no named plaintiff ever purchased. *See, e.g.*, Mot. at 10-11 (collecting cases); *see also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1125 & n.3 (S.D. Cal. 2021) (rejecting plaintiff's reliance on *Melendres* and stating: "The fact that this action is a putative class action does not excuse Plaintiffs' obligation to show standing for each claim asserted."); *Raya v. Mead Johnson Nutrition Co.*, 758 F. Supp. 3d 819, 829 (N.D. Ill. 2024) (citing *TransUnion*, concluding that named plaintiff lacks standing to assert claims for products she never purchased, and rejecting plaintiff's request to "delay resolving this question until class certification").

Plaintiff also attempts to sidestep the axiomatic rule that a plaintiff—like Plaintiff here—cannot claim economic injury from a product he never purchased. (Opp. at 13-14.) Plaintiff argues that he asserts these claims solely in the capacity as purported class representative on behalf of others who did in fact purchase the accused shakes. (Opp. at 14.) But—"[s]tanding cannot be acquired through the back door of a class action." *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part). In its moving papers, OWYN explained how *TransUnion* makes,

---

[2] This case is even worse than *Ochoa* in that it tries to import multiple unpurchased products instead of just one.

1  and amplifies, this very point (Mot. at 9-10), and Plaintiff's opposition makes no

2  attempt to even address this. Plaintiff's argument highlights precisely why Article

3  III's standing requirements leave no room for the substantial similarity test. Plaintiff

4  must demonstrate injury in fact for each claim he asserts. He cannot do so, and thus,

5  his claims as to the unpurchased shakes should be dismissed.

6        **3.    Plaintiff cannot sue over products he never bought**

7        Plaintiff also claims that Defendants "misconstrue the law" in applying the

8  general rule that a plaintiff must have standing for each claim he asserts. (Opp.

9  at 14.) Again, Plaintiff tries to obfuscate this simple rule with inapposite case law.

10  Plaintiff cites to *Gratz v. Bollinger*, 539 U.S. 244, 265 (2003), for the proposition

11  that his claim related to certain protein shakes does not "implicate a significantly

12  different set of concerns" than it does for other shakes he never purchased. *Gratz*,

13  however, does not permit Plaintiff to sue for products he never bought. *Gratz* was a

14  reverse discrimination case, where the Supreme Court held that University of

15  Michigan's race-based point system unconstitutionally denied students admission

16  based on race. *Id.* at 251. One issue in *Gratz* was whether the class representatives

17  had standing to represent both freshman applicants and undergraduate transfer

18  applicants. *Id.* at 262-63. One class representative was denied admission as a

19  freshman and intended to apply again as a transfer student. *Id.* at 262. The Supreme

20  Court held that the representative had standing to challenge the university's use of

21  race in all undergraduate admissions—for freshmen and transfers—because the use

22  of a race-based point system in both applicant pools raised the same constitutional

23  concerns. *Id.* at 264-65.

24        The Supreme Court's ruling on this issue in *Gratz* makes perfect sense. In

25  *Gratz*—like the plaintiffs in *Melendres*—the plaintiffs challenged a single policy.

26  That single policy allegedly harmed both freshmen and transfer applicants—like the

27  sheriff's racial profiling policy in *Melendres* harmed individuals stopped during

28  saturation and regular patrol. Here, on the other hand, Plaintiff indisputably has

standing to challenge only the two protein shakes he purchased. Thus, the "harm" implicated by Plaintiff's claims arises only from those two protein shakes. Plaintiff's attempt to coopt the Court's ruling in *Gratz* should be rejected.

Finally, Plaintiff takes issue with Defendants' reliance on cases holding that a named plaintiff lacks standing to assert claims under the laws of states of unnamed class members. (*See* Mot. at 6-7.) In doing so, Plaintiff further underscores why *Melendres* has no bearing on the issues here. Plaintiff provides the following quotation from *Stemmelin v. Matterport, Inc.*, in which the court explains why the "class certification approach" under *Melendres* does not apply: "the named plaintiffs in *Melendres* asserted the *same* constitutional injury as the class; they just alleged different circumstances. . . . Here, where Mr. Stemmelin raises *separate* claims under the laws of several states, the general requirement of standing for *each* claim and mode of relief articulated in *DaimlerChrysler* remains unsatisfied." *Stemmelin v. Matterport, Inc.*, No. C 20-04168 WHA, 2020 WL 6544456, at *3 (N.D. Cal. Nov. 7, 2020); *see* Opp. at 15.

