UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-8969-GW-BFMx | Date | September 23, 2025 |
|---|---|---|---|
| Title | *Emmett Enriques v. Only What You Need, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS THE SIMPLY GOOD FOODS COMPANY AND ONLY WHAT YOU NEED, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [51]

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [51] set for hearing on September 25, 2025 at 8:30 a.m.

:

Initials of Preparer   JG

<u>**Emmett Enriques v. Only What You Need, Inc. et al**</u>; Case No. 2:24-cv-08969-GW-(BFMx)
Tentative Ruling on Partial Motion to Dismiss the First Amended Complaint

Before the Court is Defendants' Partial Motion to Dismiss the First Amended Complaint ("FAC") (the "Motion"). *See* Motion, Docket No. 51. The Court has considered the Motion, Plaintiff's opposition ("Opp.," Docket No. 54), and Defendants' reply ("Reply," Docket No. 56). For the reasons stated herein, the Court would **GRANT** the Motion **IN PART** with leave to amend and **DENY** the Motion **IN PART**.

**I.     Background**

On September 12, 2024, Plaintiff Emmett Enriques ("Plaintiff") brought a putative class action against Only What You Need, Inc. ("OWYN"), The Simply Good Foods Company ("SGFC"), and Does 1-70 (collectively, the "Defendants"), in Los Angeles County Superior Court, asserting six causes of action relating to the alleged mislabeling of five of Defendants' ready-to-drink protein shakes and seeking both injunctive and monetary relief based upon: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; (3) violations of the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, et seq.; (4) breach of express and implied warranties; (5) negligent misrepresentation; and (6) unjust enrichment. *See generally* Complaint, Docket No. 1-1. Defendants removed the action to this Court on October 17, 2024, invoking diversity jurisdiction. *See* Notice of Removal, Docket No. 1. After receiving the parties' report under Fed. R. Civ. P. 26(f), the Court held a scheduling conference on December 16, 2024, at which it set the date for a hearing on Plaintiff's motion for class certification of July 31, 2025. *See* Docket No. 19.

On May 29, 2025, Plaintiff sought to amend the Complaint.[1] *See* Docket No. 26. On June 17, 2025, the Court issued a tentative ruling indicating that, although Plaintiff demonstrated a lack of diligence in filing the original Complaint and unduly delayed seeking leave to file an amended complaint, Defendants failed to demonstrate the prejudice adequate to defeat the motion under Fed. R. Civ. P. 15(a)(2). *See* Docket No. 33, at 2-5. On June 26, 2025, the Court heard oral

---

[1] During discovery, Plaintiff conceded in his deposition that he had never purchased at least four of the five shakes identified in the Complaint. *See* Docket No. 45, at 1. "Plaintiff s[ought] leave to amend the Complaint largely in order to add allegations regarding the sixth shake, and to revise parts of the Complaint that suggested Plaintiff had purchased products that he had not." *Id.* at 2.

1

argument on Plaintiff's motion for leave to file an amended complaint, requested simultaneous supplemental briefing, and vacated the hearing on Plaintiff's motion for class certification. *See* Docket No. 35. On July 18, 2025, the Court did not diverge from its tentative ruling and granted Plaintiff's motion for leave to file an amended complaint. *See* Docket No. 49. On August 4, 2025, Plaintiff filed the FAC. *See* Docket No. 50. The Court's review of the FAC reveals the following allegations.[2]

Plaintiff seeks to represent "similarly situated consumers . . . who purchased for personal, family, or household use, the following ready-to-drink protein shakes marketed and sold by Defendants: (1) Elite PRO Chocolate, 355mL; (2) Elite PRO Vanilla, 355mL; (3) Elite PRO Plant Powered Drink, Vanilla, 330mL; (4) Elite PRO Plant Powered Drink, Chocolate, 330mL; (5) Elite PRO Plant Powered Drink, No Nut Butter Cup, 330mL; and (6) Elite PRO Plant Powered Drink, Sea Salted Caramel, 330mL (collectively, the "Shakes" or "Products")."[3] *Id.* ¶ 1. Plaintiff alleges that Defendants sold these ready-to-drink protein shakes with "labels and packaging [that] contain numerous material misrepresentations about the amount of macronutrients in the Products." *Id.* ¶¶ 1-2. Relying on these alleged misrepresentations, Plaintiff – a resident of Los Angeles County – purchased the Elite PRO Plant Powered Drink, Vanilla, 330mL, and the Elite PRO Plant Powered Drink, Chocolate, 330m in 2024. *Id.* ¶¶ 5-6. Plaintiff alleges that he "was injured when he paid the purchase price and/or a price premium for the Shakes that did not deliver what Defendants promised." *Id.* ¶ 7.