This quotation highlights precisely the distinction between *Melendres* and Plaintiff's claims. In *Melendres*, the named plaintiff asserted claims under the Constitution arising from the defendant's systematic practice using racial profiling during traffic patrols. Here, by contrast, Plaintiff asserts claims arising from discrete alleged injuries from six different products. Like the plaintiffs in *Stemmelin* who attempted to assert claims under various state laws, Plaintiff here lacks standing to assert claims for any product he did not purchase.

## B. The Accused Shakes Are Not Substantially Similar

Plaintiff's attempts to avoid dismissal separately fail because the products he accuses are not substantially similar. Plaintiff argues that the shakes are all substantially similar because they are all "protein shakes" with similar labels. (Opp. at 17.) Yet Plaintiff's claims turn not on the shakes' labels, but rather their composition, which Plaintiff's own testing confirms varied from shake to shake from

time to time. (FAC ¶¶ 54, 59, 71, 82 (alleging nutrient content varied from 30% less to 266.7% more than what was stated on the label).) Plaintiff's own pleading is fatal to his argument that the shakes are substantially similar. *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014) (where the "composition" of a product is "legally significant," a plaintiff may only "pursue claims for products with identical product composition").

Plaintiff principally relies on *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012), and *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012), to argue that the substantial similarity test is satisfied if the products at issue are the same "kind," "size," and "shape." (Opp. at 16-17.) But those cases both involved allegations that the products at issue were mislabeled because they claimed to be "All Natural" yet contained unnatural ingredients. The plaintiffs' claims in those cases thus turned solely on the presence, *vel non*, of any unnatural ingredients—the precise composition of the products was not legally significant. *Astiana*, 2012 WL 2990766, at *13 (finding the differences in composition of products "not dispositive" because products all were alleged to contain some synthetic ingredients like glycerin and tetrasodium pyrophosphate); *Colucci*, 2012 WL 6737800, at *4 (products were substantially similar because they all claimed to be "All-Natural" yet all contained at least six synthetic ingredients).

The other authority cited by Plaintiff likewise does not support his position. In *Mendoza v. Electrolux Home Prods., Inc.*, No. 1:20-cv-01133-DAD-BAM, 2022 WL 4082200 (E.D. Cal. Sept. 6, 2022), the Court did not apply the substantial similarity test because it found that the named plaintiffs had purchased all the accused microwaves. *Id.* at *6. While the Court noted in a footnote that plaintiffs' allegations likely would have satisfied the substantial similarity test, this was because the accused microwaves all made the same alleged "identical" misrepresentations, and "those common misrepresentations"—not the products' composition—"are the

crux of Plaintiffs' case." *Id.* at *7 n.9. Similarly, in *Ashton v. J.M. Smucker Co.*, No. 20-cv-00992-JGB-SHK, 2020 WL 8575140 (C.D. Cal. Dec. 16, 2020), Plaintiffs claimed that Folgers systematically and uniformly overestimated the amount of coffee that could be brewed from its pre-ground coffee. *Id.* at *2. This claim, too, did not turn on the composition of the products, but rather the mathematical impossibility of making 240 cups of coffee from only 173 servings of coffee grounds. *Id.*