On August 18, 2025, Defendants filed the instant Motion. *See* Motion.

## II. Legal Standard

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant "fair notice of what

---

[2] The well-pled facts therein are accepted as true for the purpose of this ruling. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

[3] OWYN markets and sells six product lines, one of which is "a line of substantially similar ready-to-drink protein shakes it calls 'Elite PRO' Shakes." FAC ¶ 18. Plaintiff alleges that the shakes in this line "have a consistent formulation." *Id.* ¶ 29.

the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under Rule 12(b)(6), the court must: (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell*, 266 F.3d at 988; *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). In its consideration of the motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Twombly*, 550 U.S. at 561-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).

### B. Rule 15(a)

Under Federal Rule of Civil Procedure 15(a)(2), federal courts are instructed to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). A district court, however, may in its discretion deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### III. Discussion

Defendants assert that (1) Plaintiff has neither Article III nor statutory standing to assert claims with respect to the Shakes that he never purchased; (2) Plaintiff's claims against SGFC should be dismissed because SGFC acquired OWYN after the alleged injury; and (3) Plaintiff lacks standing to assert any claim for injunctive relief because Plaintiff does not allege that he intends to purchase any of the Shakes in the future. *See* Motion at 1-3. Plaintiff contends in

3

opposition that (1) Plaintiff has Article III standing for his purchases of two of the Shakes and whether he may represent purchasers of other Shakes is a question for class certification; (2) SGFC remains a proper defendant based on successor liability and its continued marketing of the OWYN brand; and (3) certain state law claims in this action specifically provide injunctive relief as a statutory remedy for Plaintiff's alleged injury. *See* Opp. at 1. The Court begins with Defendants' arguments regarding standing.

### A. Standing

Defendants assert that Plaintiff lacks both constitutional and statutory standing to bring any claims related to the four Shakes that he did not purchase. *See* Motion at 5. Defendants also assert that Plaintiff lacks standing to seek injunctive relief. *See id.* at 19.

#### 1. Standing to Assert Class Claims

Defendants assert that "Plaintiff lacks standing to assert any claim relating to any product that he did not buy because he suffered no injury related to those products." *Id.* at 7 (citing *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1010-20 (N.D. Cal. 2013)). Plaintiff contends in opposition that "Defendants' argument confuses standing analysis with class certification analysis." Opp. at 9. Specifically, Plaintiff argues that "[t]he Court should follow *Melendres v. Arpaio* and hold that because Plaintiff has standing to pursue claims regarding the Chocolate and Vanilla 330mL Shakes, Article III is satisfied and whether he may represent absent class members who purchased other similar Shakes is a class certification question." *Id.*

"Article III of the Constitution requires that a plaintiff have standing before a case may be adjudicated." *Covington v. Jefferson Cnty.*, 358 F.3d 626, 637 (9th Cir. 2004). For Article III standing, a plaintiff must show: (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's challenged action; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See, e.g., Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Article III standing is a threshold issue, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998), and the plaintiff bears the burden of demonstrating her standing for each claim. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

The Court acknowledges that "[t]here is a division of authority as to whether class action plaintiffs have standing to bring claims for products that they did not personally purchase but that