Plaintiff nonetheless argues that the substantial similarity test is satisfied here because the products have "identical labeling claims across all variants." (Opp. at 17.) That is not correct. As the FAC expressly acknowledges, the shakes' labels have changed over time, and in particular, prior to 2024, claimed 35 grams of protein (versus 32 since), 7 grams of carbohydrates (versus 3 since), and 7 grams of dietary fiber (versus 3 since). (FAC ¶¶ 31 n.3, 36. n.4.) Moreover, even if the shakes' labels were the same, the crux of Plaintiff's case is that the shakes' compositions differed from the labels by varying degrees over time, making the shakes' composition, not the label, the legally significant factor. Contrary to Plaintiff's assertions, Plaintiff's testing does not show "consistent discrepancies across all Products." (Opp. at 17.) For example, Plaintiff alleges that some shakes had as much or more protein than claimed on the label at various points in time (*e.g.*, FAC ¶ 93 (alleging that in 2024 all shakes except 330mL Vanilla had approximately 32 grams of protein or more, as stated on the label).) Plaintiff also alleges that some flavors had more carbohydrates than others (*e.g.*, FAC ¶ 71 (alleging Sea Salted Caramel had 6.9 grams of carbohydrates while 330mL Chocolate had nearly twice as much, 13.4 grams).)

This case is thus on all fours with *Ang*, which denied a plaintiff standing to sue over various types of bread he did not purchase that were allegedly mislabeled as "fresh" because "fact-specific analyses of each product will be required; namely determination of each product's ingredients and formation to determine whether each is in fact 'processed and preserved' to such a level that the use of the term 'fresh' becomes misleading." 2014 WL 1024182, at *9. The Court's ruling is not "dicta," as

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC

Plaintiff asserts (Opp. at 19), but rather central to its holding, in which the Court granted a motion to dismiss the plaintiff's "fresh" claims but allowed him to proceed on other labeling claims where the products "compositions would not impact the legal analysis."[3] 2014 WL 1024182, at *9.

Lastly, Plaintiff, citing *Melendres*, argues that the Court should not be too "persnickety" when assessing whether Plaintiff's alleged injury is similar to those of other members of the putative class. (Opp. at 19.) But according to the FAC, someone who purchased a 355mL Vanilla shake in October 2023 got a shake with 27.6 grams of protein (4.4 grams less than advertised), whereas someone who purchased the same shake seven months later got a product with 32.5 grams of protein (0.5 grams more than advertised). There is no similarity at all between someone who was allegedly shorted 4.4 grams of protein and someone who received a bonus half gram. As in *Ang*, a "fact-specific" inquiry is necessary to determine whether and to what extent anyone was injured based on the composition of OWYN's shakes at any point in time. Accordingly, under the facts alleged in the FAC, the products are not substantially similar.

## II.    PLAINTIFF LACKS STATUTORY STANDING

Defendants move to dismiss Plaintiff's statutory claims for the additional reason that he lacks statutory standing to assert any such claim for products he never purchased. In response, Plaintiff cites three district court cases that defer resolution of the named plaintiff's standing until class certification. As explained above and as many courts have held, Plaintiff's approach is incorrect as a matter of Article III standing in consumer products cases where a named plaintiff seeks to bring class claims for a list of products he or she never bought. Several courts have reached the

---

[3] Plaintiff's attempt to distinguish *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111 (N.D. Cal. 2023), is similarly unavailing. Plaintiff argues that *Murphy* does not apply because the plaintiff in that case did not test the other products he claimed were misleading. But here, Plaintiff's testing shows the products are different, not similar, which only underscores Plaintiff's lack of standing.

same conclusion as to the issue of statutory standing. *See, e.g.*, *Lorentzen*, 532 F. Supp. 3d at 909 n.4 (the substantial similarity "test is also at odds with the statutory standing requirement. . . . A plaintiff cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon." (quotation and citation omitted)); *Zakikhan*, 2021 WL 4805454, at *6 ("[E]ven if the Plaintiffs were able to establish Article III standing to assert claims for alleged injury arising out of a product they did not purchase, they would not have statutory standing to assert them."); *Johns v. Bayer Corp.*, No. 09CV1935 DMSJMA, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (concluding that the "statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit" the named plaintiff to sue for products he did not purchase). Plaintiff's statutory claims should be dismissed for this additional reason.