4

were purchased by unnamed class members." *Cordes v. Boulder Brands USA, Inc.*, No. 2:18-cv-06534-PSG-(JCx), 2018 WL 6714323, at *5 (C.D. Cal. Oct. 17, 2018). In *Melendres v. Arpaio*, the Ninth Circuit acknowledged that although standing and class certification are overlapping concepts, "[t]hey spring from different sources and serve different functions." 784 F.3d 1254, 1261 (9th Cir. 2015) (citation omitted), *cert. denied sub nom. Maricopa Cnty., Ariz. v. Melendres*, 577 U.S. 1062 (2016). "*Standing* is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate. *Class certification*, on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class." *Id.* (emphasis in original). When there is a "disjuncture between the claims of named plaintiffs and those of absent class members," courts have inconsistently classified the disjuncture as either "an issue of standing" or "an issue of class certification." *Id.* (citation omitted). Under the "standing approach," courts "say the disjuncture deprived the named plaintiff of standing to obtain relief for the unnamed class members." *Id.* at 1261 (citation omitted). By contrast, under the "class certification" approach, courts hold that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id.* (citation omitted).

The Ninth Circuit has expressly adopted the "class certification" approach. *Id.* (recognizing that this approach has been "embraced several times (though not always) by the Supreme Court" and "'most' other federal courts" (citations omitted)); *see also B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019). Accordingly, "any issues regarding the relationship between the class representative and the passive class members – such as dissimilarity of injuries suffered – are relevant only to class certification, not to standing." *Id.* at 1262 (citations omitted). While *Melendres* arose out of claims that the defendants adopted a discriminatory policing policy targeting Latinos, this Court has applied its holding in the consumer class action context, where the named plaintiffs purported to represent class members who had purchased products the named plaintiffs had not alleged they had purchased.[4] *See, e.g., Sotelo v. Rawlings*

---

[4] Defendants raise this Court's prior decision in *Ochoa v. Zeroo Gravity Games LLC*, No. 2:22-cv-05896-GW-(ASx), 2023 WL 4291974 (C.D. Cal. Feb. 1, 2023), to suggest that this Court has taken the "standing approach." *See* Motion at 1, 10; Reply at 3-4. In *Ochoa*, the defendant published casino-style slot games for mobile devices that involved two types of in-game promotions for virtual bundles that were alleged to constitute false and deceptive advertisements. *See Ochoa*, 2023 WL 4291974, at *1. The parties disputed whether the plaintiff had standing to bring claims related to one of the games because she did not personally download it or make a purchase within it. *See id.* at *8. The Court dismissed those claims because "Plaintiff did not use Cash Tornado, let alone suffer an economic injury

5

*Sporting Goods Co.*, No. 2:18-cv-09166-GW-(MAAx), 2019 WL 4392528, at *3-4 (C.D. Cal. May 8, 2019); *Stotz v. Mophie Inc.*, No. 2:16-cv-08898-GW-(FFMx), 2017 WL 1106104, at *6 (C.D. Cal. Feb. 27, 2017).

Here, Defendants do not dispute that Plaintiff has standing to bring claims for the two Shakes that he did purchase, or that other individuals in the putative class did purchase the other Shakes. The Court would find that Plaintiff's allegations sufficiently establish his Article III standing as pleaded. In light of *Melendres*, whether Plaintiff "may be allowed to present claims on behalf of others in the class who have purchased similar but not identical, products will be determined on an assessment of typicality and adequacy of representation at the motion for class certification stage."[5] *Stotz*, 2017 WL 1106104, at *6 (citations omitted).

2. <u>Substantial Similarity of Products</u>

Defendants assert that "Plaintiff c[an]not establish substantial similarity between the products he purchased and the ones he did not." Motion at 14. "The prevailing view in the Ninth Circuit is that class action plaintiffs can bring claims for products they did not purchase as long as the products and alleged misrepresentations are substantially similar." *Cordes v. Boulder Brands USA, Inc.*, No. 2:18-cv-06534-PSG-(JCx), 2019 WL 1002513, at *2 (C.D. Cal. Jan. 30, 2019) (quoting *In re 5-Hour ENERGY Mktg. & Sales Pracs. Litig.*, No. 2:13-ml-02438-PSG-(PLAx), 2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014)). "Courts often postpone the inquiry about the

---

stemming from it." *Id.* Plaintiff asserts that Defendants' reliance on *Ochoa* is misplaced because (1) there was "no allegation that Cash Tornado was substantially similar to the other game"; (2) this Court's "opinion did not mention *Melendres* . . . "; and (3) "computer games are complex, and there is no reason to believe the programming or playing experience of the two games was at all similar." Opp. at 17-18. The Court has considered *Melendres* and reviewed how other district courts in this circuit have recently addressed the issue of whether a plaintiff lacks standing to sue for products he or she did not purchase. Notwithstanding this Court's approach in *Ochoa* and given that the present case is arguably distinguishable, this Court will apply the class certification approach to whether class representatives may represent a class of individuals who purchased different products from the class representatives.