## III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST SIMPLY GOOD FOODS

Defendants moved to dismiss Simply Good Foods because Plaintiff alleges no facts showing that it had any involvement with the accused shakes before Plaintiff incurred his alleged injury. Nor could it, because Simply Good Foods acquired OWYN in June 2024, at least one month after Plaintiff purchased the shakes. (FAC ¶ 10.) Plaintiff's opposition argues that Simply Good Foods is directly liable and liable under the "mere continuation" theory of successor liability. (Opp. at 20.) Both arguments fail.

As to successor liability, Plaintiff's own allegations affirmatively disprove his "mere continuation" theory. To plead the mere continuation theory of successor liability, the plaintiff must allege facts showing that "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; [and that] (2) one or more persons were officers, directors, or stockholders of both corporations." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1133 (C.D. Cal. 2015) (alteration in original) (citing

1    *CenterPoint Energy, Inc. v. Superior Ct.*, 157 Cal. App. 4th 1101, 1120 (2007)).

2    Additionally, "the 'mere continuation' doctrine also requires that the selling entity

3    dissolve—because only one corporation may remain after the transaction." *Butler v.*

4    *Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1064 (N.D. Cal. 2007)

5       Here, Plaintiff does not allege that Simply Good Foods did not pay adequate

6    consideration for OWYN. In fact, to the contrary, the FAC underscores the purchase

7    price as being particularly high. (FAC ¶ 10.) Plaintiff does not, and cannot, allege

8    that the purchase price was insufficient consideration for any potential liability

9    arising from OWYN's protein shakes. Plaintiff's successor liability theory fails on

10    that basis alone. *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394

11    F.3d 1143, 1150 (9th Cir. 2004) ("Inadequate consideration is an 'essential

12    ingredient' to a finding that one entity is a mere continuation of another."); *Chang v.*

13    *Cashman*, No. 22-CV-02010-AMO, 2024 WL 2941516, at *2 (N.D. Cal. June 11,

14    2024) (successor liability continuation theory fails because plaintiff failed to allege

15    inadequate consideration).

16       Plaintiff's successor liability theory also fails because Plaintiff makes no claim

17    that OWYN fails to maintain its corporate form separate from Simply Good Foods.

18    The evidence defeating such a theory is a matter of public record.[4] Because OWYN

19    as a corporate entity still exists, Plaintiff cannot allege that Simply Good Foods is a

20    mere continuation of OWYN. *See Chan v. ArcSoft, Inc.*, No. 19-CV-05836-JSW,

21    2020 WL 13891272, at *15 (N.D. Cal. Sept. 16, 2020) ("[C]ourts also generally find

22    that successor liability under the mere continuation doctrine is not established where

23    the predecessor entity that was purportedly acquired by the successor still exists.");

24    *Butler*, 486 F. Supp. 2d at 1066 ("[T]he LLCs cannot be considered a 'mere

25    continuation' of the Adoption.com partnership because the partnership still exists in

26    its previous legal form").

27

28    [4] *See* https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx.

Plaintiff's argument that Simply Good Foods is directly liable for Plaintiff's alleged injuries fails for two reasons. First, Defendant explained in its moving papers that Plaintiff fails to allege any facts that meet the heightened pleading standard required to bring a CLRA, UCL, or FAL claim. (Mot. at 17-18.) Plaintiff offered no response whatsoever to this argument in opposition. Thus, that argument is waived. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (quotation omitted)).

Second, Plaintiff does not allege that he sustained any injury after Simply Good Foods acquired OWYN, which precludes a finding of direct liability. Plaintiff's sole argument in support of direct liability is that after the acquisition, OWYN continued to use the "same deceptive labeling" that it used pre-acquisition. (Opp. at 20-21.) But Plaintiff cannot hold Simply Good Foods liable for any conduct that occurred *after* he supposedly sustained his injuries. Plaintiff provides no authority to support such a proposition, nor is there any. *See Doe v. Skyway House, Inc.*, No. 216CV00627TLNCMK, 2017 WL 2984878, at *5 (E.D. Cal. July 13, 2017) (dismissing claim against parent company because "Plaintiffs have not shown an injury in fact arising after Skyway House LLC took ownership"). The claims against Simply Good Foods should be dismissed with prejudice.