[5] Defendants also argues that the Court should refrain from "defer[ring] ruling on whether [Plaintiff] has standing to sue for products he never purchased until class certification." *See* Motion at 11. The Court would agree with Plaintiff that this argument misunderstands the relevant Ninth Circuit law. *See* Opp. at 13. The argument that Defendants raise – whether the named plaintiff has "standing" to represent the claims of the unnamed plaintiffs – is a question of class certification, not standing. *See Melendres*, 784 F.3d at 1262. As Plaintiff indicates, "Plaintiff undisputedly has standing to pursue claims concerning the Chocolate and Vanilla 330mL Shakes" and "whether he may represent purchasers of the other Shakes is a class certification issue." Opp. at 13.

Defendants' reliance on cases like *Stemmelin v. Matterport, Inc.* is unwarranted where, as here, there are no claims for relief under the laws of different states. *See* No. 3:20-cv-04168-WHA, 2020 WL 6544456, at *3 (N.D. Cal. Nov. 7, 2020) ("Claims for relief under the laws of the several states are *separate* claims for relief and, per *DaimlerChrysler*, require separate proof of standing." (emphasis in original)). "Plaintiff asserts claims under California law and has not alleged claims under the laws of other states." Opp. at 15.

6

similarity of products until the class certification stage." *Cordes*, 2019 WL 1002513, at *2. This Court would be inclined to take this approach of allowing Plaintiff to assert claims based on the Shakes he did not purchase at the motion to dismiss stage pending a determination about substantial similarity at the class certification stage, especially in light of the fact that the FAC specifically alleges that "OWYN's Elite PRO Shakes are flavor variants of a standardized formulation and are all labeled, packaged, and marketed as a single uniform product line." FAC ¶ 28; *see Cordes*, 2018 WL 6714323, at *5. As with Defendants' arguments regarding standing, the Court would find that Defendants' arguments regarding the substantial similarity between the challenged Shakes would be better addressed at the class certification stage. *See, e.g.*, *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1043 (C.D. Cal. 2022).

      3. <u>Statutory Standing</u>

Defendants next assert that Plaintiff lacks statutory standing to assert claims under the UCL, FAL, and CLRA for the four Shakes that he did not purchase. *See* Motion at 15. Plaintiff contends in opposition that "California courts addressing this argument . . . have rejected it on facts like those at bar." Opp. at 20 (collecting cases).

When a plaintiff brings claims under the UCL, CLRA, and FAL, the plaintiff must establish additional statutory requirements to show standing.[6] The UCL and FAL require a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Battle*, 607 F. Supp. 3d at 1042 (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011)). Similarly, the CLRA requires that a plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage." *Id.* (quoting *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011)).

Here, Defendants make the same argument used to attack Plaintiff's Article III standing. *See* Motion at 15. Defendants claim that Plaintiff does not have statutory standing because he did not buy four of the Shakes at issue. *See id.* Nonetheless, Plaintiff specifically alleges that (1) "Plaintiff relied on the nutrient-related representations on the packaging and labels of the Products

---

[6] "Though lack of *statutory* standing requires dismissal for failure to state a claim" under Federal Rule of Civil Procedure 12(b)(6), "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis in original).

when making his purchases"; and (2) "[a]t the time of his purchases, Plaintiff was unaware that OWYN misrepresented the Products' macronutrient levels and would not have purchased the Products if the true macronutrient levels were disclosed, or would have paid less than he did." FAC ¶ 6. The Court would find Plaintiff's allegations are sufficient to confer statutory standing on Plaintiff's UCL, CLRA, and FAL claims.

    4. <u>Standing to Pursue Injunctive Relief</u>

Defendants assert that Plaintiff cannot plead Article III standing to seek injunctive relief because "Plaintiff has not, and cannot, demonstrate a threat of future injury" based on the absence of any "allegation that Plaintiff holds any intent to purchase any accused shake in the future." Motion at 19. Plaintiff contends in opposition that he "has undisputedly 'shown individual injury,'" and thus "can seek injunctive relief for the benefit of the public as to the defendant's improper conduct that caused the injury." Opp. at 22 (quoting *Sotelo*, 2019 WL 4392528, at *4).

In *Sotelo*, this Court rejected an argument similar to the one made by Defendants in this case. Specifically, the defendant in *Sotelo* argued that "Plaintiff cannot, and does not, assert that he would like to purchase the exact same, model of bat in the future and, therefore, Plaintiff cannot show likelihood that he will again be injured by the product at issue in the litigation.[7]" 2019 WL 4392528, at *4. This Court observed that this "argument ignores the fact that Plaintiff has alleged numerous instances in which customers complained that bats of a different size than the one Plaintiff purchased also bore a label" with a misrepresentation about the bat's weight. *Id.* Plaintiff asserts that "[s]imilarly to *Sotelo*, Plaintiff alleges repeated instances in which Shakes of sizes or flavors different from the ones Plaintiff purchased also bore a label misrepresenting their protein, carbohydrate, and net carb content." Opp. at 22. The Court would find that "it is completely reasonable for Plaintiff to assume that he could not depend on the accuracy of the [Shakes'] . . . labels and [packaging] in the future." *Sotelo*, 2019 WL 4392528, at *4. Therefore, Defendant's argument that Plaintiff lacks standing to pursue injunctive relief fails.[8]

---

[7] Defendants attempt to distinguish *Sotelo* by suggesting that, in contrast to the Shakes at issue, the bats in *Sotelo* were continually rebranded each year. *See* Reply at 16. Because the bats were rebranded every year, the plaintiff in *Sotelo* could not plausibly purchase "the exact same, model of bat in the future." *Sotelo*, 2019 WL 4392528, at *4. This Court, however, did not rely on this fact in concluding that the plaintiff could not depend on the accuracy of the bats' weight labels and advertisements in the future. The plaintiff in *Sotelo* pled "facts from which it [wa]s reasonable to conclude that several of Rawlings bats are labeled and advertised using an incorrect weight." *Id.*

[8] The Court would further note that, as in *Sotelo*, "certain of the causes of action which Plaintiff raises herein provide for injunctive relief as a specified remedy that is entirely a function of the statute and that does not require

Defendants' Motion with respect to standing is **DENIED**.

### B. Claims Against SGFC

Defendants assert that all claims against Defendant SGFC should be dismissed because "Plaintiff fails to allege facts showing any connection between [SGFC] and OWYN at the time of Plaintiff's injury." Motion at 16. Defendants claim that SGFC acquired OWYN in June 2024, after Plaintiff sustained the alleged injury by purchasing two of the Shakes at some point before May 2024. *See id.* (citations omitted).

1. State Law Claims

Defendants first assert that "[a] claim under California's consumer protection statutes may not be premised on vicarious liability" and that "Plaintiff has evidently named [SGFC] as a defendant purely on a theory of vicarious liability." *Id.* at 16-17. Defendants claim that "[t]he FAC contains no allegations showing that [SGFC] exhibited any 'personal participation' or 'unbridled control' over any of the alleged wrongful conduct." *Id.* at 17 (citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007)). Defendants claim that SGFC "did not oversee or have any part in formulating the accused shakes, nor did it have any part in creating the labels for the accused shakes." *Id.* Defendants also assert that Plaintiff's claims against SGFC "fail to meet the heightened pleading standard required to state a claim under the UCL, CLRA, or FAL" because "they do not identify any individual at [SGFC] who made any alleged false statement, when such alleged false statement was made, what the alleged false statement was, what product(s) any supposed false statement relates to, or any of the other standard information required by Rule 9(b)." *Id.* at 17-18.

Plaintiff contends in opposition that he has alleged "both successor liability and direct liability" based on the allegation that "SGFC acquired OWYN in June 2024 for $280 million, and OWYN is now operated as a SGFC 'brand.'" Opp. at 20 (citing FAC ¶ 10). Plaintiff also contends that "[t]he conversion of OWYN into a 'brand' of SGFC may support a continuation theory under California law, which recognizes successor liability when a transaction amounts to a merger or continuation of the seller's business." *Id.* (citing *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28-29 (1977)). Plaintiff claims that he has alleged "SGFC itself has continued marketing the Elite PRO line post-

---

any showing of the plaintiff's intention to purchase the product in the future." 2019 WL 4392528, at *4; *see* FAC ¶¶ 142-60 (alleging FAL and UCL claims). "Thus, once a plaintiff has shown individual injury, he or she can seek injunctive relief for the benefit of the public as to the defendant's improper conduct that caused the injury." *Sotelo*, 2019 WL 4392528, at *4.

9

acquisition using the same deceptive labeling, subjecting SGFC to direct liability." *Id.* at 20-21. Plaintiff claims that "[a]t the pleading stage, Plaintiff cannot know whether OWYN continues as a wholly-owned subsidiary with independent liability or whether it has been or is being integrated and merged into SGFC's operations." *Id.* at 21 (footnote omitted).

Under California law, a purchaser of the principal's assets of another corporation generally does not assume the seller's liabilities unless "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Ray*, 19 Cal. 3d at 28 (collecting cases). "Under th[e de facto merger] exception, liability can attach 'where one corporation takes all of another's assets *without providing any consideration* that could be made available to meet claims of the other creditors.'" *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, (C.D. Cal. 2015) (quoting *Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 626 (2001)). Under the "mere continuation" exception, "plaintiff [must] demonstrate [that] '(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; [and that] (2) one or more persons were officers, directors, or stockholders of both corporations.'" *Id.* (quoting *CenterPoint Energy, Inc. v. Superior Ct.*, 157 Cal. App. 4th 1101, 1120 (2007)). For imposition of successor liability pursuant to the mere continuation exception, courts have "require[d] that the predecessor entity that was purportedly acquired by the successor entity no longer exist." *Id.* at 1133 (citing *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1064 (N.D. Cal. 2007)). California courts view the mere continuation basis for imposing successor liability on a company as "a subset of the [de facto merger theory]." *Franklin*, 87 Cal. App. at 625 ("The crucial factor in determining whether a corporate acquisition constitutes either a de facto merger or a mere continuation is the same: whether adequate cash consideration was paid for the predecessor corporation's assets.").

With respect to SGFC's acquisition of OWYN, Plaintiff alleges only that "[o]n June 13, 2024, SGFC announced it acquired [OWYN] for approximately $280 million and that moving forward, OWYN is to be a brand of SGFC." FAC ¶ 10. The Court would disagree with Plaintiff that such an allegation may support direct liability. With respect to successor liability, Plaintiff does not allege that SGFC did not pay adequate consideration for OWYN or that the $280 million is insufficient consideration for any liability that might result from the Shakes. Moreover,

10

Defendants assert that OWYN is a corporate entity that still exists.  *See* Reply at 14.  The Court would, therefore, dismiss the state law claims against SGFC with leave to amend.

        2. Common Law Claims

Defendant then asserts that the FAC fails to state claims for negligent representation and unjust enrichment against SGFC because "[SGFC] and OWYN are separate corporate entities." Motion at 18-19.  Defendant claims that Plaintiff has failed to allege any basis for successor liability.  *Id.* at 19.  As with the state law claims against SGFC, the Court would find that Plaintiff has not sufficiently alleged either direct or successor liability for the common law claims against SGFC.  The Court would, therefore, dismiss the common law claims against SGFC with leave to amend.

Defendants' Motion with respect to claims against SGFC is **GRANTED** with leave to amend.

## IV. Conclusion

Based on the foregoing discussion, the Court would **GRANT** the Motion **IN PART** with leave to amend and **DENY** the Motion **IN PART** as delineated above.