## IV.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

Defendants' moving papers also explain that under Ninth Circuit precedent, Plaintiff lacks standing to seek injunctive relief because the FAC contains no allegation that Plaintiff would like to purchase the accused shakes in the future.[5] In opposition, Plaintiff contends that his claim for injunctive relief survives because he

---

[5] Notably, Plaintiff fails to include injunctive relief in his prayer for relief. (*See* FAC, at 50.)

1  alleges that shakes of different sizes and flavors allegedly misrepresent nutritional

2  facts. (Opp. at 22.) Plaintiff's position is misplaced and should be rejected.

3      As a threshold matter, Plaintiff does not dispute that the FAC contains no

4  allegation stating that he intends to purchase the shakes in the future. That omission

5  is fatal as a matter of pleading. Under *Davidson v. Kimberly-Clark Corp.*, a plaintiff

6  seeking injunctive relief in a false advertising consumer products case must plausibly

7  allege a "threat of future harm." 889 F.3d 956, 969 (9th Cir. 2018). Plausible

8  allegations of future harm include that the plaintiff "will be unable to rely on the

9  product's advertising or labeling in the future, and so will not purchase the product

10  although she would like to" or that he "might purchase the product in the future,

11  despite the fact it was once marred by false advertising or labeling, as she may

12  reasonably, but incorrectly, assume the product was improved." *Id.* at 969-70. A

13  complaint devoid of any such allegation forecloses a claim for injunctive relief. *See*

14  *Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914, 921 (C.D. Cal. 2023) (dismissing

15  claim for injunctive relief in consumer products case because plaintiff does not "even

16  claim that he intends to purchase the product at issue").

17      Seeking a different result, Plaintiff points to *Sotelo v. Rawlings Sporting*

18  *Goods Co., Inc.*  No. CV 18-9166-GW(MAAX), 2019 WL 4392528 (C.D. Cal.

19  May 8, 2019). But in *Sotelo*, the defendant had argued that plaintiff would never

20  have standing to seek injunctive relief because defendant released a new line of

21  baseball bats every year. *Id.* at *4. Thus, "[u]nder Defendant's theory, a manufacturer

22  could continually rebrand a product each year, without fixing a known defect, and

23  never be subject to a claim for injunctive relief as to that problem." *Id.* That is not the

24  situation here. OWYN does not rebrand its shakes every year. It continues to

25  manufacture the same two shakes that plaintiff purchased. Yet Plaintiff does not

26  allege that he intends or desires to purchase those shakes ever in the future. Under

27  *Davidson*, Plaintiff cannot sustain a claim for injunctive relief. 889 F.3d at 969-70.

28

1    Plaintiff alternatively asks the Court to split off his injunctive relief claim from

2  this case and allow him to refile a separate, duplicative lawsuit in state court. The

3  Court should reject this request. Plaintiff has protracted this litigation long enough—

4  at Defendants' cost, including, most recently, by asking for leave to amend to assert

5  the claims that he now says he wants to file in a duplicative case. This would unfairly

6  prejudice Defendants, which have already been forced to expend substantial

7  resources defending against claims regarding products Plaintiff never bought, which,

8  as this Court correctly found, could have been avoided by Plaintiff simply reviewing

9  his complaint before it was filed. Plaintiff has cited no case in which a court has in

10  fact purposefully split claims arising from the same common nucleus of operative

11  fact in this manner. This case should not be the first.

## CONCLUSION

13    For the foregoing reasons and the reasons given in the opening memorandum

14  of law, Defendants respectfully request that the Court grant their motion to dismiss

15  under Rule 12(b)(1) and 12(b)(6).

17  Dated: September 11, 2025

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:   */s/ Matthew Borden*

Matthew Borden, Esq.

*Attorneys for Defendants The Simply Good Foods Co. and Only What You Need, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH THE WORD COUNT</u>

The undersigned, counsel of record for the Defendants, certifies that this brief contains 5,752 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 11, 2025

*/s/ Matthew Borden*
Matthew Borden, Esq.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC